UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

JADE WINDS ASSOCIATION, INC.,                    Case No. 15-17570-RAM

     Debtor.                                                     Chapter 11
_____/

JADE WINDS ASSOCIATION, INC.,

     Plaintiff,

v.                                                                        Adv. P. 17-01393-RAM

FIRST SERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.,

     Defendant.
_____/

### JADE WINDS' MOTION TO QUASH REISSUED SUBPOENAS TO ITS ATTORNEYS AND FOR PROTECTIVE ORDER

Plaintiff/Reorganized Debtor JADE WINDS ASSOCIATION, INC. ("Jade Winds"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 45(d) and 26(c), hereby moves to quash the reissued subpoenas directed by Defendant/Claimant FIRSTSERVICE RESIDENTIAL FLORIDA, INC., f/k/a THE CONTINENTAL GROUP INC ("FirstService") to non-parties Toyne, Schimmel & Alonso, P.A. and Swimmer & Molder, PL[1] (collectively, "the Law Firms") (ECF No. 117) and for a protective order.  In support thereof, Jade Winds states as follows:

_____

[1] Jade Winds understands that Swimmer & Molder, PL is no longer in existence and that FirstService intends to or has served the subpoena on that firm's apparent successor, David L. Swimmer, P.A.

## I.    The Originally Issued Subpoenas and First Motion to Quash

On July 12, 2018, FirstService gave notice of its intention to serve 18 identical subpoenas duces tecum to non-parties for production of documents without deposition, with return dates of August 3 (ECF No. 72).  In addition to various vendors of Jade Winds, two of the parties subject to those subpoenas were the Law Firms.  It is not disputed that the Law Firms each separately served as general outside counsel to Jade Winds during the time period covered by those subpoenas.  No one from the Law Firms has been listed as a witness by Jade Winds.

Copies of the original subpoenas to the Law Firms are attached hereto as Composite Exhibit 1.  They are extremely vast in scope and expressly demand the production of documents protected by the attorney-client privilege and the work-product doctrine, calling for the production (or logging) of literally every document of any type relating in any way to any of the work of the Law Firms with or on behalf of Jade Winds concerning any matter of any sort during a six-year period of time.  *See, e.g.*, line items 1 and 9 to Ex. A, § II of Composite Ex. 1.  Indeed, counsel for FirstService conceded at that time that, of the 13 line items, he believed that eight of those line items "implicate the attorney-client privilege."[2]  Jade Winds advised FirstService (and the Law Firms) that it does not waive the attorney-client privilege.

On August 6, Jade Winds filed its Motion to Quash Subpoenas to its Attorneys and for Protective Order ("First Motion to Quash") (ECF No. 80).  Upon FirstService confirming that it would withdraw the original subpoenas, not require response by the Law Firms, and subsequently submit modified subpoenas, Jade Winds filed a notice withdrawing the First Motion to Quash (ECF No. 82).

---

[2] In fact, all 13 line items of the original subpoenas require the production of privileged materials in that they seek documents between an attorney and his client that "pertain" to various privileged matters or that include privileged communications.

II.    **FirstService's Reissuance of Expanded Subpoenas to the Law Firms**

Two months later, on October 5, counsel for FirstService sent a letter to counsel for Jade Winds attaching proposed document requests for revised draft subpoenas to the Law Firms.  A copy of the October 5 letter, with its attachment, is attached hereto as Exhibit 2.  The proposed document requests were even broader, more expressly directed towards eliciting privileged information and thus more objectionable than the originally issued subpoenas that FirstService withdrew, expanding from 13 line items to 42, at least 30 of which are directed towards requiring the production or logging of privileged materials related directly to the Law Firms' legal work for Jade Winds.  Moreover, the time period covered by the proposed document requests expanded from the six years of the original subpoenas to a ten-year period of time.

Counsel for Jade Winds responded to the October 5 letter on October 16, explained the improprieties with FirstService's proposed discovery, and requested that any subpoenas to the Law Firms be narrowed so that they are not directed at the production of privileged materials.  A copy of the October 16 letter is attached hereto as Exhibit 3.

