## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

In re:                                                        Case No.: 15-17570-RAM

JADE WINDS ASSOCIATION, INC.,                                 Chapter 11

      Debtor.
_____/                            Adv. Proc. No. 17-01393-RAM
JADE WINDS ASSOCIATION, INC.

      Plaintiff,

v.

FIRST SERVICE RESIDENTIAL
FLORIDA, INC.

      Defendant.
_____/

## FIRSTSERVICE'S MOTION FOR SUMMARY
## JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

KRISTOPHER E. PEARSON
Florida Bar Number 0016874
kpearson@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:    (305) 789-3200
Facsimile:    (305) 789-3395

*Counsel for FirstService Residential Florida, Inc.*

### TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................................... iii

INTRODUCTION ........................................................................................................ 1

LEGAL ANALYSIS .................................................................................................... 3

    A.    Summary Judgment Standard ................................................................ 3

    B.    The Court should grant summary judgment based upon the limitation of liability clauses contained in the Contract. .......................................... 5

        1.    Bookkeeping Issues (Complaint ¶15, Bullet points 1, 2, 3, 6, 9, 14) ............... 7

        2.    40-Year Recertification and Construction Issues (Complaint ¶15, Bullet points 5, 6, 7 and 8) ......................... 8

        3.    Parking Fees (Complaint ¶15, Bullet point 10) ................................. 9

        4.    Board Elections, Document Amendments, and Unit Owner Fining (Complaint ¶15, Bullet points 11, 12, 13) ...................... 9

        5.    Miriam Joel Litigation (Complaint ¶15, Bullet point 15) ................. 9

    C.    Independent Tort Doctrine ...................................................................... 10

    D.    Damages ................................................................................................. 13

        1.    Chapter 11 Bankruptcy Costs ($3.1 million) ................................... 14

        2.    Cash-only Parking System ($216,000) and Scrap Metal Disposal ($33,000) ...................... 14

        3.    Foreclosed Unit Lease Revenue ($500,000) .................................... 15

        4.    40-Year Certification ($2.9 million) .................................................. 15

        5.    Amounts relating to Increase Bank Loan Costs ($470,000) ............... 15

        6.    Fees paid to FirstService ($1.3 million) ............................................ 16

        7.    Amounts relating to Miriam Joel Litigation ($145,000) .................. 16

        8.    Administrative Fines ($150,000) ...................................................... 16

        9.    Punitive Damages ............................................................................... 17

CONCLUSION ............................................................................................................ 19

CERTIFICATE OF SERVICE ................................................................................................ 20

SERVICE LIST ................................................................................................................... 20

## <u>TABLE OF CITATIONS</u>

**CASES**

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) ...................................................................................................3

*Allen v. Tyson Foods, Inc.*,
    121 F.3d 642 (11th Cir. 1997) ..................................................................................3

*Allstate Ins. Co. v. Kelley*,
    481 So. 2d 989 (Fla. 5th DCA 1986) ......................................................................17

*Amoco Oil Co. v. Gomez*,
    125 F. Supp. 2d 492 (S.D. Fla. 2000) .....................................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................3

*Astro Tel, Inc. v. Verizon Florida, LLC*,
    979 F. Supp. 2d 1284 (M.D. Fla. 2013) .............................................................4, 15

*Behrman v. Allstate Ins. Co.*,
    388 F. Supp. 2d 1346 (S.D. Fla. 2005),
    *aff'd,* 178 Fed. App'x 862 (11th Cir. 2006)..........................................................12

*Berkery v. Pratt*,
    390 F. App'x 904 (11th Cir. 2010) .........................................................................11

*Bruhl v. Price WaterhouseCoopers Int'l*,
    2008 WL 899250 (S.D. Fla. Mar. 31, 2008) .........................................................11

*Capten Trading Ltd. v. Banco Santander Int'l*,
    2018 WL 1558272 (S.D. Fla. Mar. 29, 2018).................................................10, 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................................3

*Cherestal v. Sears Roebuck & Co.*,
    2014 WL 644727 (M.D. Fla. Feb. 19, 2014)..........................................................18

*Chipman v. Chonin*,
    597 So. 2d 363 (Fla. 3d DCA 1992) .........................................................................6

*Crosby v. Monroe Cty.*,
    394 F.3d 1328 (11th Cir. 2004) .................................................................................3

*De Szterensus v. Bank of America, N.A.*,
    2009 WL 10667423 (S.D. Fla. Sept. 28, 2009) .....................................................13

*Detwiler v. Bank of Cent. Fla.*,
    736 So. 2d 757 (Fla. 5th DCA 1999) ........................................................12

*Edge Sys. LLC v. Aguila*,
    186 F. Supp. 3d 1330 (S.D. Fla. 2016)
    *aff'd*, 708 F. App'x 998 (Fed. Cir. 2017) ..............................................3, 4

*Elec. Sec. Sys. Corp. v. S. Bell Tel & Tel Co.*,
    482 So. 2d 518 (Fla. 3d DCA 1986) .........................................................11

*Fiorillo v. Carnival Corp.*,
    2013 632264 (S.D. Fla. Feb. 20, 2013) ......................................................18

*Fla. Power & Light Co. v. Mid-Valley, Inc.*,
    763 F. 2d 1316 (11th Cir. 1985) .................................................................5

*Flight Training, Inc. v. Tropical, Inc.*,
    2007 WL 5117263 (S.D. Fla. Dec. 19, 2007) ......................................17, 18

*Goldman v. Bracewell & Guiliani, L.L.P.*,
    183 F. App'x 873 (11th Cir. 2006) .............................................................6

*Greenacre Props. Inc. v. Rao*,
    933 So. 2d 19 (Fla. 2d DCA 2006) ...........................................................12

*Gresham v. Strickland*,
    784 So. 2d 578 (Fla. 4th DCA 2001) ..........................................................6

*Hansen v. Perry Techs.*,
    206 F. Supp. 2d 1223 (S.D. Fla. 2002) ...................................................4, 15

*Hinely v. Fla. Motorcycle Training, Inc.*,
    70 So.3d 620 (Fla. 1st DCA 2011) ..............................................................5

*Howard v. Honda Motor Co., Ltd.*,
    723 F. Supp. 688 (M.D. Fla. Oct. 27, 1989) ..............................................18

*In re Maxko Petro., LLC*,
    425 B.R. 852 (Bankr. S.D. Fla. 2010) .......................................................13

*Jensen v. Cardillo, Keith & Bonaquist, P.A. (In re Leli)*,
    420 B.R. 568 (Bankr. M.D. Fla. 2009) ......................................................17

*John Brown Automation, Inc. v. Nobles*,
    537 So. 3d 614 (Fla. 2d DCA 1988) ..........................................................17

*Key Biscayne Divers, Inc. v. Marine Stadium Enter.*,
    490 So. 2d 137 (Fla. 3d DCA 1986) ...........................................................5

*Kurtz v. Young*,
   2009 WL 10667471 (S.D. Fla. Aug. 25, 2009) ....................................................................18

*Lena Watts-Robinson v. Anderson Report Servs., Inc.*,
   2011 WL 13295707 (M.D. Fla. Sept. 22, 2011) .................................................................12

