**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    **Case No.: 15-17570-RAM**

JADE WINDS ASSOCIATION, INC.                              Chapter 11

        Debtor.

_____/

JADE WINDS ASSOCIATION, INC.

        Plaintiff,

v.                                                        **Adv. No. 17-01393-RAM**

FIRSTSERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.

        Defendant.                          [Related to ECF #142, 143]

_____/

**NOTICE OF FILING JADE WINDS ASSOCIATION, INC.'S**
**RESPONSE TO FIRST SERVICE'S REQUEST FOR ADMISSIONS**

    Defendant FirstService Residential Florida, Inc. ("FirstService"), by and through

undersigned counsel, hereby gives notice and files Jade Winds Association, Inc.'s Response to

FirstService Request for Admissions, dated  January 20, 2019, attached hereto ("Response to

Request for Admissions").  The Response to Request for Admissions is filed, pursuant to Local

Rule 7027-1(D), in connection with FirstService's Statement of Undisputed Material Facts [ECF

#142] and Motion for Summary Judgment and Incorporated Memorandum of Law [ECF #143],

which is scheduled for hearing February 22, 2019, at 10:00 a.m.

Dated:  January 10, 2019

Respectfully submitted,

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON
Florida Bar Number 0016874
kpearson@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:     (305) 789-3200
Facsimile:     (305) 789-3395

*Counsel for FirstService Residential Florida, Inc.*

## CERTIFICATE OF SERVICE

I CERTIFY that on January 10, 2019, the foregoing document is being filed electronically via the Court's CM/ECF website.  I further certify that on January 10, 2019, the document is being served by transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notices of Electronic Filing in this adversary proceeding, as indicated on the attached Service List.

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON

#7115738v1

Case No. 15-17570-RAM
Adv. No. 17-01393-RAM

**<u>SERVICE LIST</u>**
**Adv. Case No. 17-01393-RAM**
**United States Bankruptcy Court, Southern District of Florida**

The following parties are registered to receive Notice of Electronic Filing and are served through CM/ECF.

Daniel F Blonsky, Esq.
*dblonsky@coffeyburlington.com*
*groque@coffeyburlington.com*
*service@coffeyburlington.com*
*vmontejo@coffeyburlington.com*
*Counsel for Jade Winds Association, Inc.*

Justin E King
*jking@coffeyburlington.com*
*Counsel for Jade Winds Association, Inc.*

Kristopher E Pearson
*kpearson@stearnsweaver.com*
*mmasvidal@stearnsweaver.com*
*bank@stearnsweaver.com*
*rross@stearnsweaver.com*
*dillworthcdp@ecf.epiqsystems.com*
*larrazola@stearnsweaver.com*
*cgraver@stearnsweaver.com*
*Counsel for FirstService Residential Florida, Inc.*

Eric S Pendergraft
*ependergraft@sfl-pa.com*
*dwoodall@sfl-pa.com*
*scusack@sfl-pa.com*
*ematteo@sfl-pa.com*
*bshraibergecfmail@gmail.com*
*Counsel for Jade Winds Association, Inc.*

#7115738v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

JADE WINDS ASSOCIATION, INC.,                          Case No. 15-17570-RAM

      Debtor.                                               Chapter 11
_____/

JADE WINDS ASSOCIATION, INC.,

      Plaintiff,

v.                                                     Adv. P. 17-01393-RAM

FIRSTSERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.,

      Defendant.
_____/

## JADE WINDS ASSOCIATION, INC.'S RESPONSE
## TO FIRSTSERVICE'S REQUESTS FOR ADMISSION

Plaintiff/Reorganized Debtor JADE WINDS ASSOCIATION, INC. ("Jade Winds"), by and through undersigned counsel and pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby responds to the 200 line-item Requests for Admission served by Defendant/Claimant FIRSTSERVICE RESIDENTIAL FLORIDA, INC. ("FirstService") on November 29, 2018.[1]

## GENERAL RESPONSES

The following general responses are hereby made and incorporated in each response to each of the Requests set forth below.

---

[1] FirstService previously served its "First Requests for Admission to Jade Winds" on August 11, 2017, consisting of 49 line items. Jade Winds served its response on October 10, 2017.

1.      In responding to the Requests, Jade Winds reserves (a) any objections as to competency, relevancy, materiality, privilege, and admissibility of any of the responses; (b) the right to object to other discovery procedures involving and relating to the subject matter of the Requests; and (c) the right to amend or supplement this response in the event that any information is unintentionally omitted.

2.      Jade Winds objects to the Requests to the extent that they seek information or communications protected from discovery by privilege, including, but not limited to, (a) the attorney work product doctrine; (b) the attorney-client privilege; and (c) any other applicable privileges.  The inadvertent production of any information protected from disclosure by privilege is not intended to be and shall not be (i) a waiver of such privilege and/or protection in whole or in part or (ii) a waiver of the right to object to the use of any such information in this or any other proceeding.

3.      Jade Winds objects to the Requests to the extent that they are overly broad, unduly burdensome, vague and/or ambiguous, or to the extent that they seek information that is irrelevant and not proportional to the needs of the case.

4.      Jade Winds objects to the Requests to the extent that they seek or purport to impose on it obligations other than those prescribed by the Federal Rules of Civil Procedure, and Jade Winds responds to the Requests in accordance with those Rules.

5.      Jade Winds objects to the Requests to the extent they seek redundant or duplicative information or use undefined terms, rendering them ambiguous.

6.      As discovery in this action is ongoing, Jade Winds reserves the right to amend and/or supplement its responses to the Requests.

7.      In these responses, whenever Jade Winds employs the phrase "subject to" its objections, it is responding to the particular Request as it may be narrowed by the general and specific objections and without waiver thereof.

