UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

JADE WINDS ASSOCIATION, INC.,                    Case No. 15-17570-RAM

     Debtor.                                              Chapter 11

_____/

JADE WINDS ASSOCIATION, INC.,

     Plaintiff,

v.                                                               Adv. P. 17-01393-RAM

FIRST SERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.,

     Defendant.

_____/

**PLAINTIFF JADE WINDS' RESPONSE TO**
**FIRSTSERVICE'S STATEMENT OF MATERIAL FACTS**

Plaintiff Jade Winds Association, Inc. ("Jade Winds") by and through undersigned counsel,

hereby submits its response to the Statement of Material Facts ("Statement") [ECF No. 142]

submitted by Defendant FirstService Residential Florida, Inc. ("FirstService").  In this response,

Jade Winds follows the paragraph numbering used in FirstService's Statement.

     1.     Not disputed.

     2.     Not disputed.

     3.     Not disputed.

     4.     Not disputed that the parties entered into what is defined in the Statement as the

"Contract" and that the Contract sets forth the terms and conditions governing the contractual

relationship between the parties.  Jade Winds disputes FirstService's characterization and

summary of the language contained in the Contract and refers to the Contract for its true and correct content.  Specifically, the Contract's terms do no limit FirstService's services to "assistance."  *See, e.g.,* Contract at §§ 3, 3.1, 3.2, 3.3, 3.4, 3.6, 3.12.  Furthermore, the Contract does not provide that all personnel engaged to perform services for Jade Winds are its independent contractors.  Instead, the Contract establishes that FirstService directly selects its own employees to perform services for Jade Winds.  *Id.* at § 3 and Schedule I.

5.      Not disputed that § 9 of the Contract is a provision entitled "Liability."  Disputed that it is "broad limitation of liability clause."  Jade Winds further disputes FirstService's characterization and summary of the language contained in §§ 9, 3.3 and 3.4 of the Contract and refers to the Contract for its true and correct content.

6.      Disputed.  There is no record evidence cited in support of this statement. FirstService only cites § 12 of the March 24, 2014 Addendum, which does not discuss which party bargained for specific terms under that document.  Jade Winds refers to § 12 for its true and correct content.

7.      Not disputed that FirstService contracted with Jade Winds to perform all bookkeeping services effective June 1, 2014 or that FirstService did not have check signing authority pursuant to the Contract.  Jade Winds disputes that FirstService was not contracted to perform some general bookkeeping services on its behalf, given FirstService's expansive powers under the Contract.  *See, e.g.*, Contract at § 3.

8.      Not disputed that the referenced email was written by Santiago Perez.  However, disputed that it is a statement of Jade Winds as opposed to Perez personally, acting in his own interests.  In the email, Perez expressed his own opinion, and not those of the board members, who were not copied on the email.  Because discovery is not yet concluded, Jade Winds has not been

afforded an opportunity to challenge the veracity of the contents of the referenced email and no depositions have been taken of Donna Mantin, Perez, any board member, or any other knowledgeable party; therefore, the contents of the referenced email are disputed.

9.     Not disputed.  However, on the referenced date, Mantin remained employed by FirstService and the referenced failures were due to FirstService's own employee.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of the contents of the referenced document and no depositions have been taken of Mantin, any representative of FirstService, or any other knowledgeable party; therefore, the contents of the referenced document are disputed.

10.     Disputed.  This statement is only supported by the affidavit of Mantin – FirstService's employee.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Mantin or any other knowledgeable party; therefore, the contents of the referenced Mantin Affidavit are disputed.