A reply letter dated October 19 was sent by counsel for FirstService, a copy of which is attached hereto as Exhibit 4.  In that letter, FirstService admitted that the proposed subpoenas were not intended to generate the production of documents, conceding its understanding that the Law Firms "will not produce the privileged documents," but instead expecting the Law Firms to provide a privilege log concerning everything they ever did of any nature concerning Jade Winds in any conceivable way over a ten-year period of time.  *See* Ex. 4 at 2.  In supposed justification for such a demand, FirstService asserted that "[t]he information on the [demanded privilege] log is highly relevant to FirstService's defenses.  Attempting to preclude FirstService from understanding whether Jade Winds' [sic] communicated with its counsel concerning the subject matter in the

Complaint, and whether Jade Winds' counsel was providing advice to Jade Winds concerning the subject matter of the Complaint, unduly prejudices FirstService." *Id.*

The last communication on the subject before reissuance of the subpoenas to the Law Firms was an October 23 letter from counsel for Jade Winds, attached hereto as Exhibit 5. In that letter, Jade Winds objected to what FirstService had now acknowledged to be its goal – "to generate the creation of privilege logs that you intend to use as would-be 'evidence' regarding the subjects of privileged communications between attorneys and their client," pointing out that, regardless of its purported relevance, "the exclusion of such information from discovery is the very purpose of the attorney-client privilege that you seek to flout." *See* Ex. 5 at 1. Jade Winds again advised that "if the proposed subpoenas are served in their current form and are not narrowed to exclude requests for privileged documents, we will move to quash them." *Id.* at 2.

FirstService did not respond to the October 23 letter and was silent on the subject before reissuing the subpoenas over a month later. Not only did it not narrow the revised draft subpoenas in doing so, it instead broadened them again, reissuing subpoenas to the Law Firms on November 28 that now consist of 59 total line items, maintaining the 40 line items from the prior draft and adding 19 more expressly seeking privileged information. Copies of the reissued subpoenas are attached hereto as Composite Exhibit 6. FirstService still insists upon the preparation of a privilege log of practically every item that may exist in the Law Firms' electronic or paper files and archives. The Court should quash these improper subpoenas.

### III.   <u>The Applicable Rules of Civil Procedure</u>

The starting point for analysis is Rule 26(b)(1), which provides that privileged matters are **<u>not</u>** within the scope of discovery ("[p]arties may obtain discovery regarding any **<u>nonprivileged</u>** **<u>matter</u>** that is relevant to any party's claim or defense and proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit") (emphasis added).

Rule 45(d)(3(A) requires that a court "**must quash** or modify a subpoena that: … (iii) requires **disclosure of privileged or other protected matter**, if no exception or waiver applies; or (iv) subjects a person to undue burden" (emphasis added).  Furthermore, pursuant to Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court … must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."

In applying these rules, "[t]he serve-and-volley of the federal discovery rules govern the resolution of a motion to quash.  The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Rule 26(a)(1).  Next, the subpoenaed nonparty must show that disclosure of the information is protected under Rule 45(d)(3)." *Frank v. Honeywell Int'l Inc.*, 2015 WL 4770965 at *4 (E.D. Pa. Aug. 13, 2015) (granting motion to quash) (internal quotations and citations omitted).

## IV.    <u>Legal Analysis</u>

Here, FirstService has made no effort to show that its reissued subpoenas seek "nonprivileged" documents (*see* Rule 26(b)(1)) and, instead, concedes that they seek precisely such material.  *See* Ex. 4.  There is, accordingly, no need to proceed further and, per Rule 45(d)(3), the subpoenas to the Law Firms "must" be quashed.  This is not a situation where a subpoena is directed to a non-party that may incidentally implicate privileged material.  Rather, these are

5

subpoenas directed to law firms and which are designed to compel the production or logging of

reams of privileged material – protected material that was the essence and purpose of the

relationships between Jade Winds and the Law Firms.  Indeed, the reissued subpoenas have been

modified in a blatant attempt to more directly obtain a logging of the subjects of privileged

communications between Jade Winds and its counsel.  Unsurprisingly, legal authorities do not

countenance such abusive and burdensome discovery tactics.