*Lewis v. Guthartz*,
   428 So. 2d 222 (Fla. 1982) ..............................................................................................10

*Liboy ex rel. Liboy v. Rogero ex rel. Rogero*,
   363 F. Supp. 2d 1332 (M.D. Fla. 2005) ...........................................................................18

*Malbco Holdings, LLC v. Patel*,
   2016 WL 5898629 (D. Or. Oct. 7, 2016) .............................................................................4

*Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .......................................................................................................3, 4

*MCI Worldcom Network Servs, Inc. v. Mastec, Inc.*,
   995 So. 2d 221 (Fla. 2008) ..........................................................................................13, 14

*Murphy v. Ford Motor Co.*,
   2009 WL 10674792 (N.D. Fla. Jan. 23, 2009) ..................................................................17

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Ready Pac Foods, Inc.*,
   782 F. Supp. 2d 1047 (C.D. Cla. 2011) ...............................................................................4

*Palma v. BP Prods. North America, Inc.*,
   594 F. Supp. 2d 1306 (S.D. Fla. 2009) ................................................................................6

*Pan Am. W., Ltd. v. Cardinal Commercial Dev., LLC*,
   50 So. 3d 68 (Fla. 3d DCA 2010) ........................................................................................6

*Pierson v. Orlando Regional Healthcare Sys., Inc.*,
   2010 WL 1408391 (M.D. Fla. Apr. 6, 2010) .....................................................................13

*Proto v. Graham*,
   788 So. 2d 393 (Fla. 5th DCA 2001) ...................................................................................6

*Proudfoot Consulting Co. v. Gordan*,
   576 F.3d 1223 (11th Cir. 2009) .........................................................................................16

*Reagan Wireless Corp. v. Apto Sols., Inc.*,
   2018 WL 4901127 (S.D. Fla. Oct. 9, 2018) .................................................................10, 11

*S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC*,
   139 So. 3d 869 (Fla. 2014) ................................................................................................17

*S.E.C. v. BIH Corp.*,
  2014 WL 3384777 (M.D. Fla. July 10, 2014) .......................................................................4

*Sanislo v. Give Kids the World, Inc.*,
  157 So. 3d 256 (Fla. 2015) .............................................................................................5

*SFM Holdings Ltd. v. Banc of America Secs., LLC*,
  600 F.3d 1334 (11th Cir. 2010) ....................................................................................11

*Super98, LLC v. Delta Air Lines, Inc.*,
  309 F. Supp. 3d 1368 (N.D. Ga. 2018) ..........................................................................4

*Tai-Pan, Inc. v. Keith Marine, Inc.*,
  1997 WL 714898 (M.D. Fla. May 13, 1997) ...................................................................11

*Taylor v. Gunter Trucking Co., Inc.*,
  520 So. 2d 624 (Fla. 1st DCA 1988).............................................................................18

*The Michael Titze Co. Inc. v. Simon Prop. Grp., Inc.*,
  400 F. App'x 455 (11th Cir. 2010) ................................................................................12

*Tiller v. Ford Motor Co.*,
  2006 WL 166530 (M.D. Fla. Jan. 21, 2006) ..................................................................18

*Tulepan v. Roberts*,
  2015 WL 235441 (S.D. Fla. Jan. 16, 2015)..........................................................3, 10, 11

*Vukovich v. Leo*,
  447 So. 2d 1012 (Fla. 3d DCA 1984) .............................................................................6

*Weaver v. Mateer and Harbert, P.A.*,
  523 F. App'x 565 (11th Cir. 2013) ...............................................................................12

*Welt v. Sirmans*,
  3 F. Supp. 2d 1396 (S.D. Fla. 1997) .............................................................................12

*Ying Jing Gan v. City of New York*,
  996 F. 2d 522 (2d Cir. 1993) ..................................................................................4, 15

**STATUTES**

Fla. Stat. § 768.72 .......................................................................................................17

Fla. Stat. ch. 428 ..........................................................................................................9

Fla. Stat. ch. 471 ..........................................................................................................9

**OTHER AUTHORITIES**

10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 2737 (4th ed.)................................................................................................................4

**RULES**

Fed. R. Civ. P. 12....................................................................................................................16

Fed. R. Civ. P. 26...............................................................................................................13, 15

Fed. R. Civ. P. 56.......................................................................................................1, 3, 4, 16

Defendant FirstService Residential Florida, Inc. ("FirstService") respectfully moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on all counts in Plaintiff Jade Winds Association, Inc.'s ("Jade Winds") Complaint and submits the following memorandum:

## INTRODUCTION

FirstService is entitled to summary judgment as a matter of law because there are no genuine issues of material facts in dispute. The Complaint amounts to a breach of contract action adorned with unsupported, conclusory allegations of bad acts by FirstService's manager (Donna Mantin), who Jade Winds hired post-contract termination. Jade Winds' Complaint alleges nothing more than a condominium association whose revenue was insufficient to pay for its 40-year recertification and other routine expenses associated with an approximately 50-year-old, 916-unit complex with an 18-member board of directors.

The Association Management Contract, as amended, ("Contract") governs FirstService and Jade Winds' relationship.[1] The Contract's existence and its terms permit the Court to grant summary judgment in FirstService's favor against Jade Winds. The Contract contains a broad limitation of liability provision (in § 9), limiting FirstService's liability to damages caused *solely* by FirstService's gross negligence, willful misconduct or material breach of contract. Said differently, for the provision *not* to apply, FirstService, acting alone, must have caused the alleged damages. The record makes clear that all of the alleged causes of damages involved actors other than FirstService. Jade Winds employed accountants, attorneys, engineers, and general contractors in connection with the various circumstances Jade Winds claims as its bases for damages. These professionals were involved in the very matters Jade Winds claims FirstService mismanaged, which establish FirstService was not acting alone. Consequently, the Contract's limitation of liability clause bars the breach of contract and tort claims Jade Winds articulates in the Complaint.

The Contract also contains specific limitations of liability provisions, which make clear that FirstService was not Jade Winds' construction manager (in § 3.4), thereby eliminating any liability for the 40-year recertification, renovation projects, code violations, or other construction-related fines, which constitute a substantial part of Jade Winds' breach and damage allegations. Further, the Contract establishes that FirstService specifically contracted to not

---

[1] Jade Winds attached the Contract and the relevant addendums to the Complaint as Exhibits A, B, and C.

provide legal advice to Jade Winds (in § 3.3), thereby eliminating any liability relating to the allegations concerning board elections, condominium document amendments, or litigation, such as the Miriam Joel litigation, again a significant aspect of Jade Winds' breach allegations.

Jade Winds fails to articulate: (i) a duty owed by FirstService separate from the obligations of the Contract; and (ii) breaches of anything other than the Contract's terms. The alleged breaches set forth in paragraphs 21 (Breach of Contract); 27 (Gross Negligence); 32 (Breach of Fiduciary Duty); and 39-43 (Negligent Retention and Supervision) are the same or substantially similar, thereby proving the alleged duties and breaches are all duties and breaches under and of the Contract. Florida law bars tort claims where no independent duty exists. The well-settled "independent tort doctrine" prevents exactly what Jade Winds is trying to do here, which is turn a dispute involving an arm's-length, bargained-for contractual relationship into a generalized tort proceeding. The independent tort doctrine alone permits the Court to grant summary judgment on Counts II, III, and IV, each of which asserts a tort claim. The demise of the tort claims is fatal to the claim for punitive damages.