8.      Jade Winds incorporates each of these General Responses in each and every one of its responses set forth below.

### SPECIFIC RESPONSES

1.      Mantin did not have access to Jade Winds' bank account at Branch Banking and Trust.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

2.      No FirstService employee had access to Jade Winds' bank account at Branch Banking and Trust.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

3.      Mantin was not an authorized signatory on Jade Winds' bank account at Branch Banking and Trust.

**RESPONSE:** Admitted.

4.      No FirstService employee was an authorized signatory on Jade Winds' bank account at Branch Banking and Trust.

**RESPONSE:** Admitted.

5.      Mantin did not sign any checks from Jade Winds' bank account(s).

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

Adv. P. 17-01393-RAM

6.      No FirstService employee signed any checks from Jade Winds' bank account(s).

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

7.      Jade Winds' board of directors approved all of its budgets.

**RESPONSE:** Admitted.

8.      Jade Winds' board members or officers signed contracts with vendors on behalf of Jade Winds.

**RESPONSE:** Admitted.

9.      Mantin did not sign contracts with vendors on behalf of Jade Winds.

**RESPONSE:** Denied.  Jade Winds is aware of at least one instance in which Mantin signed a $100,000 loan document with an insurance agent on behalf of Jade Winds without board approval or authorization.

10.      FirstService employees did not sign contracts with vendors on behalf of Jade Winds.

**RESPONSE:** Denied.  Jade Winds is aware of at least one instance in which a FirstService employee signed a $100,000 loan document with an insurance agent on behalf of Jade Winds without board approval or authorization.

11. Jade Winds generates its revenue from maintenance fees, special assessments, parking fees, and fines against owners of units at the Jade Winds condominium complex.

**RESPONSE:** Admitted.

12.      Jade Winds conducted a board of directors meeting on July 22, 2010 ("July 2010 Meeting").

**RESPONSE:** Admitted.

4

13.    JW00071 is a true and correct copy of the minutes of the July 2010 Meeting.

**RESPONSE:** Admitted.

14.    JW00075 is a true and correct copy of the Jade Winds Association News Letter Winter Edition, January 2011.

**RESPONSE:** Admitted.

15.    The Toyne Firm represented Jade Winds from January 1, 2009 to December 31, 2009.

**RESPONSE:** Admitted that the Toyne Firm represented Jade Winds for certain matters during that time period; otherwise denied.

16.    The Toyne Firm represented Jade Winds from January 1, 2010 to December 31, 2010.

**RESPONSE:** Admitted that the Toyne Firm represented Jade Winds for certain matters during that time period; otherwise denied.

17.    The Toyne Firm represented Jade Winds from January 1, 2011 to December 31, 2011.

**RESPONSE:** Admitted that the Toyne Firm represented Jade Winds for certain matters during that time period; otherwise denied.

18.    The Toyne Firm represented Jade Winds from January l, 2012 to December 31, 2012.

**RESPONSE:** Admitted that the Toyne Firm represented Jade Winds for certain matters during that time period; otherwise denied.

19.    The Toyne Firm represented Jade Winds from January 1, 2013 to December 31, 2013.

**RESPONSE:** Admitted that the Toyne Firm represented Jade Winds for certain matters during that time period; otherwise denied.

20.    The Toyne Firm represented Jade Winds from January 1, 2014 to February 2014.

**RESPONSE:** Admitted that the Toyne Firm represented Jade Winds for certain matters during that time period; otherwise denied.

21.    The Molder Firm represented Jade Winds from March 2014 to August 2014.

**RESPONSE:** Admitted that the Molder Firm represented Jade Winds for certain matters during that time period; otherwise denied.

22.    The Toyne Firm was representing Jade Winds in connection with an executive meeting of the Board of Directors on August 21, 2013, when a board of directors member was removed for cause.

**RESPONSE:** Admitted that a representative of the Toyne Firm was present at the August 21, 2013 meeting; otherwise denied.

23.    Ross Toyne, Esq. of the Toyne Firm signed as a witness the October 17, 2013 Articles of Amendment to the Articles of Incorporation of Jade Winds Association, Inc.

**RESPONSE:** Admitted that the document speaks for itself; otherwise, Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

24.    Perez, as President, and Donna Tollefsen, as Secretary, signed the October 17, 2013 Articles of Amendment to the Articles of Incorporation of Jade Winds Association, Inc.

**RESPONSE:** Admitted.

25.    The Toyne Firm represented Jade Winds in litigation against Miriam Joel filed on September 18, 2013 (Case No. 13-30039-CA-01 (1 0)) ("Joel Litigation").

**RESPONSE:** Admitted.

26.    The Molder Firm was substituted as counsel for the Toyne Firm by court order on March 12, 2014 in Joel Litigation.

**RESPONSE:** Admitted.

27.    The water leaks Miriam Joel alleged were in her unit predate FirstService's management of Jade Winds.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

28.    The Board of Directors directed Mantin to file a Motion for Extension of Time in the Joel Litigation.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

29.    Becker & Poliakoff, P.A. represented Jade Winds in the Star Painting Litigation.

**RESPONSE:** Admitted.

30.    The Toyne Firm represented Jade Winds in the Star Painting Litigation.

**RESPONSE:** Admitted.

31.    As of January 2011, the Bamboo association's 40-year recertification was completed.

**RESPONSE:** Admitted.

32.    As of January 2011, the Allamanda association's 40-year certification was underway and was completed by the summer of 2011.

**RESPONSE:** Admitted that the Allamanda association's 40-year recertification was underway by January 2011.  Denied that it was completed by the summer of 2011.

33.    Jade Winds hired engineer Emilio Castro, P.E. to evaluate the Rec. Tower.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

34.    The Toyne Firm represented Jade Winds in the litigation between JW Tower and Jade Winds in the Tower Litigation.

**RESPONSE:** Admitted.

35.    The Molder Firm was substituted as counsel for the Toyne Firm in the Tower Litigation on February 24, 2014.

**RESPONSE:** Admitted.

36.    Jason Molder, Esq. of the Molder Firm was present as counsel for Jade Winds at the 2014 annual meeting, which included elections of directors for the board of directors.