11.     Not disputed, but not relevant to any issue to be determined on FirstService's Motion for Summary Judgment.

12.     Not disputed.

13.     Not disputed that a meeting of some sort involving certain members of the Jade Winds board of directors was held on October 11, 2014.  Disputed as to what occurred at the meeting and as to whether there were any legal ramifications arising from the meeting, as the existence and propriety of the notice and its conformity with Jade Winds' bylaws and Florida law is disputed.  Further, on October 11, 2014, Mantin remained a FirstService employee and is believed to have advised the board to hold an illegal or unauthorized meeting to hire her directly.  *See* Fla. Stat. § 718.112; Jade Winds Bylaws § 8.  In addition, the cited document, Exhibit 7, is, on its face, an unsigned draft that is not

an official Jade Winds record and which has not been substantiated as valid and accurate.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of its contents and no depositions have been taken of Mantin or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

      14.     Not disputed.

      15.     Not disputed.

      16.     Not disputed.

      17.     Disputed.  This statement is only supported by the affidavit of Mantin – FirstService's employee.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Mantin or any other knowledgeable party; therefore, the contents of the referenced Mantin Affidavit are disputed.

      18.     Disputed.  This statement is only supported by the affidavit of Mantin – FirstService's employee.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Mantin or any other knowledgeable party; therefore, the contents of the referenced Mantin Affidavit are disputed.

      19.     Not disputed.

      20.     Not disputed that Exhibit 12 (an October 17, 2014 email by Sean Fontana) states that Mr. Fontana "searched all three computers yesterday and couldn't find" a rental waiting list. Jade Winds disputes FirstService's conclusions about that statement and refers to the email for its true and correct content.

21.    Not disputed that AKAM sent a resignation letter to the Jade Winds board of directors dated October 23, 2014 (Exhibit 13) stating, in pertinent part, as follows: "After we have made many attempts to obtain documentation and explanation for your dismal financial circumstances and extensive pending litigation against the Association, we have not had success. [¶]  As such, in light of all the financial operational irregularities, and directions from your manager and board member denying us the ability to meet the legal requirements of the Florida State Statutes, as well as the hostile work environment which is being created for the staff we placed in your location, we have no alternative but to resign as managing agent for the above property immediately."  Jade Winds further notes that the manager referenced in the resignation letter is Mantin.  Jade Winds disputes FirstService's characterization and summary of the language contained in the resignation letter and refers to the resignation letter for its true and correct content.

22.    Not disputed.

23.    Disputed.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Mantin or any other knowledgeable party; therefore, Jade Winds disputes whether Mantin electronically signed the referenced document, Exhibit 14, or whether her name appears as the result of a scrivener's error or for some other reason.

24.    Jade Winds does not dispute the contents of the referenced documents [Main Case ECF Nos. 1, 18] and refers to those documents for their true and correct contents.  Jade Winds disputes First Service's characterization and summary of the documents, particularly that "board members abscond[ing] with over $2,000,000 and the burdens of the lease regarding its recreational tower" were Jade Winds' "primary" causes of the Chapter 11 filing.  The referenced documents speak for themselves and display an abundance of concerns causing the bankruptcy filing.

25.     Not disputed.

26.     Not disputed, but not relevant to any issue to be determined on FirstService's Motion for Summary Judgment.

27.     Disputed and not relevant to any issue to be determined on FirstService's Motion for Summary Judgment.  Nevertheless, Jade Winds provides the following in dispute of this statement.  During the underlying bankruptcy case, all parties, **including FirstService**, were well aware of Jade Winds' affirmative claims against FirstService by virtue of Jade Winds' Court-approved retention of a forensic accountant in February 2016 in order to investigate such claims, which retention was noticed to all creditors, **including FirstService**.  *See* [Main Case ECF No. 398 at ¶¶ 6-7] ("Several factors contributed to the Debtor's decision to file this case, including former board members having absconded with monies estimated to be in excess of $2,000,000.... Through this application, the Debtor seeks to employ [KapilaMukamal, LLP] to investigate any claims with regard to the prior board members alleged embezzlement, and, **any parties associated with the alleged acts**" (emphasis added); [Main Case ECF No. 400]; [Main Case ECF No. 441]; [Main Case ECF No. 444]).