A particularly instructive analysis is made in *American Int'l Life Assurance Co. of New*

*York v. Vazquez*, 2003 WL 548736 (S.D.N.Y. 2003).  There, Rudick, a party's counsel, was

sanctioned for subpoenaing Stephenson, the counsel for AIG (the adverse party), to both testify

and "to produce and permit inspection of '[a]ny and all records' pertaining to the [subject] action,"

*id.* at *1 – a subpoena considerably narrower than the unrestricted subpoenas served by

FirstService on the Law Firms and attached as Composite Exhibit 6.  In entering sanctions, the

court reasoned as follows:

> The communications by AIG with its attorney, Stephenson, in regard to the reason
> it filed the interpleader and the legal advice rendered by Stephenson plainly fall
> within the privilege for attorney-client communications.  *In re Grand Jury
> Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir. 1984).  Rudick does not
> argue that the communications were not made in confidence, that the privilege was
> waived, or that fraud or illegality was involved, which might otherwise destroy the
> privilege.[3]  *See U.S. v. Goldberger & Durbin, P.C.*, 935 F.2d 501, 504 (2d Cir.
> 1991), *In re Grand Jury Subpoena*, 731 F.2d at 1036.  Accordingly, there is no
> dispute that the communications sought by Rudick are protected by the attorney-
> client privilege.  **Privileged attorney-client communications, however, are
> generally not available by subpoena**, *e.g.*, FRCP 45.  *Leve v. General Motors
> Corp.*, 43 F.R.D. 508, 510 n. 2 (S.D.N.Y. 1967).  Indeed, regardless of how relevant
> the privileged information may be to a party's case, it is well established that "the

---

[3] During the conferral process prior to the filing of the First Motion to Quash, FirstService vaguely
suggested that there had somehow been a blanket waiver of the attorney-client privilege between
Jade Winds and the Law Firms.  There has been no effort by FirstService to establish such a waiver
or a renewal of that suggestion since that time, let alone a determination that privilege has, in fact,
been waived.  It certainly puts the cart before the horse to issue subpoenas directing production of
documents protected by privilege without there being a judicial finding of waiver of privilege.

attorney-client privilege remains an exception that may withhold relevant information at the pre-trial or the trial stage of a criminal prosecution or civil proceeding." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992).

… Rudick must understand surely that "if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn [Co. v. United States*, 449 U.S. 383, 393 (1981)]. **Breach of the attorney-client privilege cannot be compelled on the whim of a third-party who may believe that a waiver would not prejudice the client.**

In light of the communications from Stephenson conveying his client's unwillingness to waive the attorney-client privilege, thus ethically and legally binding him from testifying, I am at a loss to understand how Rudick could in good faith believe that the communications sought through the subpoena he issued was appropriate. Rudick may be well advised to follow Stephenson's advice of returning to law school if he actually believes that relevance and lack of prejudice to AIG constitute valid grounds for Stephenson to violate the oldest privilege for confidential communications known to the common law….

Rudick failed to heed his obligation "to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." FRCP 45(c)(1). **The sweeping subpoena seeking "[a]ny and all records pertaining to the [AIG interpleader]" was *prima facie* improper.** *In re Circle K Corp.*, 199 B.R. 92, 102 (S.D.N.Y. 1996).

*Id.* at *2-3 (emphasis added) (record citations omitted). FirstService's reissued subpoenas to the

Law Firms are likewise "*prima facie* improper." *See also Estate of Ungar v. Palestinian Auth.*,

332 F. App'x 643, 645 (2d Cir. 2009) ("the district court acted well within its discretion in quashing

the subpoena – which asked for essentially every document White & Case LLP possessed relating

to its representation of Orascom all over the world").

The legal principles precluding the third-party discovery being undertaken by FirstService

are well-settled and go back to the Supreme Court's seminal decision in *Hickman v. Taylor*, 329

U.S. 495 (1947). Indeed, in *Brush v. Harkins*, 9 F.R.D. 681 (W.D. Mo. 1950), the court relied on

*Hickman* in quashing a subpoena directing a party's counsel to produce his file pertaining to an

accident, holding as follows:

Since the deponent is one of the attorneys for the plaintiff in the case, the matter called for would be a clear invasion, not only of his privileges as an attorney, but would be out of harmony with the case of *Hickman v. Taylor*, where the court said: "Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. *As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."*

*Id.* at 682, *quoting Hickman*, 329 U.S. at 510 (emphasis in *Brush*) (citation omitted).