The undisputed material facts authorize the Court to grant summary judgment on several damages issues raised by Jade Winds in its Damages Disclosure.[2] For example, FirstService is not liable for the alleged $3 million dollars incurred by Jade Winds in connection with its chapter 11 case, as alleged in its Damage Disclosure. FirstService is not liable for the cost of Jade Winds' 40-year certification. Jade Winds improperly seeks disgorgement of the $1.3 million in payments it made to FirstService under the Contract. Finally, the Court should grant summary judgment as to Jade Winds' claim for punitive damage. Assuming the predicate tort claims survive the independent tort doctrine—which they should not—over one year into the proceeding, with hundreds of thousands of pages of documents produced, there is not a scintilla of evidence to support Jade Winds' claim for punitive damages, which it would need to prove by clear and convincing evidence under settled Florida law.

Interestingly, Jade Winds employed one of the most prominent and sophisticated forensic accounting firms (KapilaMukamal LLP), who spent over 300 hours and Jade Winds paid over $60,000, to investigate Jade Winds' allegations of embezzlement and theft. That firm is not listed on Jade Winds' Rule 26 Initial Disclosures or Expert Disclosures.[3] Jade Winds has not

---

[2] *See* ECF No. 73, Amended Initial Disclosures ("Damage Disclosure").
[3] *See* ECF Nos. 73, Amended Initial Disclosures and 89, Expert Disclosures.

produced or referenced any of the firm's findings.  The inescapable conclusion becomes they found nothing.  Again, this matter is merely a contract dispute not a salacious tort proceeding, involving fraudulent conduct, embezzlement or other forms of wrongdoing.  Jade Winds' puffed up Complaint quickly deflated as discovery progressed.

## LEGAL ANALYSIS[4]

### A.    Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Crosby v. Monroe Cty.,* 394 F.3d 1328, 1332 (11th Cir. 2004) (citing Fed. R. Civ. P. 56(c)).[5]  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply '[point] out to the district court that there is an absence of evidence to support the nonmoving party's case.'"  *Tulepan v. Roberts*, 2015 WL 235441, at *4 (S.D. Fla. Jan. 16, 2015) (quoting *Celotex*, 477 U.S. at 325).  Once the moving party has met its burden demonstrating the absence of genuine issues of material fact, the party opposing summary judgment cannot simply rely on the pleadings or mere denials of the allegations.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party cannot meet its burden merely by showing the existence of some metaphysical doubt as to the material facts, but must instead "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  While the court views the evidence in favor of the non-moving party, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.  Conjecture, surmise or metaphysical doubt raised by the non-movant's assertions will not defeat a summary judgment motion.  *See*

---

[4] FirstService's Statement of Undisputed Material Fact, filed contemporaneously with this motion, provides the requisite factual support.  FirstService cites to the Statement of Undisputed Material Facts as "SOF ¶__."
[5] "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law that might affect the outcome of the case.  An issue of fact is 'genuine' if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1344 (S.D. Fla. 2016) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)), *aff'd*, 708 F. App'x 998 (Fed. Cir. 2017).

*Matsushita*, 475 U.S. at 586; *Edge Sys.*, 186 F. Supp. 3d at 1344.  Neither will a non-movant's self-serving, conclusory statements or bare suspicions, perceptions, opinions, and beliefs.  *See Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532 (2d Cir. 1993); *Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F. Supp. 2d 1284, 1295-96 (M.D. Fla. 2013); *Hansen v. Perry Techs.*, 206 F. Supp. 2d 1223, 1225 (S.D. Fla. 2002).

Rule 56 states that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added); *see, e.g., Super98, LLC v. Delta Air Lines, Inc.*, 309 F. Supp. 3d 1368, 1376 (N.D. Ga. 2018) (party could move for partial summary judgment on contract interpretation issues and need not seek summary judgment on the entire breach of contract claim).  Moreover, it provides that "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g); *see S.E.C. v. BIH Corp.*, 2014 WL 3384777, at *2 (M.D. Fla. July 10, 2014) ("[A] court may grant partial summary judgment as to an element of a party's case when the element lacks any genuine issue of material fact.")  "[S]ubdivision (g) only applies after the court has applied the general summary-judgment standard in subdivision (a) to each claim or defense on which a party moved." 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2737 (4th ed.) (citing Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment); *see Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cla. 2011) ("Rule 56(g) allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a trial."); *Malbco Holdings, LLC v. Patel*, 2016 WL 5898629, at * 1 (D. Or. Oct. 7, 2016) ("Partial summary judgment rulings," pursuant to Rule 56(g), "allow the court to limit the number of facts at issue for trial.").

Based upon the undisputed facts of the record here, the Court should grant summary judgment on all counts of the Complaint in favor of FirstService against Jade Winds, or, alternatively, grant partial summary judgment on certain issues to streamline this proceeding.

**B.    The Court should grant summary judgment based upon the limitation of liability clauses contained in the Contract.**

The Contract contains a broad limitation of liability provision that precludes Jade Winds from recovering against FirstService.    Specifically, section 9 of the Contract provides, in pertinent part, that FirstService:

> [S]hall not be liable to the Association … for any injury, loss or damage … unless **solely** caused by [FirstService's] own gross negligence or willful misconduct or arising **solely** out of a material breach by [FirstService] of this Contract.  To the fullest extent of the law, the Association…will…indemnify, save, defend and forever hold harmless [FirstService] … from any liabilities, damages, costs, penalties, fines, fees losses, suits, demands, causes of action, judgments, obligations, claims, and expenses, including but not limited to reasonable attorneys' fees and associated costs, … arising out of or in connection with [FirstService's] performance …, except to the extent that such liability shall result **solely** from FirstService's own gross negligence or willful misconduct or **solely** from a material breach of this Contract by [FirstService].

*See* Complaint, Ex. A at § 9 (emphasis added); SOF ¶¶1-5.

The Contract also contains specific limitation of liability provisions relating to construction management services and legal advice.  *See* Complaint, Ex. A at §§ 3.3 and 3.4; SOF ¶¶1-5.  The Contract is clear that FirstService is not authorized or obligated to provide legal advice, and that FirstService does not provide the services of a construction manager or an engineer.  *See id.*

Courts in Florida will enforce exculpatory and limitation of liability clauses that are clear and unambiguous.  *See Fla. Power & Light Co. v. Mid-Valley, Inc.*, 763 F. 2d 1316, 1321-1322 (11th Cir. 1985); *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256 (Fla. 2015); *Key Biscayne Divers, Inc. v. Marine Stadium Enter.*, 490 So. 2d 137 (Fla. 3d DCA 1986); *Hinely v. Fla. Motorcycle Training, Inc.*, 70 So.3d 620 (Fla. 1st DCA 2011).  In *Sanislo*, the Florida Supreme Court held:

> Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away.

*Sanislo*, 157 So. 3d at 260-61.