**RESPONSE:** Admitted.

37.    That meeting and election was [sic] recorded by a Jade Winds unit owner and posted on YouTube.com.

**RESPONSE:** Admitted that a portion of the 2014 annual meeting was recorded by a Jade Winds unit owner and posted online.  Denied that the entirety of the meeting was recorded by the unit owner or posted online.

38.    The Toyne Firm represented Jade Winds in connection with the Joel Litigation.

**RESPONSE:** Admitted.

39.    The Molder Firm was substituted as counsel for the Toyne Firm in connection with the Joel Litigation on February 14, 2014.

**RESPONSE:** Admitted.

40.     Jade Winds retained Rhonda Hollander, Esq. to act as its counsel in the Joel Litigation after the Molder Firm withdrew as counsel for Jade Winds.

**RESPONSE:** Admitted.

41.     Hyman, Spector & Mars ("Hyman Firm") act as Jade Winds' Registered Agent from in February 2007 to September 2007.

**RESPONSE:** Admitted.

42.     The Hyman Firm represented Jade Winds in February, March and April 2012.

**RESPONSE:** Jade Winds objects to the Request to the extent that it is ambiguous.  Subject to this objection, Jade Winds states that it is unable to ascertain in what capacity the Request refers to the Hyman Firm's representation; therefore, denied.

43.     The Hyman Firm was involved in the dispute between JW Tower and Jade Winds regarding Rec. Tower.

**RESPONSE:** Jade Winds objects to the Request to the extent that it is ambiguous.  Subject to this objection, Jade Winds states that it is unable to ascertain what is meant by "involved in the dispute" in the Request as it pertains to the Hyman Firm; therefore, denied.

44.     The Rec. Tower suffered flood damage in October 2011.

**RESPONSE:** Denied.

45.     The Toyne Firm became involved in March 2013 with the dispute between JW Tower and Jade Winds.

**RESPONSE:** Admitted.

46.     Christian Lebrell was president of Jade Winds when the dispute with JW Tower began.

**RESPONSE:** Denied.  The litigation between Jade Winds Tower and Jade Winds Association (which is how Jade Winds interprets the undefined term "the dispute") commenced with a Complaint filed May 3, 2013, after the death of Christian Lebrell, in Case No. 2013-016010-CA-01, in Miami-Dade County Circuit Court.

47.     Jade Winds alleged in the Tower Litigation that the Rec. Tower was improperly constructed, faulty and unsafe materials were used in the construction, and the structure was not built in compliance with the original plans and specifications.

**RESPONSE:** Admitted that Jade Winds filed Counterclaims in the Jade Winds Tower Litigation (Ex. 74 to FirstService Statement of Undisputed Facts), which document speaks for itself.

48.     FirstService did not construct the Rec. Tower.

**RESPONSE:** Admitted.

49.     FirstService did not cause the flood damage to the Tower in October 2011.

**RESPONSE:** As Jade Winds understands the undefined terms used, admitted.

50.     The Molder Firm was permitted to withdraw as counsel by court order on September 9, 2014 in the Tower Litigation.

**RESPONSE:** Admitted.

51.     The Mirza Basulto & Robbings, LLP firm appeared on October 3, 2014 as counsel for Jade Winds in the Tower Litigation.

**RESPONSE:** Admitted.

52.     By Court Order dated December 15, 2014, Rhonda Hollander, P.A. was substituted as counsel for Jade Winds in the Tower Litigation.

**RESPONSE:** Admitted.

53.    From 2007 to March 21, 2014, Preferred Accounting served as Jade Winds' accountants.

**RESPONSE:** Admitted.

54.    Ms. Costales-Abiseid served as Jade Winds' Registered Agent from September 10, 2007 to January 24, 2014.

**RESPONSE:** Admitted.

55.    Preferred Accounting performed accounting services for Jade Winds comprised of: standard book-keeping, posting maintenance payments to unit owners accounts, maintaining accurate payment history of maintenance and special assessments, receiving invoices from vendors, preparing checks to be signed by the appropriate board members, preparing Jade Winds' financial statements, providing estoppels upon request.

**RESPONSE:** Denied that Preferred Accounting received invoices directly from vendors; otherwise admitted, insofar as the list above provides a non-exhaustive list of Preferred Accounting's services.

56.    Preferred Accounting utilized the "TOPS" accounting software.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

57.    The TOPS software is specialize [sic] for use in the management of community associations.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

58.    Mantin could not access the TOPS software Preferred Accounting utilized in connection with providing accounting services to Jade Winds.

**RESPONSE**: Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

59.    While Preferred Accounting performed accounting services for Jade Winds, Preferred Accounting would send invoices to parties who owed money to Jade Winds that requested the payment be send to Preferred's address at 6020 SW 40 Street, Miami, FL 33144.

**RESPONSE**: Denied.

60.    The alleged "targeted imposition of unwarranted and punitive fines and fees on certain unit owners in violations of law" referenced in paragraph 15 of the Complaint began in 2014.

**RESPONSE**: Denied.  The allegations regarding the imposition of unwarranted and punitive fines and fees referenced in paragraph 15 of the Complaint began in 2013.

61.    On September 21, 2011, Christian Lebrell, as President of Jade Winds, executed an agreement with Connections Elevator, LLC.

**RESPONSE**: Admitted.

62.    In connection with the "targeted imposition of unwarranted and punitive fines and fees on certain unit owners in violations of law" referenced in paragraph 15 of the Complaint, Mantin was acting pursuant to directions given by Perez, as President of Jade Winds.

**RESPONSE**: Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

63.    The Molder Firm was representing Jade Winds in March 2014 when Jade Winds claims certain unit owners were "targeted imposition of unwarranted and punitive fines and fees on certain unit owners in violations of law" referenced in paragraph 15 of the Complaint.