Moreover, after retaining the forensic accountant to investigate claims against FirstService and others involved in the embezzlement of Jade Winds' funds, Jade Winds filed, on May 23, 2016, its First Amended Chapter 11 Plan of Reorganization [Main Case ECF No. 563] and accompanying Disclosure Statement [Main Case ECF No. 564].  The First Amended Chapter 11 Plan of Reorganization includes the term "Surplus Cash", defined in pertinent part on page 12 as "any Claims belonging to the Debtor as of the Petition Date, including any funds recovered related to any alleged embezzlement of monies estimated to be in excess of $2,000,000...."  Section 4.18 of the First Amended Chapter 11 Plan of Reorganization provides, in pertinent part, that the

Surplus Cash shall be used to speed up payments to general unsecured creditors electing to be paid 100% of their claims over time under the Plan.  Page 30 of Jade Winds' Disclosure Statement accompanying this Plan contains identical language as to the use of Surplus Cash to benefit general unsecured creditors.  Creditors registered to receive electronic notice, including FirstService, received notice of this Plan and Disclosure Statement.  These are not the actions of a party wishing to conceal potentially lucrative claims in order to avoid sharing with its creditors.

Further, Jade Winds also filed its Second Amended Plan of Reorganization [Main Case ECF No. 598] and accompanying Disclosure Statement [Main ECF No. 599] which, as to the terms involving the Surplus Cash and its benefit to general unsecured creditors, were identical to the previous Plan and Disclosure Statement.  Thereafter, the Court found that the Disclosure Statement for the Second Amended Plan of Reorganization contained adequate information for creditors and parties in interest to make an informed judgment regarding the Plan pursuant to 11 U.S.C. § 1125. It therefore approved the Disclosure Statement and permitted Jade Winds to solicit acceptance of the Plan from creditors.  [Main Case ECF No. 600].  All creditors and interested parties, including FirstService, received notice of this Plan and Disclosure Statement, and notice of the hearing scheduled to consider confirmation of the Plan.  [Main Case ECF No. 608].

On August 11, 2016, the Court held a hearing to consider confirmation of Jade Winds' Second Amended Plan of Reorganization.  Several creditors attended, including FirstService.  At the hearing, Jade Winds' counsel requested that the Second Amended Plan of Reorganization be modified in several ways and, specifically, that the Plan be modified to provide that the claims it may have against FirstService are not waived and are retained as assets of Jade Winds. FirstService was given the opportunity to object to confirmation of the Second Amended Plan of Reorganization as amended, but did not do so.  Thereafter, the Court entered an order confirming

Jade Winds' Second Amended Plan of Reorganization, as so modified.  [Main Case ECF No. 711].

Paragraph 3(a) of the confirmation order states as follows:

> **The claims or causes of action that the Debtor may have against the following persons are not waived and are retained as assets of the Reorganized Debtor: (i) FirstService Residential Florida, Inc.,** along with its current or former employees, officers, agents, affiliates, parents, or subsidiaries; (ii) Santiago Perez; (ii) other former members of the Debtor's Board of Directors; and (iii) former employees of the Debtor.  Inclusion of the foregoing retained claims and causes of action shall not be deemed a waiver or abandonment by the Reorganized Debtor of unlisted causes of action or claims that the Debtor may possess.

(*Id.*) (emphasis added).  FirstService did not appeal the confirmation order, which is now final.

Accordingly, Jade Winds did not conceal its affirmative claims against FirstService, nor did it seek or obtain any benefit to the detriment of its creditors based on concealment or retention of such claims.  Creditors, including FirstService, were at all material times aware of such claims and the potential benefit to be conferred on creditors if Jade Winds was successful in prosecuting its affirmative claims against FirstService.  In denying FirstService's motion to dismiss the Complaint and rejecting its judicial estoppel argument, "the Court concluded that the Plaintiff's actions during the underlying chapter 11 case did not support application of the equitable doctrine of judicial estoppel under the standards articulated in *Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017)."  [ECF No. 28 at 2].

28.     Not disputed.

29.     Not disputed that confirmation of the Plan reduced Jade Winds' overall liabilities to creditors and resolved certain prepetition litigation claims.  Jade Winds disputes FirstService's characterization and summary of the language contained in the cited Plan documents and refers to those filings for their true and correct content.

30.     Not disputed.

31.     Not disputed.  However, in that same action, Jade Winds also waived claims for over $83,000 in assessment fees. [Main Case ECF No. 599].