The impropriety of FirstService's extraordinarily expansive subpoenas to the Law Firms is confirmed by the scarcity of decisions where a party even attempted to direct such subpoenas to counsel for the opposing party. The authorities relied upon by FirstService in the conferral process prior to the First Motion to Quash are readily distinguishable and inapplicable.

For instance, *Freydl v. Meringolo*, 2011 WL 1344368 (S.D.N.Y. Mar. 31, 2011), focused on a law firm's efforts to quash a subpoena because it was irrelevant, harassing and unduly burdensome, with only an oblique assertion that the subpoena would "most likely reveal information protected by the attorney-client privilege." *Id.* at *1. There, the court found that there was not a sufficient assertion of privilege to excuse preparation of a privilege log, emphasizing that the privilege claim was "not made to defeat the subpoena on the basis that the discovery it seeks is 'not discoverable'" and that there was no "express claim of privilege." *Id.* at *4. In contrast, Jade Winds directly and expressly claims privilege, FirstService has conceded that the bulk of the documents it seeks "implicate the attorney-client privilege" and will generate privilege logs rather than the production of documents. As a result, the materials are not discoverable under Rule 26. Absent FirstService establishing the discoverability of the subpoenaed documents through the inapplicability of Jade Winds' "express claim of privilege," *Freydl* supports the

conclusion that preparation of privilege logs by the Law Firms or Jade Winds is unnecessary at this time and that the subpoenas should be quashed.

Also previously relied upon by FirstService, *Hartford Fire Ins. Co. v. CMC Constr. Co., Inc.*, 2010 WL 11520218 (E.D. Tenn. Feb. 8, 2010), involved a subpoena considerably narrower than those served on the Law Firms by FirstService, seeking an attorney's documents related to one specific trust agreement and partnership agreement. *Id.* at *1. In those circumstances, the court deemed it appropriate for the attorney (not the client) to submit a privilege log describing the nature of the privileged documents. *Id.* at *2-3.[4] In contrast, FirstService's subpoenas would require the Law Firms to log every document not sent to outside parties from every transaction of any nature that they engaged in regarding their client, Jade Winds, over multiple years, something that FirstService specifically insisted on throughout the conferral process. That imposes an undue and improper burden on the Law Firms, which is expressly prohibited and deemed sanctionable by Rule 45(d)(1).

*Hinson v. Title Ins. Co.*, 2014 WL 11511677 (N.D. Fla. Apr. 2, 2014), another authority cited by FirstService, <u>denies</u> a motion to compel production of an attorney's file that was subject to a subpoena, with the court directing further conferral to see if the parties could agree that any responsive documents were relevant and discoverable.[5] *Id.* at *1. There, a privilege log was

---

[4] *Hartford* also appears to turn on Tennessee's strict construction of the attorney-client privilege, *id.* at *3, which is at odds with Florida's respect for the privilege. *See, e.g., Horning-Keating v. State*, 777 So. 2d 438, 445 (Fla. 5th DCA 2001) ("The oldest and most revered principle[] of Anglo American law is the attorney-client privilege and the sacred duty of a lawyer to not reveal the secrets and communications of a client. Upon admission to the Bar, a lawyer does not give a mere promise, but a solemn oath to 'maintain the confidence and preserve inviolable the secrets of the client … So help me God.'") (quashing order compelling production of privileged documents).

[5] During the conferral process, FirstService declined repeated requests to submit narrower requests not seeking privileged documents, instead expanding the requests. *See* Ex. 3, 5, 6.

provided, with the court noting in dictum that, should the motion be refiled, a more detailed log may resolve many issues. *Id.* at *2. Given the boundless scope of FirstService's subpoenas to the Law Firms and its inability to demonstrate the discoverability of the materials that its concedes implicate privilege, requiring the time-consuming preparation of extensive privilege logs by non-parties is premature and unwarranted under Rule 45(d)(1).