Paragraph 9 of the Contract could not be clearer.  FirstService cannot "be liable to the Association . . . for any injury, loss or damage . . . unless **solely** caused by [FirstService's] own

5

gross negligence or willful misconduct or arising *solely* out of a material breach by [FirstService] of this Contract." *See* Compl., Ex. A at § 9 (emphasis added); SOF ¶¶1-5; *Pan Am. W., Ltd. v. Cardinal Commercial Dev., LLC*, 50 So. 3d 68, 71 (Fla. 3d DCA 2010) ("Where a contractual provision is unambiguous, no issue of fact is presented as to the meaning of the language or the parties' intent, and the moving party is entitled to judgment as a matter of law.").

Jade Winds' claims are premised on alleged injuries caused, at least in part, by a person or persons other than FirstService such that each claim is one not "*solely* caused by [FirstService's] own gross negligence or willful misconduct or arising *solely* out of a material breach by [FirstService] of this Contract". *Id.* at § 9 (emphasis added); SOF ¶¶1-5. "Causation refers generally to 'proximate cause,'" which "embraces, at the very least, a causation-in-fact test,"—that is, "the defendant's act or omission was a cause-in-fact of the plaintiff's claimed injuries." *Palma v. BP Prods. North America, Inc.*, 594 F. Supp. 2d 1306, 1309 (S.D. Fla. 2009) (citation omitted).[6]  "*A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.*" *Proto v. Graham*, 788 So. 2d 393, 396 (Fla. 5th DCA 2001) (citation omitted) (emphasis in original).

Proximate cause becomes a question of law where reasonable minds cannot differ. *See Chipman v. Chonin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992) (per curiam) (citing *Vukovich v. Leo*, 447 So. 2d 1012 (Fla. 3d DCA 1984)). Courts routinely grant summary judgment on causation when the plaintiff has failed to establish a genuine dispute of fact or produce sufficient evidence demonstrating a reasonable basis for the conclusion that it is more likely than not that the defendant's conduct caused plaintiff's damages. *See Goldman v. Bracewell & Guiliani, L.L.P.*, 183 F. App'x 873, 873-74 (11th Cir. 2006) (affirming grant of summary where there was no genuine issue of material fact as to the causation element of each of the alleged torts, including legal malpractice, breach of fiduciary duty, and negligence misrepresentation, since

---

[6] In addition, "[f]or proximate cause to exist, there must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred." *Gresham v. Strickland*, 784 So. 2d 578, 582 (Fla. 4th DCA 2001). "'Natural and probable' consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again." *Palma*, 594 F. Supp. 3d at 1310 (citation omitted). Mere "'[p]ossible' consequences" insufficient to establish causation "are those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again from the commission of the same act." *Palma*, 594 F. Supp. 3d at 1310-1311 (citation omitted).

plaintiff "failed to present competent evidence that [defendant] proximately caused any damage to [plaintiff]"). The Contract's limitation of liability clause requires Jade Winds to prove that FirstService alone caused its damages.

FirstService addresses Jade Winds' several topics of alleged mismanagement below.

### 1. Bookkeeping Issues (Complaint ¶15, Bullet points 1, 2, 3, 6, 9, 14)

From inception of the relationship through June 1, 2014, FirstService did not contract to perform bookkeeping services for Jade Winds. *See* Complaint, Ex. A-C; SOF ¶¶1-7, 39. From 2007 to March 2014 Preferred Accounting Services, Inc. (Ana M. Costales-Abised, CPA) performed Jade Winds' accounting (other than audits) and bookkeeping services (including vendor payments), not FirstService. *See* SOF ¶¶40-41. After Preferred Accounting, Jade Winds employed Fuoco Group, LLC (Donna Seidenberg, CPA) to perform accounting services. *See* SOF ¶42. Then in June 2014, Jade Winds contracted with FirstService to provide certain bookkeeping services. *See* Compl., Ex. C; SOF ¶43.

The Contract and the undisputed facts belie any allegations concerning FirstService's responsibilities relating to vendor payments from the inception of the relationship in 2007 to June 1, 2014. Certainly, Jade Winds does not contend that all of the issues regarding accounting set forth in the Complaint occurred from June 1, 2014 to when the Contract was terminated on October 13, 2014. *See* SOF ¶¶12, 15. Jade Winds fails to articulate when the alleged issues with accounting occurred, but it is unreasonable to believe what occurred in four months caused damage to Jade Winds. *See* Compl. ¶¶15, 21, 27, 32, 42. Failing to pay vendor payments likely resulted from Jade Winds' lack of sufficient funds in its bank accounts, which was not something FirstService could control. Similarly, FirstService was not the sole cause for the alleged "qualified audits," as the very audits themselves make clear. *See* SOF ¶¶47-50. For example, in the December 2012 Audit, the Auditors state as a basis for the qualified opinion, "[W]e were unable to obtain a discussion or evaluation from the Association's outside legal counsel regarding pending or threatened litigation." *See* SOF ¶48.

The undisputed facts demonstrate that FirstService was not the sole cause of any damage to Jade Winds relating to accounting issues. Thus, the Contract's limitation of liability clause bars the alleged breach concerning accounting and bookkeeping.

2.      **40-Year Recertification and Construction Issues (Complaint ¶15, Bullet points 5, 6, 7 and 8)**

Jade Winds' 40-year recertification project spanned many years, commencing sometime in 2008, involved at least two different sets of licensed general contractors and licensed engineers (who bore responsibility for the project), and was successful for at least the Bamboo and Allamanda buildings.  *See* SOF ¶¶51-79.  Therefore, the Contract's general and specific limitation of liability clauses bars the alleged breach concerning the 40-year recertification and costruction projects.

Jade Winds employed Star Painting & Waterproofing, Inc. ("Star") and then Americus Construction, Inc. ("Americus") as its general contractors and J. Eduardo Gonzalez, P.E., Inc., n/k/a Diversified Structural Design, Inc. ("Gonzalez Engineers") and then Emilio Castro, P.E. ("Castro Engineer") as its structural and project engineers.  *See* SOF ¶¶54-79.

Jade Winds' corporate officers signed the documents with the various professionals involved in the 40-year recertification, not FirstService or Ms. Mantin. *See* SOF ¶¶54, 59, 69, 74. Jade Winds' officers, board members and outside counsel were involved in the 40-year certification. SOF ¶¶53-55, 59, 61- 63, 66, 69, 72-74.

Star contracted to perform concrete restoration work at certain buildings at Jade Winds including Bamboo 1 & 3, Allamanda 1, 2, & 3, Camellia 1 & 2 and Daisy.  *See* SOF ¶54. Americus contracted to perform including Camellia 1 and 2, Daisy and Easterlily.  *See*  SOF ¶69.

Each of the contractors sued Jade Winds for breach of contract.  *Star Painting & Waterproofing, Inc. v. Jade Winds Ass'n*, Case No. 12-02967 CA 10 (Fla. 11th Cir. Ct.) ("Star Litigation") and *Americus Constr. Grp., Inc. v. Jade Winds Ass'n, Inc.*, Case No. 15-05678-CA-01 (Fla. 11th Cir. Ct.) ("Americus Litigation").  *See* SOF ¶¶66, 79.  In the Main Case, Jade Winds claimed Americus caused it damage.  *See* Main Case ECF Nos. 378, 599; SOF ¶30.