**RESPONSE**: Admitted.

64.     While Preferred Accounting provided accounting services to Jade Winds, Preferred Accounting applied late fees to unit owner's [sic] accounts using its accounting software.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

65.     The 40-year certification process commenced sometime in early 2012.

**RESPONSE:** Denied.

66.     Jade Winds hired Castor Engineer as its engineer in connection with the 40-year certification process.

**RESPONSE:** Admitted that Castor Engineer was hired as engineer for certain buildings in connection with the 40 year certification process; otherwise, denied.

67.     The original estimated value for the repairs to the Rec. Tower was approximately $1.7 million.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

68.     Jade Winds passed an assessment for the $1.7 million to be paid over ten years for the Rec. Tower.

**RESPONSE:** Admitted that the assessment was declared illegal by the DBPR and that the illegal assessment included the Rec. Tower costs as an item among others; otherwise denied.

69.     Fuoco Group provided accounting services to Jade Winds in April 2014.

**RESPONSE:** Denied that Fuoco Group actually provided accounting services to Jade Winds at that time; however, Jade Winds did contract with Fuoco Group by that date.

70.     Fuoco Group provided accounting services to Jade Winds in May 2014.

**RESPONSE:** Denied that Fuoco Group actually provided accounting services to Jade Winds at that time; however, Jade Winds did contract with Fuoco Group by that date.

71.     Fuoco Group provided accounting services to Jade Winds in June 2014.

**RESPONSE:** Denied that Fuoco Group actually provided accounting services to Jade Winds at that time; however, Jade Winds did contract with Fuoco Group by that date.

72.     Mantin electronically signed Jade Wind's annual report as registered agent on March 21, 2015.

**RESPONSE:** Denied.

73.     Perez signed the Security Service Agreement on behalf of Jade Winds with MCORP Security Systems, Inc.

**RESPONSE:** Admitted.

74.     Jade Winds' auditor's issuance of qualified audits did not cause economic damages to Jade Winds.

**RESPONSE:** As Jade Winds understands the undefined terms used, admitted.

75.     The Jade Winds board of directors approved Jade Winds' entry into the contract with Americus.

**RESPONSE:** Admitted that Jade Winds' board of directors approved Jade Winds' entry into the contracts contained in Composite Exhibit 54 to FirstService's Statement of Undisputed Material Facts; otherwise denied.

76.     When Jade Winds contracted with Americus, Americus was a licensed general contracting company and an active Florida Corporation.

**RESPONSE:** Admitted.

77.     Jade Winds contracted with Americus to perform the work required for Jade Winds' forty-year recertification required by Miami-Dade County, Florida.

**RESPONSE:** Admitted that Americus contracted with Jade Winds to perform work for the 40-year recertification by Miami-Dade County, Florida of the Camellia 1 Building, Camellia 2 Building, Daisy Building and Easter Lily Building; otherwise denied.

78.     Jade Winds contracted with Americus for Americus to perform services on Camellia 1 Building, Camellia 2 Building, Daisy Building, and Easter Lily Building.

**RESPONSE:** Admitted.

79.     Jade Winds contracted with Americus to perform the 40-year Miami-Dade County concrete re-certification, painting work, Electrical 40 Year Recertification and other related work on various buildings at Jade Winds.

**RESPONSE:** Admitted that Americus contracted with Jade Winds to perform certain work related to the 40-year concrete recertification and painting work for: Camellia 1 Building, Camellia 2 Building, Daisy Building, and Easter Lily Building.  Admitted that Americus contracted with Jade Winds to perform certain work related to the Electrical 40-year Recertification for: Camellia 1 Building, Camellia 2 Building, Daisy Building, Easter Lily Building, Bamboo 1 Building, Bamboo 3 Building, Alamanda 1 Building, Alamanda 2 Building and Alamanda 3 Building.  Otherwise, denied.

80.     In February 2012, Jade Winds entered into a contract with Americus for the improvement and renovation of the Camellia 1 Building for its 40-year recertification.

**RESPONSE:** Admitted.

81.     Christian Lebrell, as President of Jade Winds, signed the contract with Americus on February 20, 2012, for work in connection with the 40-year recertification.

**RESPONSE:** Admitted.

82.     J. Eduardo Gonzalez, P.E. acted a Jade Winds' project consultant for the work done by Americus relating to the Camellia I Building.

**RESPONSE:** Admitted.

83.     Steven B. Lesser, Esq. represented Jade Winds in connection with its contract with Americus for the Camellia 1 Building.

**RESPONSE:** Admitted.

84.     Christian Lebrell executed the agreement with Americus relating to the Camellia 1 Building on behalf of Jade Winds as President of Jade Winds.

**RESPONSE:** Admitted.

85.     In August 2013, Jade Winds entered into a contract with Americus for the improvement and renovation of the Camellia 2 Building for its 40-year recertification.

**RESPONSE:** Admitted.

86.     Emilio Castro, P.E. and EC Associates P.E. acted a Jade Winds' project consultant for the work done by Americus relating to the Camellia 2 Building.

**RESPONSE:** Admitted.

87.     Perez executed the contract with Americus relating to the improvement and renovation of the Camellia 2 Building for its 40-year recertification.

**RESPONSE:** Admitted that Perez executed a contract with Americus regarding Camelia 2 on or about August 21, 2013 relating to the 40-year recertification project; otherwise, denied.

88.     In January 2012, Jade Winds entered into a contract with Americus for the improvement and renovation of the Daisy Building for its 40-year recertification.

**RESPONSE:** Admitted.

89.     J. Eduardo Gonzalez, P.E. acted a Jade Winds' project consultant for the work done by Americus relating to the Daisy Building.

**RESPONSE:** Admitted.

90.     Steven B. Lesser, Esq. represented Jade Winds in connection with its contract with Americus for the Daisy Building.