32.     Not disputed.

33.     Not disputed.

34.     Not disputed.

35.     Not disputed.

36.     Not disputed that paragraph 15 of the Complaint includes 16 bullet points that are "an illustrative and non-exhaustive list of the wrongdoing that took place during the tenure of First Service, and for which it is legally responsible."  Jade Winds disputes FirstService's characterization and summary of the Complaint and refers to the Complaint for its true and correct content.

37.     Not disputed, except that Jade Winds does not understand what FirstService means by "regularly advised by professionals hired by Jade Winds, such as lawyers and accountants, who attended board meetings."  Jade Winds does not dispute that lawyers and accountants that it hired attended some board meetings, but it disputes that they attended all board meetings.  Jade Winds further does not dispute that its professional property manager that it hired, FirstService, regularly advised the board of directors and attended all board meetings, unlike lawyers and accountants.

38.     Not disputed.

39.     Not disputed that the Complaint sets forth claims regarding wrongdoing for which FirstService is legally responsible related to Jade Winds' bookkeeping or that FirstService contracted with Jade Winds to perform all bookkeeping services effective June 1, 2014.  Jade Winds disputes that six bullet points in the Complaint deal exclusively with bookkeeping and further disputes FirstService's characterization and summary of the Complaint and refers to the

Complaint for its true and correct content. Jade Winds further disputes that FirstService was not contracted to perform some general bookkeeping services on behalf of Jade Winds, given FirstService's expansive powers under the Contract. *See* Contract at § 3.

40.     Not disputed that Ana Costales provided accounting services to Jade Winds from 2007 to March 2014. Disputed as to the scope of Ms. Costales' services. *See* Jade Winds' Response to Request for Admissions (ECF No. 156) at #54. Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Ms. Costales or any other knowledgeable party; therefore, Jade Winds disputes the balance of this statement.

41.     Not disputed that Exhibit 18 speaks for itself or that Preferred Accounting stopped serving as a Jade Winds bookkeeper in March 2014. Disputed that Jade Winds unit owners repeatedly made accusations concerning missing funds to Preferred Accounting and Exhibit 18 does not support that statement. Jade Winds further disputes FirstService's characterization and summary of Exhibit 18 and refers to that document for its true and correct content. Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Ms. Costales or any other knowledgeable party; therefore, Jade Winds disputes the balance of this statement.

42.     Not disputed that Composite Exhibit 20 speaks for itself or that Fuoco Group was employed to provide accounting services after Preferred Accounting. Jade Winds disputes FirstService's characterization and summary of Composite Exhibit 20 and refers to those documents for their true and correct content.

43.     Not disputed that FirstService contracted with Jade Winds to perform all bookkeeping services effective June 1, 2014. Jade Winds disputes that FirstService did not

perform some general bookkeeping services on behalf of Jade Winds prior to June 2014, given FirstService's expansive powers under the Contract.  *See, e.g.*, Contract at § 3.  Jade Winds disputes that the referenced documents evidence that FirstService "asked Jade Winds to provide FirstService with bank statements and accounting information" or that "Jade Winds' Board of Directors was unable to provide Jade Winds' bank statements or accounting information despite First Service's repeated requests."  To the contrary, the referenced emails are between Gary Pyott, FirstService President, and FirstService's employees, Donna Mantin and Lauren Van Barclum.  Within those documents, Pyott requests the bank statements and accounting information from Mantin – and not Jade Winds' Board of Directors.  Furthermore, because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Mantin, Pyott, Van Barclum, or any other person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

44.     Disputed that the Fining Committee imposed the fines levied on unit owners due to an absence of Fining Committee minutes referencing the same.  In addition, the notices of violation were required to be sent by FirstService's employee, Donna Mantin, as is provided by § 3 of the Contract.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of any person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

45.     Not disputed that Jade Winds' President, Santiago Perez, wrote checks to cash during the referenced time period.  Jade Winds disputes FirstService's characterization of the purpose of the "checks to cash"; the documents cited by FirstService, Exhibits 24, 25 and 26, do

not support these statements.  Moreover, because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of Perez, representatives from AKAM or the Fuoco Group, or any other person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

46.      Not disputed.

47.      Not disputed.

48.      Not disputed that one of the stated bases for the qualified opinion is quoted accurately, but disputed that the statement quotes all bases for the qualified opinion.  Jade Winds disputes FirstService's characterization and summary of the Exhibit 30 documents and refers to those documents for their true and correct content.