In vainly searching for other cases that could support its efforts to subpoena from lawyers their privileged communications with their clients or to compel the logging of all such privileged communications, FirstService cited to several irrelevancies during the second conferral process. *See* Ex. 2, 4. None of those cases involves efforts to subpoena expressly privileged materials directly from counsel for a party, and most do not involve subpoenas directed to attorneys at all. The cases that it cited that do concern subpoenas served on attorneys involve requests for non-privileged materials, such as judgment collection records (*GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189 (D. D.C. 2003)) or records related to a malpractice claim (*Hall v. Sullivan*,[6] 231 F.R.D. 468 (D. Md. 2005)), or communications with third parties (*Center for Individual Rights v. Chevaldina*, 2017 WL 5905191 (S.D. Fla. Nov. 29, 2017), *Northwestern Mut. Life Ins. Co. v. Rafi*, 2009 WL 3600273 (N.D. Ohio Oct. 26, 2009)).

The subpoenas to the Law Firms are substantively no different than a Request for Production of Documents to Jade Winds asking it to produce all of its communications with all of its counsel for ten years. No serious analysis would require Jade Winds, in preserving privilege,

---

[6] In *Hall*, the party requesting production clarified during conferral that it was not seeking privileged materials. Even though privilege objections were maintained in that case and no privilege log was provided, the court still denied the motion to compel and refused to order production by the law firm defendant in a legal malpractice action.

to log all such communications.  FirstService's blunderbuss and ill-intentioned attempt to burden Jade Winds and its counsel should be rejected.

In summary, FirstService's subpoenas to the Law Firms should be quashed.  Alternatively, should the Court require the preparation of privilege logs, FirstService should be directed to pay the Law Firms, at their hourly rates, for all time expended in retrieving and logging the privileged documents responsive to the subpoenas.

WHEREFORE, Plaintiff/Reorganized Debtor JADE WINDS ASSOCIATION, INC. respectfully requests that the Court quash the subpoenas directed to non-parties Toyne, Schimmel & Alonso, P.A. and Swimmer & Molder, PL, enter a protective order precluding such discovery, issue sanctions pursuant to Rule 45(d)(1), and grant such other relief as may be deemed just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel for Jade Winds hereby certifies that, pursuant to Local Rule 7026-1(F), the parties exchanged conferral letters on October 5, 16, 19 and 23, 2018 in a good faith effort to resolve this issue without Court intervention, but failed to do so.

Respectfully submitted,

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Tel:  305-858-2900
Fax:  305-858-5261

By:  /s/ Daniel F. Blonsky
    Kendall B. Coffey, Esq.
    Florida Bar No. 259861
    kcoffey@coffeyburlington.com
    Daniel F. Blonsky, Esq.
    Florida Bar No. 972169
    dblonsky@coffeyburlington.com
    Justin E. King, Esq.
    Florida Bar No. 121408
    jking@coffeyburlington.com
    service@coffeyburlington.com

       and

SHRAIBERG, LANDAU & PAGE, P.A.
2835 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Tel:  561-443-0800
Fax:  561-998-0047

By:/s/ Eric Pendergraft
    Eric Pendergraft
    Florida Bar No. 91927
    ependergraft@slp.law

*Attorneys for Jade Winds Association*

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Adv. P. 17-01393-RAM

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties

registered to receive electronic notices of filing in this case on this 3rd day of December 2018.

By: _/s/ *Daniel F. Blonsky*___
Daniel F. Blonsky

## SERVICE LIST

Via Email

Kristopher E. Pearson, Esq.
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL  33130
Phone: (305) 789-3200
Fax: (305) 789-2688
kpearson@stearnsweaver.com

David L. Swimmer, Esq.
David L. Swimmer, P.A.
11740 SW 80th Street, Suite 203
Miami, FL  33183
Phone: (305) 274-1222
Fax: (786) 441-4394
dls@dlspalaw.com

Ross B. Toyne, Esq.
Toyne, Schimmel & Alonso, P.A.
25 SE 2nd Avenue, Suite 1135
Miami, FL  33131
Phone: (305) 377-1910
Fax: (305) 377-1915
ross@passengerlaw.com