Ultimately, FirstService cannot be solely responsible for any alleged failures during the 40-year recertification process because of the involvement of and oversight and control by licensed professionals specifically hired to perform services for Jade Winds in connection with the 40-year certification.  *See* SOF ¶¶54, 56, 58, 69, 71, 73, 74 and 76.  Jade Winds' attorneys were also involved in the 40-year recertification process, the Star Litigation and the Americus Litigation.  *See* SOF ¶¶66, 69, 73, 74, and 79.  Moreover, Jade Winds agreed in the Contract that FirstService was not providing construction management services.  *See* Compl. Ex. A. § 3.4.

8

Thus, FirstService did not contract with Jade Winds to perform services relating to the 40-year certification or other construction projects. The logical reason is that Florida law requires licensed professionals to perform these services. *See* Fla. Stat. ch. 428 and ch. 471. The Contract's general and specific limitations of liability clauses bar this alleged breach.

### 3. Parking Fees (Complaint ¶15, Bullet point 10)

Jade Winds offers no proof that FirstService, including Ms. Mantin, misappropriated any money from Jade Winds' parking fee collections. FirstService did not create Jade Winds' parking system—Jade Winds did. *See* SOF ¶37. FirstService did not collect the parking revenue—Jade Winds' security service did. *See* SOF ¶90. The involvement of others in connection with the parking system triggers the limitation of liability provision, thereby excluding this alleged breach from consideration for liability purposes.

### 4. Board Elections, Document Amendments, and Unit Owner Fining (Complaint ¶15, Bullet points 11, 12, 13)

Jade Winds' outside counsel and its officers and board members were involved in Jade Winds' corporate governance, including elections, fining and document amendments. *See* SOF ¶¶93-99. The October 17, 2013 Articles of Amendment to the Articles of Incorporation of Jade Winds Association, Inc. ("October 2013 Amendment") were signed by Santiago Perez, as President and Donna Tollefsen, as Secretary. *See* SOF ¶96. Ross Toyne, Esq. signed the October 2013 Amendment as a witness. *See id.* Similarly, Jason Molder, Esq. was present and participated in the March 2014 election, as evidenced by the video recordings of the election. *See* SOF ¶99. Accordingly, FirstService cannot be solely responsible for any alleged issues concerning the elections and document amendments because of the involvement of its own board members and its outside counsel. While Jade Winds concedes these allegations do not give rise to independent damages, they also cannot serve as the basis for liability: the Contract's limitation of liability clause precludes consideration due to the involvement of Jade Winds' board and attorneys. *See* Compl. Ex. A, § 9].

### 5. Miriam Joel Litigation (Complaint ¶15, Bullet point 15)

Ms. Joel's issues at Jade Winds long predate FirstService and Ms. Mantin. *See* SOF ¶¶101-102, 106. On September 18, 2013, Jade Winds sued Ms. Joel to foreclose a condominium lien arising from unpaid maintenance fees, initiating the case styled *Jade Winds Ass'n, Inc. v. Miriam Joel,* Case No. 13-030039-CA-01 (Fla. 11th Cir. Ct.) ("Joel Lien Litigation"). *See* SOF

9

¶¶105.  In the Joel Lien Litigation, Ms. Joel detailed her issues and provided documentation that her complaints largely involve maintenance issues with her condominium date back to 1986.  *See* SOF ¶¶106.  On August 19, 2014, Joel filed a petition to enforce an arbitration award against Jade Winds, initiating the case styled *Jade Winds Ass'n, Inc. v. Joel*, Case No. 14-021603-CA-01 (02) (Fla. 11th Cir. Ct.) ("Joel Arbitration Enforcement Litigation").  *See* SOF ¶¶107.  The Joel Lien Litigation and the Joel Arbitration Enforcement Litigation are collectively referred to as the "Joel Litigation."

Jade Winds was represented by counsel in connection with the Miriam Joel Lien Litigation, first by the Toyne Firm, then the Molder Firm, then the Mirza Firm, and then the Hollander Firm.  *See* SOF ¶¶100, 105, 108, 109.  Thus, FirstService cannot be solely responsible for any alleged adverse outcome or damages arising from that litigation due to the involvement of counsel.  Certainly, FirstService did not "grossly mishandle the case of Jade Winds unit owner Miriam Joel," as alleged in the Complaint, because Jade Winds' counsel was handling the matter for Jade Winds.  *See id.*

Jade Winds seeks approximately $145,000 in damages relating to Jade Winds' litigation with unit owner Miriam Joel.  *See* ECF No. 73.  The Miriam Joel Litigation is outside of the scope of the Contract under § 3.3 (FirstService does not provide legal advice).  *See* Compl. Ex. A. 3.3.  Therefore, FirstService is not liable to Jade Winds for any alleged damages arising from the Miriam Joel Litigation.

### C.    Independent Tort Doctrine

The independent tort doctrine prevents Jade Winds from expanding this simple breach of contract proceeding into the broad tort realm.  To bring valid tort claims, Jade Winds must demonstrate that FirstService had "a recognized duty existing outside of the parties' contractual relationship" because "fundamental contract principles [continue to] bar a tort claim where a defendant has not committed a breach of duty independent of his breach of contract." *Capten Trading Ltd. v. Banco Santander Int'l*, 2018 WL 1558272, at *5 (S.D. Fla. Mar. 29, 2018) (internal quotation marks omitted) (quoting *Tulepan v. Roberts*, 2015 WL 235441, at *6 (S.D. Fla. Jan. 16, 2015)); *see also Reagan Wireless Corp. v. Apto Sols., Inc.*, 2018 WL 4901127, at *3 (S.D. Fla. Oct. 9, 2018) ("[T]o set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort."); *Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that a tort must

be "distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid tort claim based on a breach of contract) (citation omitted); *Elec. Sec. Sys. Corp. v. S. Bell Tel & Tel Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort. . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.").

Courts routinely grant summary judgment based upon the independent tort doctrine.[7] The Court should grant summary judgment on all of Jade Winds' tort claims. The alleged breaches set forth in paragraphs 21 (Breach of Contract); 27 (Gross Negligence); 32 (Breach of Fiduciary Duty); and 39-43 (Negligent Retention and Supervision) are the same or substantially similar, thereby proving the alleged duties and breaches are all duties and breaches under and of the Contract. *See* Compl, pp. 9-14.