**RESPONSE:** Admitted.

9l.     Christian Lebrell executed the agreement with Americus relating to the Daisy Building on behalf of Jade Winds as President of Jade Winds.

**RESPONSE:** Admitted.

92.     In November 2011, Jade Winds entered into a contract with Americus for the improvement and renovation of the Easter Lily Building for its 40-year recertification.

**RESPONSE:** Admitted.

93.     J. Eduardo Gonzalez, P.E. acted a Jade Winds' project consultant for the work done by Americus relating to the Easter Lily Building.

**RESPONSE:** Admitted.

94.     Steven B. Lesser, Esq. represented Jade Winds in connection with its contract with Americus for the Easter Lily Building.

**RESPONSE:** Admitted.

95.     Christian Lebrell executed the agreement with Americus relating to the Easter Lily Building on behalf of Jade Winds as President of Jade Winds.

**RESPONSE:** Admitted.

96.     In March 2013, Jade Winds entered into a contract with Americus for the electrical work related to the 40-year certification at Jade Winds.

Adv. P. 17-01393-RAM

**RESPONSE:** Admitted that Americus contracted with Jade Winds to perform certain work related to the Electrical 40-year Recertification for: Camellia 1 Building, Camellia 2 Building, Daisy Building, Easter Lily Building, Bamboo 1 Building, Bamboo 3 Building, Alamanda 1 Building, Alamanda 2 Building, and Alamanda 3 Building.  Otherwise, denied.

97.    In January 2015, the Americus contracts with Jade Winds were terminated by Jade Winds.

**RESPONSE:** Admitted.

98.    Americus was responsible for obtaining permits for Jade Winds' 40-year recertification required by Miami-Dade County, Florida.

**RESPONSE:** Admitted.

99.    In connection with Americus' work, Jade Winds had engaged a project engineer.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

100.    The Jade Winds board of directors approved Jade Winds' retention of Emilio Castro, P.E. as engineer to perform services in connection with 40-year recertification required by Miami-Dade County, Florida.

**RESPONSE:** Admitted.

101.    The Jade Winds board of directors approved Jade Winds' entry into the contract with MCorps Security.

**RESPONSE:** Admitted.

102.    Jade Wind's [sic] President wrote checks to cash in April 2014 while Fuoco Group was providing accounting and bookkeeping services for Jade Winds.

**RESPONSE:** Denied that Fuoco Group actually provided accounting and bookkeeping services for Jade Winds; otherwise admitted.

103.    Xochitl Alvarez and Harry Bermudez, along other unit owners, sued Jade Winds for accounting, injunctive relief and sought appointment of a receiver in the Unit Owners Litigation.

**RESPONSE:** Admitted.

104.    Kevin Peters, Esq. represented Xochitl Alvarez and Harry Bermudez, along with other unit owners, in their suit against Jade Winds.

**RESPONSE:** Admitted.

105.    The Toyne Firm represented Jade Winds in the Unit Owners Litigation.

**RESPONSE:** Admitted.

106.    Ms. Alvarez and Mr. Bermudez alleged Jade Winds mismanaged the condominium community in their lawsuit against Jade Winds.

**RESPONSE:** Admitted that, at paragraph 24 of the Complaint in the Unit Owners Litigation, Ms. Alvarez and Mr. Bermudez alleged that Jade Winds, "**by and through** its Board of Directors and **its property manager, Donna Mantin**, have acted improperly and inappropriately, failed to carry out their fiduciary duty to OWNERS and other residents of [Jade Winds] while advancing the personal agendas of certain Board members and [Jade Winds'] property manager" (emphasis added).

107.    The unit owners did not sue FirstService in the Unit Owners Litigation.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

108.    The unit owners did not sue Mantin in the Unit Owners Litigation.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

109.    In paragraph 6 of the complaint in the Unit Owners Litigation, the unit owners alleged Jade Winds failed to pay expenses, including: (i) the payment of utilities; (ii) payments necessary for the maintenance of the common areas; (iii) payments related to special capital assessment projects; (iv) the payment of fines levied by Miami-Dade County for the repeated and continuing failure to comply with Miami-Dade County building codes and ordinances.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

110.    In paragraph 11 of the complaint in the Unit Owners Litigation, the unit owners alleged Jade Winds improperly amended several of Jade Winds' declaration of condominium, the By-laws and Articles of Incorporation.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

111.    In paragraph 17 of the complaint in the Unit Owners Litigation, the unit owners alleged Jade Winds proceeded with an election of March 27, 2014 in a manner not in accordance with the law.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

112.    In paragraph 21 of the complaint in the Unit Owners Litigation, the unit owners alleged that Jade Winds' behavior became so egregious that its accountant, Ana Costales, could not, in good conscience, continue to serve in such capacity and resigned on March 21, 2014.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

113.    In paragraph 22 of the complaint in the Unit Owners Litigation, the unit owners allege Jade Winds secretive behavior certainly suggests that the Association was engaged in improper and inappropriate conduct.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, admitted.

114.    JW001234 reflects that H. Martin Bermudez claims he "caught" Jan Capote of MCorps Security shredding documents.

**RESPONSE:** Admitted.

115.    Donna Tollefsen signed a $60,866.46 check to "cash" on Jade Winds operating account at Branch Banking & Trust.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

116.    Donna Tollefsen signed a $60,866.46 check to "cash" on Jade Winds operating account at Branch Banking & Trust while AKAM On-site, Inc. was managing Jade Winds.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

117.    Mantin was not criminally charged for any of her actions during the time she served as Community Association Manager of Jade Winds.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, upon information and belief, admitted.

Adv. P. 17-01393-RAM

118.    Perez was not criminally charged for any of his actions during the time he served as President of Jade Winds.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, upon information and belief, admitted.

119.    Sharony was not criminally charged for any of her actions at Jade Winds.

**RESPONSE:** Objection.  Irrelevant and not proportional to the needs of the case.  Subject to this objection, upon information and belief, admitted.