49.      Not disputed that one of the stated bases for the qualified opinion is quoted accurately, but disputed that the statement quotes all bases for the qualified opinion.  Jade Winds disputes FirstService's characterization and summary of the Exhibit 31 documents and refers to those documents for their true and correct content.

50.      Not disputed.

51.      Not disputed that the Complaint sets forth claims regarding wrongdoing for which FirstService is legally responsible related to the 40-year recertification and other construction projects.  Jade Winds disputes that four bullet points in the Complaint deal exclusively with mismanagement of construction projects and further disputes FirstService's characterization and summary of the Complaint and refers to the Complaint for its true and correct content.

52.       Not disputed that § 3.4 of the Contract provides that FirstService "is not expected to perform the services which would normally be performed by a construction manager and/or an

engineer." Jade Winds disputes FirstService's characterization and summary of that provision and refers to the Contract for its true and correct content. Jade Winds further disputes FirstService's suggestion that it did not actually provide any construction management services. Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of any person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

53.  Not disputed.

54.  Not disputed.

55.  Disputed. There is no record evidence supporting this statement. FirstService only cites Exhibit 39, which does not discuss who made the decision to select Star Painting.

56.  Not disputed that Gonzalez Engineers performed work related to 40-recertification project on the Bamboo buildings, the Camelia buildings, the Allamanda buildings and the Daisy buildings; that Gonzalez Engineers is a licensed engineer; that Gonzalez Engineers prepared project manuals related to the 40-year recertification project for Allamanda 1, 2, & 3, Camellia 1 & 2, Daisy, and Easter Lilly buildings; or that Gonzalez Engineers submitted certain referenced documents to Miami-Dade County. Jade Winds disputes FirstService's characterization that Exhibit 44 "evidences" Jade Winds' "role as inspector of the project" because the referenced documents do not support that statement. Jade Winds further disputes FirstService's characterization and summary of the contents of the project manuals and refers to them for their true and correct contents. Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of the project manuals or any other documents referenced in this statement and has not deposed any knowledgeable party; therefore the remaining portions of this statement are disputed.

57.    Not disputed that as of January 2011, the Bamboo association's 40-year recertification was completed, and that the Allamanda association's 40-year recertification was underway.  Disputed that Allamanda's recertification was completed by the summer of 2011; the document cited by FirstService does not support that statement.

58.    Not disputed that Gonzalez Engineers attended some weekly meetings; otherwise disputed as there is no record evidence supporting this statement.  FirstService only cites Exhibit 39, which does not support the balance of this statement.

59.    Not disputed that Jade Winds approved change orders.  Disputed that the referenced board members were actively involved in the project.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of any person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

60.    Disputed.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement (which is based on inadmissible hearsay) and no depositions have been taken of a representative of Gonzalez Engineers, Mantin, or any other knowledgeable parties regarding it.

61.    Not disputed.

62.    Jade Winds does not dispute that the boards selected Sherwin-Williams as the paint vendor.  Because discovery is not yet concluded, Jade Winds has not be afforded an opportunity to challenge the remainder of this statement concerning the scope of Star Painting's work or the deterioration of its relationship with Jade Winds and no depositions have been taken of any person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

63.     Not disputed.

64.     Not disputed that Star Painting sent Jade Winds the referenced notice regarding unpaid invoices, in the amount of $343,228.72.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the remainder of this statement concerning whether Gonzalez Engineers approved the invoices and no depositions have been taken of any representative of Gonzalez Engineers or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

65.     Not disputed.

66.     Not disputed.

67.     Not disputed that Mantin provided an affidavit in opposition to Star Painting's motion for summary judgment.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge Mantin's level of cooperation with Jade Winds' counsel in that litigation and no depositions have been taken of Mantin or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

68.     Not disputed that Jade Winds entered into a settlement agreement, a copy of which is Exhibit 53.  Jade Winds disputes FirstService's characterization and summary of that settlement agreement and refers to the document for its true and correct content.