Breach of fiduciary duty claims where the parties' relationship is contractual like FirstService and Jade Winds are particularly ripe for summary judgment. *See SFM Holdings Ltd. v. Banc of America Secs., LLC*, 600 F.3d 1334, 1338-40 (11th Cir. 2010) (defendant owed no fiduciary duty where it "performed to the extent of the agency created in the [subject a]greement"); *Bruhl v. Price WaterhouseCoopers Int'l*, 2008 WL 899250, at *3 (S.D. Fla. Mar. 31, 2008) (defendant-administrator of two hedge funds owed no fiduciary to investors where "the actions complained of do not indicate that [the defendant] stepped out of its contractual role as

---

[7] *See Berkery v. Pratt*, 390 F. App'x 904, 909 (11th Cir. 2010) (affirming district court's entry of summary judgment as to plaintiff's fraud claim where plaintiff "failed to provide evidence detailing how [the defendant]'s alleged misrepresentation—their unwillingness to sell the property—benefitted them," as "[t]his type of fraud is interwoven with [plaintiff]'s breach of contract claim because the misrepresentation relates to the [defendant's] non-performance of the contract and does not give rise to a separate cause of action"); *Capten Trading*, 2018 WL 1558272, at *5 (granting defendant's motion for summary judgment as to plaintiff's negligence and breach of fiduciary duty claims where the plaintiff "failed to establish a recognized legal duty existing outside of the parties' contractual relationship" and "[i]nstead, both claims fall squarely within the 'fundamental contract principles' that 'bar a tort claim where a defendant has not committed a breach of duty independent of his breach of contract.'"); *Tulepan*, 2015 WL 235441, at *7 (granting defendant's motion for partial summary as to plaintiff's conversion and breach of fiduciary duty claims where *inter alia* there was "no evidence in the record to support a conversion claim . . . beyond and independent from [d]efendant's alleged failure to comply with the terms of the parties' contracts" and breach of fiduciary duty claim was "dependent upon the existence of a contractual relationship between the parties" because the fiduciary obligation alleged was "owed only as a result of the existence of the contract") (citation and internal quotation marks omitted); *Tai-Pan, Inc. v. Keith Marine, Inc.*, 1997 WL 714898, at *7 (M.D. Fla. May 13, 1997) (granting defendant's motion for final summary judgment as to plaintiff's tort claims since they were not independent of plaintiff's breach of contract claim); *see also Reagan Wireless Corp.*, 2018 WL 4901127, at *3-4 (dismissing fraud claim with prejudice after determining it was barred by the independent tort doctrine because "the fraud alleged in [the] case [was] not separate from the performance of the contract" between the parties).

11

administrator for the [two f]unds or developed a special relationship and undertook a duty beyond those duties already assumed under [the applicable service agreements], to advise, counsel, protect, or benefit the [investors]"); *Greenacre Props. Inc. v. Rao*, 933 So. 2d 19, 26 (Fla. 2d DCA 2006) (property manager that performed duties of homeowners' association under a written contract owed no fiduciary duty to homeowner respecting its maintenance of association's records); *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 510 (S.D. Fla. 2000) (discussing requirement of the plaintiff "to prove facts independent of the parties' contracts" and "need to show that confidence was 'reposed as a result of the position of superiority and influence held by [the other party].'") (citation omitted); *The Michael Titze Co. Inc. v. Simon Prop. Grp., Inc.*, 400 F. App'x 455, 461 (11th Cir. 2010) ("Under Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties. . . . This is true because the duty is owed only as a result of the existence of the contract) (quoting *Detwiler v. Bank of Cent. Fla.*, 736 So. 2d 757, 759 (Fla. 5th DCA 1999)). *See also Weaver v. Mateer and Harbert, P.A.*, 523 F. App'x 565, 569 (11th Cir. 2013) (affirming district court's grant of summary judgment as to plaintiff's breach-of-fiduciary-duty claim where plaintiff failed to present evidence that defendants violated legal duties owed to him); *Welt v. Sirmans*, 3 F. Supp. 2d 1396, 1403-04 (S.D. Fla. 1997) (affirming Judge Robert A. Mark's decision to grant summary judgment in favor of defendants on breach-of-fiduciary-duty claim where the record evidence did not support a finding of an issue of material fact as to whether law firm breached its duty to holding company by preferring the interests of holding company's chief operating officer over those of the holding company).

Jade Winds' negligent retention and supervision claim is clearly engulfed by the Contract because § 3 requires FirstService to provide a licensed Community Association Manager, and Jade Winds alleges FirstService breached this aspect of the Contract by providing and then not removing Ms. Mantin. *See Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1349 (S.D. Fla. 2005) (dismissing plaintiff's claim for negligent hiring, training and supervision because it was not independent from his breach of contract claim), *aff'd,* 178 Fed. App'x 862, 863 (11th Cir. 2006) (district court correctly ruled that the plaintiff's tort claims were "not extraneous to his breach of contract claim"); *Lena Watts-Robinson v. Anderson Report Servs., Inc.*, 2011 WL 13295707, at *3 (M.D. Fla. Sept. 22, 2011) (dismissing negligent retention claim where "the acts

leading to the breach of contract are the same acts that form the basis of [p]laintiff's other claims"); *De Szterensus v. Bank of America, N.A.*, 2009 WL 10667423, at *3 (S.D. Fla. Sept. 28, 2009) (dismissing claim for negligent hiring or retention because it did not allege that defendant "committed a breach of duty that is independent" of the purported breach of contract); *Pierson v. Orlando Regional Healthcare Sys., Inc.*, 2010 WL 1408391, at *18-20 (M.D. Fla. Apr. 6, 2010) (dismissing negligent supervision claim where plaintiff surgeon did not allege commission of any act beyond a breach of the medical staff bylaws—a contract between the defendant hospital operator and plaintiff surgeon).

None of the tort claims identify any duty independent of the Contract and are "distinguishable" from the breach of contract claim. The Court should grant summary judgment in favor of FirstService against Jade Winds on Counts II, III, and IV based upon the independent tort doctrine.

### D.     Damages

Under Florida law, "[d]amages for breach of contract are limited to those 'damages as would normally result from the breach of contract, whether as the ordinary consequences of such breach, or as a consequence which may, under the circumstances, be presumed to have been in contemplation of the parties at the time they had made the contract as the probable result of the breach.'" *In re Maxko Petro., LLC*, 425 B.R. 852 (Bankr. S.D. Fla. 2010).

"[T]he purpose of compensatory damages is to compensate, not to punish defendants or bestow a windfall on plaintiffs." *MCI Worldcom Network Servs, Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223-24 (Fla. 2008) (citation omitted). "Generally, a person or entity injured by either a breach of contract or by a wrongful or negligent act or omission of another is entitled to recover a fair and just compensation that is commensurate with the resulting injury or damage." *Id.* at 223. "A plaintiff, however, is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant." *Id.*

To attempt to satisfy the requirements of Rule 26, after initially failing to do so, Jade Winds filed its Damage Disclosure [ECF No. 73], in which it cobbled together nine categories of alleged damages, totaling approximately $8.8 million. Jade Winds' nine categories of damages are not the ordinary consequence or probable result of FirstService's alleged breaches. Rather, the nine categories represent Jade Winds' attempt to obtain an impermissible windfall by obtaining damage amounts wholly unrelated to any potential injury FirstService could have

inflicted upon Jade Winds by breaching the Contract. Jade Winds also claims it is entitled to punitive damages, but it has entirely failed to present any evidence remotely approaching the heightened requirements for punitive damages. As discussed below, none of the categories of damages articulated by Jade Winds is recoverable under Florida law.

### 1.    Chapter 11 Bankruptcy Costs ($3.1 million)

Jade Winds claims it "was required to expend approximately $3,100,000 through a bankruptcy plan special assessment to pay claimants and professionals for bankruptcy legal fees and a forensic accounting to reconstruct its financial records." [ECF No. 73]. Jade Winds does not provide a breakdown of the $3.1 million, and the amount actually contradicts the $2,664,183.13 set forth in Jade Winds' Summary of Bankruptcy Plan Special Assessment. Nevertheless, Jade Winds cannot attribute one penny of the alleged $3.1 million to FirstService.