120.    On October 7, 2014, Jade Winds retained the services of Assad Mirza, Esq. of Mirza, Basulto & Robbins, LLP.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

121.    On October 11, 2014, the Board of Directors conducted a meeting, which commenced at 9:44 a.m. ("October 2014 Meeting").

**RESPONSE:** Admitted that a meeting of certain board members occurred on October 11, 2014; however, the meeting did not conform with Jade Winds' bylaws or Florida law; therefore, denied.

122.    JW000280 is a true and correct copy of the Minutes of the October 2014 Meeting.

**RESPONSE:** Denied.  JW000280 was not approved or signed by any board member and Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny the remainder of this request.  Furthermore, the meeting did not conform with Jade Winds' bylaws or Florida law.

123.    The October 2014 Meeting is the first board of directors meeting at which the board of Jade Winds considered termination of FirstService.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

124.    At the October 2014 Meeting, the board of directors voted on and approved a motion to retain Donna Mantin as current staff in the Jade Winds Association Management Office.

**RESPONSE:** Admitted that a meeting of certain board members occurred on October 11, 2014; however, the meeting did not conform with Jade Winds' bylaws or Florida law; therefore, denied. Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny the remainder of this request.

125.    On October 13, 2014, Jade Winds retained the services of Rhonda Hollander, Esq.

**RESPONSE:** Admitted that Rhonda Hollander was retained on October 13, 2014; however, the meeting at which Rhonda Hollander was hired did not conform with Jade Winds' bylaws or Florida law.

126.    On October 11, 2014, Jade Winds hired AKAM as the management company for Jade Winds.

**RESPONSE:** Admitted that AKAM was hired on October 11, 2014; however, the meeting at which AKAM was hired did not conform with Jade Winds' bylaws or Florida law.

127.    On October 11, 2014, Jade Winds hired Mantin as community association manager for Jade Winds.

**RESPONSE:** Admitted that Mantin was hired on October 11, 2014; however, the meeting at which Mantin was hired did not conform with Jade Winds' bylaws or Florida law. Further, on October 11, 2014, Mantin remained a FirstService employee and advised the board to hold an illegal meeting to fire FirstService and to hire her.

23

128.    On October 14, 2014, Mantin assisted AKAM, with the transition of management of Jade Winds in place of FirstService.

**RESPONSE:** Denied.

129.    On October 14, 2014, Mantin met with the Board of Directors and discussed the transfer of all of its cases from Assad Mirza, Esq. to Rhonda Hollander, Esq.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

130.    AKAM recommended Jade Winds retain Rhonda Hollander, Esq.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

131.    On October 15, 2014, Mantin along with Perez, the then President of Jade Winds, went to Rhonda Hollander, Esq.'s office, and Ms. Mantin had delivered to Rhonda Hollander, Esq. the documents relating to Jade Winds' pending litigation issues.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

132.    As of November 19, 2014, Jade Winds had not yet complied with the DBPR's September 26, 2014 binding Order (DBPR Case No. 2014-02-2455) to have an election to select new members of the Board of Directors.

**RESPONSE:** Admitted.

133.    Jesse Bergeman, Perez, Tulio Revilla, Donna Tollefsen, and Edward Velazquez voted in favor of retaining Mantin as manager of Jade Winds at the October 2014 Meeting.

**RESPONSE:** Admitted that those parties voted in favor of retaining Mantin; however, the meeting at which Mantin was hired did not conform with Jade Winds' bylaws or Florida law.

134.    On October 23, 2014, AKAM sent a letter to Jade Winds' board of directors immediately terminating its services as property manager ("AKAM Termination Letter").

**RESPONSE:** Admitted.

135.    In the AKAM Termination Letter, AKAM referenced directions from Jade Winds' manager and board member as grounds for termination.

**RESPONSE:** Admitted.

136.    Mantin was employed by Jade Winds at the time AKAM wrote the AKAM termination letter, not by FirstService.

**RESPONSE:** Admitted.

137.    Jade Winds' parking fees were in the rules and regulations prior to Mantin becoming Community Association Manager at Jade Winds.

**RESPONSE:** Admitted that Jade Winds had parking rules and regulations prior to Mantin becoming Community Association Manager, and that parking fees were contained within those rules and regulations; otherwise denied.

138.    On June 14, 2014, Harry Bermudez filed a complaint against FirstService with the Florida Department of Business & Professional Regulation ("DBPR").

**RESPONSE:** Admitted.

139.    On September 1, 2015, the DBPR closed Bermudez's case without a finding of probable cause to believe FirstService violated the provisions of the Chapter 468, Part VIII, Florida statues [sic], and/or the rules promulgated pursuant thereto.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

140.    The overnight parking fee procedures were in effect prior to 2007.

**RESPONSE:** Admitted that Jade Winds had parking fee procedures prior to 2007; otherwise denied.

141.    The day parking fee procedures were in effect since 2010.

**RESPONSE:** Admitted that Jade Winds had parking fee procedures before, during and after 2010; otherwise denied.

142.    Gerstle, Rosen & Goldenberg, P.A. acted as Independent Auditors for Jade Winds for the years 2012-2015.

**RESPONSE:** Admitted.

143.    Jade Winds filed its *Disclosure Statement for Second Amended Chapter 11 Plan of Reorganization Proposed By Jade Winds Association, Inc.*, dated July 11, 2016 [Main Case ECF No. 599] ("Disclosure Statement").

**RESPONSE:** Admitted.

144.    In the Disclosure Statement, the Debtor did not reference FirstService as a factor that contributed to its chapter 11 filing.

**RESPONSE:** Admitted that, in the Disclosure Statement, the Debtor did not directly reference FirstService as a factor that contributed to its Chapter 11 filing.  However, Jade Winds did indirectly reference FirstService as a factor by stating in the Disclosure Statement's discussion of factors that former board members absconded with monies estimated to be in excess of $2,000,000 from Jade Winds' operating and security deposit accounts, by referencing the negative actions by prior board members, and by referencing the multitude of lawsuits and threatened lawsuits facing Jade Winds.