69.     Not disputed that Jade Winds entered into contracts with Americus, copies of which are Composite Exhibit 54, or that Steven Lesser represented Jade Winds in connection with entry into those contracts, or that Americus was a licensed general contractor and active corporation at the time.  Jade Winds disputes FirstService's characterization and summary of those contracts and refers to those documents for their true and correct content.

70.     Not disputed that Gonzalez Engineers sent letters dated April 5, 2012 confirming that it ceased being Special Inspector of Record for the 40-year recertification; otherwise disputed as there is no record evidence supporting this statement.  FirstService only cites Exhibit 56, which does not support the balance of this statement.

71.     Not disputed that Castro Engineers was hired as engineer on record for the structural repairs for the 40-year recertification and that it is a licensed engineer; otherwise disputed as there is no record evidence supporting this statement.  FirstService only cites Exhibit 57, which does not support the balance of this statement.

72.     Not disputed that Jade Winds entered into a contract with Americus for electrical repair work, a copy of which is Exhibit 61, or that the contract was signed by Perez.  Jade Winds disputes FirstService's characterization and summary of the communications between Mantin and Eva Lotsos and refers to the full email chain for its true and correct content.

73.     Not disputed that the Toyne Firm represented Jade Winds in connection with entry into the contract with Americus for electrical repair work, a copy of which is Exhibit 61.  Jade Winds disputes FirstService's characterization and summary of Castro Engineers' role in connection with that contract and refers to the contract for its true and correct content.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of the remainder of this statement regarding the functions that Castro Engineers actually performed and has not deposed any representative of Castro Engineers or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

74.     Not disputed that Jade Winds entered into a contract with Americus for structural repair work, a copy of which is Exhibit 62, that the contract was signed by Perez, or that the Toyne Firm represented Jade Winds in connection with entry into that contract.  Jade Winds disputes

FirstService's characterization and summary of Castro Engineers' role in connection with that contract and refers to the contract for its true and correct content.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of the remainder of this statement regarding the functions that Castro Engineers actually performed and has not deposed any representative of Castro Engineers or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

75.    Not disputed.

76.    Not disputed that Americus was a party responsible for obtaining permits for Jade Winds' 40-year recertification required by Miami-Dade County, Florida.

77.    Not disputed that Jade Winds entered into contracts with Americus.  Jade Winds disputes FirstService's characterization and summary of the language contained in the contracts and refers to the contracts for their true and correct content.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of the remainder of this statement regarding the work actually performed by the project engineer and has not deposed any representative of Americus or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

78.    Not disputed.

79.    Not disputed.

80.    Not disputed that issues regarding the Rec. Tower existed before FirstService's management or the contents of Bob Libman's letter, but not relevant to any issue to be determined on FirstService's Motion for Summary Judgment.

81.    Not disputed.

82.    Not disputed that the Hyman Firm was Jade Winds' registered agent from February 2007 to September 2007, but not relevant to any issue to be determined on FirstService's Motion for Summary Judgment.  Jade Winds cannot determine what is meant by "involved in the dispute" (*see* Jade Winds' Response to Request for Admissions [ECF No. 156] at #42), so the remainder of this statement is disputed.

83.    Disputed. The document cited by FirstService (Exhibit 70) does not indicate water damage in 2011, but instead references water damages as of September 2012.

84.    Not disputed that Americus performed work on the Rec. Tower, including repair work pursuant to the 40-year recertification and repair of the fire sprinkler and alarm systems, that Castro Engineers submitted bid proposals for work, and that it conducted a visual inspection of the site in connection therewith.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of the remainder of this statement and has not deposed any representative of Castro Engineers or any other knowledgeable party; therefore, the remaining portions of this statement are disputed.

85.    Not disputed that the referenced communications that are part of Exhibit 73 were sent.  Jade Winds disputes FirstService's characterization and summary of the language contained in those communications and refers to those documents for their true and correct content.