FirstService did not cause Jade Winds' chapter 11 filing. Rather, the actions of former board members and the presence of multiple lawsuits caused the filing. [Main Case ECF No. 18, 599]. This damage component fails for lack of causation alone.

Separately, Jade Winds obtained substantial benefits from confirming its Chapter 11 plan, which it could not obtain outside of bankruptcy, such as elimination of the $11.2 million liability to Jade Winds Tower under the 99-year lease and the $285,000 purchase of the recreation tower for substantially less that the tax appraised value (approximately $1.2 million). [Main Case ECF No. 599, pp. 9-10]. Moreover, Jade Winds resolved all of its then pending litigation in one forum in an efficient manner (Jade Winds Tower, Americus, Star Painting, and Miriam Joel) and reduced its obligations to its creditors. [Main Case ECF No. 599]. Finally, Jade Winds' Disclosure Statement [ECF No. 599] boasts the benefits of its Chapter 11 case and trumpets the great success it achieved to convince its creditors to vote in favor of the plan, which they did, and it was confirmed. To tax FirstService for any part of the Chapter 11 case would bestow a gross windfall on Jade Winds, which the law does not allow. *MCI Worldcom Network Servs, Inc.*, 995 So. 2d at 223-24.

### 2.    Cash-only Parking System ($216,000) and Scrap Metal Disposal ($33,000)

Jade Winds provides no documents to support the alleged $216,000 in alleged damages relating to what it calls "a cash-only, no receipt parking system" and the alleged failure to "deposit revenues generated from scrap metal disposal." [ECF No. 73]. Jade Winds cannot rely

solely on self-serving speculation as to damages to defeat summary judgment. *See Ying Jing Gan*, 996 F. 2d at 532; *Astro Tel, Inc.*, 979 F. Supp. 2d at 1295-96; *Hansen*, 206 F. Supp. 2d at 1225.

### 3. Foreclosed Unit Lease Revenue ($500,000)

Jade Winds fails to show how FirstService caused it to lose $500,000 in revenue "resulting from the failure to lease foreclosed units." [ECF No. 73]. Jade Winds' Board of Directors approved providing units to certain maintenance personnel as part of their compensation. *See* SOF ¶37. Jade Winds is unable to prove FirstService is liable for any amounts relating to leasing foreclosed units. Based upon the complete lack of evidence, the Court should grant summary judgment in FirstService's favor against Jade Winds on this element of damages.

### 4. 40-Year Certification ($2.9 million)

In its Amended Rule 26(a) Initial Disclosures [ECF No. 73], "Jade Winds estimates a loss of approximately $2,900,000 resulting from separate expenditures related to the failed 40-year recertification project and required work that needed to be performed, or re-performed, subsequent to that failure." As discussed above, the Contract expressly disclaimed any liability for construction management, and Jade Winds employed Star and Americus as its licensed general contractors and the Gonzalez Engineers and the Castro Engineer as its project engineers. [Insert Jade Winds Document Citations]. Moreover, Jade Winds settled with Americus in its Chapter 11 case and paid them an additional $235,000 through the Chapter 11 plan [Main Case ECF Nos. 598, 599, 711]. There is simply no evidence to support Jade Winds' purported $2.9 million damage claim relating to the 40-year recertification.

### 5. Amounts relating to Increase Bank Loan Costs ($470,000)

Assuming Jade Winds did incur $470,000 in increased bank loan costs, it is unclear whether this amount is included in the $3.1 million bankruptcy. As of the Petition Date, Jade Winds' schedules reflect it did not have any bank loans. [Main Case ECF No. 33]. If the $470,000 relates to the loan Jade Winds obtained from Plus International Bank to effectuate an early payoff of its chapter 11 plan, Jade Winds chose to pursue that course. [Main Case ECF No. 814]. It could have not obtained the loan, and instead paid the claimants pursuant to the terms of the chapter 11 plan. Not only is the $470,000 unsubstantiated, the amount has zero relationship

to any of FirstService's alleged conduct.  Therefore, the Court should grant summary judgment as to this element of damages.

### 6.      Fees paid to FirstService ($1.3 million)

Jade Winds seeks to recover approximately $1.3 million it paid to FirstService under the Contract.  Jade Winds cannot dispute that it paid these fees to FirstService under the Contract for the services FirstService rendered to Jade Winds.  Under Florida law, disgorgement of profits earned by or payments made to a defendant is not a remedy for breach of contract.  *See Proudfoot Consulting Co. v. Gordan*, 576 F.3d 1223, 1245 (11th Cir. 2009) (holding that disgorgement of profits is not a breach of contract remedy).  Accordingly, Jade Winds is not entitled to recover the $1.3 million it paid to FirstService under the Contract.  Jade Winds cannot just simply request disgorgement of all amounts paid to FirstService because such a request constitutes an improper measure of damages.

### 7.      Amounts relating to Miriam Joel Litigation ($145,000)

Jade Winds fails to articulate how FirstService caused it to incur $145,000 in damages relating to Jade Winds' litigation with Ms. Joel.  Merely claiming that FirstService "grossly mishandled the case of Miriam Joel" is insufficient to establish its request for $145,000 in damages.  Jade Winds only paid Ms. Joel $15,000 in its Chapter 11 plan [Main Case ECF Nos. 598, 599, 740].  Jade Winds voluntarily waived the alleged $130,000 of back maintenance so this damage was done by Jade Winds and not caused by FirstService.  *See id.* Next, Jade Winds does not allege—nor can it—that FirstService caused of any of the issues Ms. Joel complained about relating to her unit.  [Main Case ECF No. 740].  Likewise, Jade Winds does not allege—because it cannot—that FirstService in any way interfered with counsel who was representing Jade Winds in the litigation with Ms. Joel.  Jade Winds does not allege or present evidence to support the notion that FirstService caused any of the modifications to the common areas that were the subject of Ms. Joel's complaints. Jade Winds does nothing more than *conclude* "FirstService grossly mishandled the case of Jade Winds unit owner Miriam Joel."  While this conclusion survived Rule 12(b)(6) dismissal, it cannot overcome Rule 56.

### 8.      Administrative Fines ($150,000)

In perhaps the most conclusory statement of all, Jade Winds asserts, "Administrative fines resulting from mismanagement were imposed on Jade Winds in the approximate amount of

$150,000." [ECF No. 73]. It is unclear the source of administrative fines to which Jade Winds refers. If Miami-Dade County is the fining agency and the source of the fines relate to Jade Winds' compliance with building codes and ordinances, as referenced in the Complaint at paragraph 15, unnumbered bullet point 7, FirstService did not contract to provide construction management services to Jade Winds. *See* Compl. Ex. A, § 3.4. The unsubstantiated allegations are ripe for summary judgment.