145.    Jade Winds did not list claims against FirstService in its Liquidation Analysis attached to the Disclosure Statement.

26

**RESPONSE:** Admitted.

146.    Jade Winds did not value claims against FirstService in its Liquidation Analysis attached to the Disclosure Statement.

**RESPONSE:** Admitted.

147.    In the Disclosure Statement, Jade Winds stated, "former board members absconded with monies estimated to be in excess of $2,000,000 from the Debtor's operating and security deposit accounts." [Main Case ECF No. 599, p. 7].

**RESPONSE:** Admitted.

148.    In the Disclosure Statement, Jade Winds stated, "[t]he Debtor's Unit Owners have been negatively impacted by the actions of prior board members and the Debtor does not have the financial ability to continue to defend these lawsuits while continuing to pay its day to day operations." [Main Case ECF No. 599, p. 8].

**RESPONSE:** Admitted.

149.    In the Disclosure Statement, Jade Winds stated, "[t]he Hillman Report estimated the damages caused to the Debtor by Americus exceeded at least $3.3 million." [Main Case ECF No. 599, p. 131].

**RESPONSE:** Admitted.

150.    In the Disclosure Statement, Jade Winds asserts that Americus caused it to fail the 40-year certification. [Main Case ECF No. 599, p. 13].

**RESPONSE:** Denied.

151.    Americus performed work for Jade Winds.

**RESPONSE:** Admitted.

152.    Jade Winds benefited from the work performed by Americus.

**RESPONSE:** Denied.

153.    FirstServices [sic] is not affiliated with Americus.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

154.    Mantin is not affiliated with Americus.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

155.    Perez is not affiliated with Americus.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

156.    Sharony is not affiliated with Americus.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

157.    Jade Winds agreed in its Chapter 11 plan to pay Americus $235,000 for work performed for which Jade Winds had not make payment.

**RESPONSE:** Admitted that Jade Winds agreed to pay Americus $235,000 via the Chapter 11 plan to resolve Americus' claims against Jade Winds, which Jade Winds was objecting to and disputing, and that Jade Winds paid Americus this sum following confirmation of the Chapter 11 plan.

158    Jade Winds agreed in its Chapter 11 plan to pay Joel $15,000 and to make certain repairs to Unit 110.

**RESPONSE:** Admitted.

159.    Jade Winds' confirmed chapter 11 plan provided for unsecured creditors to elect to received 25% of their allowed unsecured claim within 60 days of the confirmation date.

**RESPONSE:** Admitted that Jade Winds' confirmed Chapter 11 plan provided for allowed general unsecured creditors to elect to receive 25% of their allowed unsecured claim within 60 days of the effective date of the plan.

160.    More than one unsecured creditors elected or by default was given the claim treatment that provided for payment of 25% of their allowed general unsecured claims.

**RESPONSE:** Admitted.

16l.    Jade Winds reduced payment of the total amount of allowed general unsecured claims through utilization of the option for unsecured creditors to received [sic] 25% of their allowed unsecured claims.

**RESPONSE:** Admitted.

162.    More than one of Jade Winds' general unsecured creditors elected to receive payment of 25% of their claims rather than full payment of their claim.

**RESPONSE:** Admitted.

163.    Jade Winds obtained a reduction of its liability to its creditors by confirming its chapter 11 plan.

**RESPONSE:** Admitted.

164.    FirstService did not contract to provide maintenance services to Jade Winds.

**RESPONSE:** Admitted.

165.    FirstService did not contract to provide janitorial services to Jade Winds.

**RESPONSE:** Admitted.

166.    Jade Winds' maintenance personal [sic] were engaged by Jade Winds.

**RESPONSE:** Denied.

167.    Susan Fitch, President of AKAM, was once employed by FirstService.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

168.    William Coleman of Atlantic & Pacific Association Management, Inc., was once employed by FirstService.

**RESPONSE:** Admitted.

169.    Jade Winds retained KapilaMukamal, LLP ("KapilaMukamal") in the Bankruptcy Case to "investigate any claims with regard to the prior board members alleged embezzlement, and, any parties associates with the alleged acts." [Main Case ECF No. 389, p. 2].

**RESPONSE:** Admitted, except the document referenced should be ECF No. 398.

170.    Jade Winds' application to employ KapilaMukamal details the scope of KapilaMukamal's employment. [Main Case ECF No. 389, p. 2].

**RESPONSE:** Admitted, except the document referenced should be ECF No. 398.

171.    KapilaMukamal sought $83,145.00 from Jade Winds for KapilaMukamal's services. [Main Case ECF No. 695].

**RESPONSE:** Admitted.

172.    KapilaMukamal stated in its fee application that it worked 306.30 hours on the Jade Winds matter. [Main Case ECF No. 389, p. 2].

**RESPONSE:** Admitted, except the document referenced should be ECF No. 695.

173.    Jade Winds paid KapilaMukamal at least $83,591.37 for its services.

**RESPONSE:** Admitted.

174.    KapilaMukamal did not file a report in the Main Case.

**RESPONSE:** Admitted.

175.    Jade Winds did not reference a report by KapilaMukamal in the Complaint.

**RESPONSE**: Admitted.

176.    In Jade Winds' chapter 11 case, it reduced its overall liabilities to creditors.

**RESPONSE**: Admitted.

177.    In Jade Winds' chapter 11 case, it purchased the rec. Tower from JW Tower for $285,000, which was significantly lower than the tax appraiser's value of the property of $1,232,749, at the time of Jade Winds' purchase.