86.    Not disputed.

87.    Not disputed.

88.    Not disputed.

89.    Not disputed.

90.    Not disputed that parking fees were included in the rules and regulations when Mantin became manager; that new rules and regulations were implemented including a provision

for parking fees in 2012; that Mantin was obligated to enforce the governing documents of Jade

Winds; or that Santiago Perez executed the contract with MCorp Security Associates.  Jade Winds

disputes that FirstService did not collect any parking revenues or that it was properly enforcing

the parking rules and regulation and its characterization and summary of the language contained

in Jade Winds' Complaint, which does not support those statements and is the only evidence upon

which FirstService purports to rely.  Because discovery is not yet concluded, Jade Winds has not

been afforded an opportunity to challenge the veracity of the remainder of this statement, nor has

it been able to depose Mantin or any other knowledgeable party; therefore, the remaining portions

of this statement are disputed.

91.    Not disputed.

92.    Not disputed.

93.    Not disputed.

94.    Not disputed.

95.    Not disputed that a meeting was held on September 26, 2013.  Because discovery

is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of

the remainder of this statement and has not deposed any knowledgeable party regarding it;

therefore, the remaining portions of this statement are disputed.

96.    Not disputed.

97.    Not disputed.

98.    Not disputed that a FirstService employee was not an official member of the Fining

Committee.  Jade Winds disputes that no FirstService employee played a role in the levying of

fines on unit owners.  Jade Winds further disputes that the Fining Committee imposed the fines

levied on unit owners due to an absence of Fining Committee minutes referencing the same.  In

addition, the notices of violation were required to be sent by FirstService's employee, Donna Mantin, as is provided by § 3 of the Contract.  Because discovery is not yet concluded, Jade Winds has not been afforded an opportunity to challenge the veracity of this statement and no depositions have been taken of any person with knowledge regarding this statement; therefore, the remaining portions of this statement are disputed.

99.     Not disputed that Jason Molder was present at the 2014 Elections, that a portion of that meeting was recorded and posted on-line, or that the 2014 Elections were held to be invalid by the Florida Department of Business and Professional Regulation.  Jade Winds disputes that the entirety of that meeting was recorded or posted on-line (*see* Jade Winds' Response to Request for Admissions [ECF No. 156] at #37).

100.    Not disputed.

101.    Not disputed.

102.    Not disputed.

103.    Not disputed.

104.    Not disputed.

105.    Not disputed.

106.    Not disputed as to what Ms. Joel alleged in her Counterclaim.  Jade Winds disputes FirstService's characterization and summary of the Counterclaim, which does not support the statement that water leaks predate FirstService's management of Jade Winds and is the only evidence upon which FirstService purports to rely as to that statement.

107.    Not disputed.

108.    Not disputed.

109.    Not disputed.

Adv. P. 17-01393-RAM

110.    Not disputed.

111.    Not disputed.

Respectfully submitted,

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Tel:  305-858-2900
Fax:  305-858-5261

By: _/s/ Daniel F. Blonsky_____
     Kendall B. Coffey, Esq.
     Florida Bar No. 259861
     kcoffey@coffeyburlington.com
     Daniel F. Blonsky, Esq.
     Florida Bar No. 972169
     dblonsky@coffeyburlington.com
     Justin E. King, Esq.
     Florida Bar No. 121408
     jking@coffeyburlington.com
     groque@coffeyburlington.com
     YVB@coffeyburlington.com
     service@coffeyburlington.com

        and

SHRAIBERG, LANDAU & PAGE, P.A.
2835 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Tel:  561-443-0800
Fax:  561-998-0047

By:/s/ Eric Pendergraft_____
     Eric Pendergraft
     Florida Bar No. 91927
     ependergraft@slp.law

*Attorneys for Jade Winds Association*

Adv. P. 17-01393-RAM

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties registered to receive electronic notices of filing in this case on this the 30th day of January 2019.

By: _/s/ Daniel F. Blonsky_____
Daniel F. Blonsky

## SERVICE LIST

Kristopher E. Pearson
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL  33130
Phone: (305) 789-3200
Fax:   (305) 789-2688
kpearson@stearnsweaver.com