### 9.    Punitive Damages

Jade Winds' claim for punitive damages is frivolous. Florida law does not permit recovery of punitive damages for breach of contract claims. *See John Brown Automation, Inc. v. Nobles*, 537 So. 3d 614, 617 (Fla. 2d DCA 1988) (collecting cases); *Allstate Ins. Co. v. Kelley*, 481 So. 2d 989, 990 (Fla. 5th DCA 1986). "The misconduct required to support a claim of punitive damages is the same conduct that is necessary to sustain a conviction for criminal manslaughter." *Jensen v. Cardillo, Keith & Bonaquist, P.A. (In re Leli)*, 420 B.R. 568, 570 (Bankr. M.D. Fla. 2009) (granting summary judgment on claim for punitive damages). There surely is no record evidence that a reasonable person could construe to support a finding that FirstService's alleged "misconduct involves an 'element of outrage similar to that usually found in a crime.'" *Id.* at 571.

Section 768.72, Florida Statutes, governs the imposition of punitive damages under Florida law and provides the applicable legal standards and framework for assessing such claims. *Murphy v. Ford Motor Co.*, 2009 WL 10674792, at *2 (N.D. Fla. Jan. 23, 2009). "A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence."[8] Fla. Stat. § 768.72(2); *see Flight Training, Inc. v. Tropical, Inc.*, 2007 WL 5117263, at *7 (S.D. Fla. Dec. 19, 2007) ("In order to recover punitive damages under Florida

---

[8] In Florida, "clear and convincing evidence" is "an intermediate burden of proof" that:

> requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

*S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC*, 139 So. 3d 869, 872-73 (Fla. 2014).

law, a plaintiff must demonstrate to the trier of fact that the defendant is personally guilty of intentional misconduct or gross negligence.").

Ultimately, "[w]hether the facts of a particular case will bring the case within the rule allowing punitive damages is for the court, and only when there is evidence that punitive damages could properly be awarded must the issue be sent to the jury." *Taylor v. Gunter Trucking Co., Inc.*, 520 So. 2d 624, 624 (Fla. 1st DCA 1988) (affirming trial court's entry of partial summary judgment on the plaintiff's punitive damages claim because there was insufficient evidence to support such an award), cited with approval by *Cherestal v. Sears Roebuck & Co.*, 2014 WL 644727, at *6 (M.D. Fla. Feb. 19, 2014) (finding that summary judgment was appropriate on the issue of punitive damages where plaintiff presented no evidence that defendant knew of alleged wrongdoer's conduct or acted with gross negligence).

Courts grant summary judgment on the issue of punitive damages where the plaintiff has failed to meet the standard required for imposing punitive damages.[9]  Here, Jade Winds has not—and cannot—come forward with any evidence to demonstrate FirstService's conduct rises to the level necessary to impose punitive damaged under Florida law, proof of which is required by clear and convincing evidence.  The Court should grant summary judgment in FirstService's favor against Jade Winds on Jade Winds' claim for punitive damages.

---

[9] *Fiorillo v. Carnival Corp.*, 2013 632264, at * 2-3 (S.D. Fla. Feb. 20, 2013) (granting defendant's motion for partial summary judgment on punitive damages where the record was devoid of any evidence demonstrating that defendant "acted recklessly or in a willful or wanton manner" and rejecting plaintiff's argument that discovery with regard to punitive damages was incomplete); *Howard v. Honda Motor Co., Ltd.*, 723 F. Supp. 688 (M.D. Fla. Oct. 27, 1989) (granting defendants' motion for partial summary judgment on punitive damages where plaintiff has not produced any evidence which would support an award of punitive damages under Florida law); *Kurtz v. Young*, 2009 WL 10667471, at *1 (S.D. Fla. Aug. 25, 2009) (denying plaintiff's motion to reconsider its partial summary judgment in favor of defendants as to plaintiff's claim for punitive damages where plaintiff did not carry his burden of coming forward with record evidence showing a conscious disregard or intentional misconduct and noting that "[t]rial courts regularly dismiss meritless claims for punitive damages by way of summary judgment"); *Flight Training, Inc. v. Tropical, Inc.*, 2007 WL 5117263, at *7 (S.D. Fla. Dec. 19, 2007) (granting defendant's motion as to punitive damages as there was "no evidence on the record that [the defendant] intentionally damaged [p]laintiff's plane or acted in such a reckless manner that its actions constitute a conscious disregard or indifference to [p]laintiff's property"); *Tiller v. Ford Motor Co.*, 2006 WL 166530, at *3 (M.D. Fla. Jan. 21, 2006) (on summary judgment, finding "no reasonable factfinder could find that plaintiff has shown by clear and convincing evidence that defendant engaged in or condoned 'intentional misconduct' or 'grossly negligent' conduct meriting an award of punitive damages"); *Liboy ex rel. Liboy v. Rogero ex rel. Rogero*, 363 F. Supp. 2d 1332, 1342 (M.D. Fla. 2005) (on summary judgment, finding that plaintiff "has not presented any evidence . . . to support a reasonable inference that [defendants] recklessly disregard human life under the circumstances").

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment for Defendant FirstService due to Jade Winds' inability to establish a genuine issue of material fact concerning any of its numerous generalized accusations and unsupported request for $8.8 million in damages.

**WHEREFORE**, Defendant FirstService respectfully requests the Court to enter an Order: (i) granting summary judgment on all counts in the Complaint in favor of Defendant FirstService and against Plaintiff Jade Winds, or alternatively, granting partial summary judgment on the claims and issues for which no genuine issue of material fact exists; (ii) awarding Defendant FirstService attorneys' fees under the terms of the Contract; and (iii) granting such further relief as the Court deems just and proper.

Dated: December 20, 2018          Respectfully submitted,

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON
Florida Bar Number 0016874
kpearson@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200
Facsimile:     (305) 789-3395

*Counsel for FirstService Residential Florida, Inc.*

## CERTIFICATE OF SERVICE

I CERTIFY that on December 20, 2018, the foregoing document is being filed electronically via the Court's CM/ECF website. I further certify that on December 20, 2018, the document is being served by transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notices of Electronic Filing in this adversary proceeding, as indicated on the below Service List.

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON

## SERVICE LIST
### Adv. Case No. 17-01393-RAM
### United States Bankruptcy Court, Southern District of Florida

The following parties are registered to receive Notice of Electronic Filing and should have been served through CM/ECF.

Daniel F Blonsky, Esq.
*dblonsky@coffeyburlington.com*
*groque@coffeyburlington.com*
*service@coffeyburlington.com*
*vmontejo@coffeyburlington.com*
*Counsel for Jade Winds Association, Inc.*

Justin E King
*jking@coffeyburlington.com*
*Counsel for Jade Winds Association, Inc.*

Kristopher E Pearson
*kpearson@stearnsweaver.com*
*mmasvidal@stearnsweaver.com*
*bank@stearnsweaver.com*
*rross@stearnsweaver.com*
*dillworthcdp@ecf.epiqsystems.com*
*larrazola@stearnsweaver.com*
*cgraver@stearnsweaver.com*
*Counsel for FirstService Residential Florida, Inc.*

Eric S Pendergraft
*ependergraft@sfl-pa.com*
*dwoodall@sfl-pa.com*
*scusack@sfl-pa.com*
*ematteo@sfl-pa.com*
*bshraibergecfmail@gmail.com*
*Counsel for Jade Winds Association, Inc.*

20