**RESPONSE**: Admitted that Jade Winds purchased the note and mortgage held by Banco Popular for $285,000, thereby making Jade Winds the mortgagee as to the Rec. Tower, and further admitted that Jade Winds paid an additional sum of $22,500 to JW Tower, all as part of a bankruptcy court-approved settlement with JW Tower.

178.    In Jade Winds' chapter 11 case, it eliminated the rental payment it was required to pay to JW Tower over the remaining life of the 99-year lease for the Rec. Tower, which saved Jade Winds in excess of $11 million.

**RESPONSE**: Admitted.

179.    In Jade Winds' chapter 11 case, it resolved its dispute with Joel.

**RESPONSE**: Admitted that, in the Chapter 11 case, the Debtor's settlement with Joel was approved; however, Joel has recently raised issues concerning Jade Winds' performance under the settlement and has threatened to bring litigation to enforce the settlement.

180.    In Jade Winds' chapter 11 case, it resolved its litigation with Americus.

**RESPONSE**: Admitted.

181.    In Jade Winds' chapter 11 case, it resolved its litigation with Star Painting.

**RESPONSE**: Admitted that, in the Chapter 11 case, Jade Winds listed Star Painting as an undisputed general unsecured creditor with a claim of $0 and admitted that Star Painting did not

file a claim, resulting in Star Painting receiving no distribution under the confirmed Chapter 11

plan, which discharged any pre-petition liability Jade Winds had as to Star Painting.

182.    Jade Winds rented out at least one unit to maintenance or janitorial staff.

**RESPONSE:** Admitted.

183.    Jade Winds included the rent for the units to the maintenance and janitorial staff as

part of their compensation.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can

readily obtain is insufficient to enable it to admit or deny this request.

184.    Jade Winds cannot trace any Jade Winds money or funds to Perez and Sharony's

payment of approximately $60,000 in dental work for Mantin.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can

readily obtain is insufficient to enable it to admit or deny this request.

185.    Jade Winds cannot trace any Jade Winds money or funds to personal bank accounts

of Perez.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can

readily obtain is insufficient to enable it to admit or deny this request.

186.    Jade Winds cannot trace any Jade Winds money or funds to personal bank accounts

of Sharony.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can

readily obtain is insufficient to enable it to admit or deny this request.

187.    Jade Winds cannot trace any Jade Winds money or funds to personal bank accounts

of Mantin.

**RESPONSE:** Jade Winds has made reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit or deny this request.

188.    Jade Winds has not produced any documents in this Adversary Proceeding that support its claim for damages relating to scrap metal revenue as more fully described in the Amended Initial Disclosures.

**RESPONSE:** Admitted.

189.    Jade Winds could seek reinspection of its property from Miami-Dade County to receive approval of its 40-year recertification project if it failed to receive approval upon inspection.

**RESPONSE:** Admitted.

190.    Jade Winds' obligations to the Toyne Firm were satisfied in connection with confirmation of its chapter 11 plan.

**RESPONSE:** Admitted.

191.    Jade Winds did not own any units free and clear that it could have rented out and obtained all of the rental income.

**RESPONSE:** Denied.

192.    Jade Winds did not sue FirstService or any board member prior to confirmation of its chapter 11 plan.

**RESPONSE:** Admitted.

193.    To date, Jade Winds has not sued any board member for any wrongdoing alleged to have occurred from January 1, 2007 to November 1, 2014.

**RESPONSE:** Admitted.

194.    To date, Jade Winds has not sued Perez.

**RESPONSE:** Admitted.

195.    To date, Jade Winds has not sued Sharony.

**RESPONSE:** Admitted.

196.    As of October 17, 2014, there were at least three computers at Jade Winds' offices.

**RESPONSE:** Admitted.

197.    Jade Winds did not produce any documents in this Adversary Proceeding to support its claim of $500,000 in damages for failure to lease foreclosed units.

**RESPONSE:** Denied.

198.    Jade Winds' 40-year recertification process was ongoing in 2007 when Bob Libman was Jade Winds' President.

**RESPONSE:** Denied.

199.    In a letter in February 2007, Jade Winds then President Bob Libman wrote to Jade Winds' residents, "[t]he fiduciary responsibility of the past 7 or 8 Boards of Directors was completely ignored under the Tower Lease contract. NOT A SINGLE CENT WAS EVER ALLOCATED ANNUALLY TO MAINTAIN THE FACILITIES FOR THE USE OF OUR RESIDENTS." (emphasis in original).

**RESPONSE:** Admitted.

200.    Jade Winds' parking fees were in the rules and regulations when Mantin became manager at Jade Winds in 2009.

**RESPONSE:** Admitted that Jade Winds had parking fee procedures before and during 2009 and that parking fees were contained within those rules and regulations; otherwise denied.

Adv. P. 17-01393-RAM

Respectfully submitted,

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Tel:  305-858-2900
Fax:  305-858-5261

By: /s/ Daniel F. Blonsky
    Kendall B. Coffey, Esq.
    Florida Bar No. 259861
    kcoffey@coffeyburlington.com
    Daniel F. Blonsky, Esq.
    Florida Bar No. 972169
    dblonsky@coffeyburlington.com
    Justin E. King, Esq.
    Florida Bar No. 121408
    jking@coffeyburlington.com
    groque@coffeyburlington.com
    service@coffeyburlington.com

     and

SHRAIBERG, LANDAU & PAGE, P.A.
2835 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Tel:  561-443-0800
Fax:  561-998-0047

By:/s/ Eric Pendergraft
    Eric Pendergraft
    Florida Bar No. 91927
    ependergraft@slp.law

*Attorneys for Jade Winds Association*

Adv. P. 17-01393-RAM

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail, on January 10, 2019, on all counsel or parties of record on the Service List below.

By: /s/ *Daniel F. Blonsky*
Daniel F. Blonsky

## SERVICE LIST

Kristopher E. Pearson
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL  33130
Phone: (305) 789-3200
Fax: (305) 789-2688
kpearson@stearnsweaver.com

36