UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

JADE WINDS ASSOCIATION, INC.,                    Case No. 15-17570-RAM

      Debtor.                                                  Chapter 11

_____/

JADE WINDS ASSOCIATION, INC.,

      Plaintiff,

v.                                                                       Adv. P. 17-01393-RAM

FIRST SERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.,

      Defendant.

_____/

**JADE WINDS' MEMORANDUM IN OPPOSITION TO
FIRSTSERVICE'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Jade Winds Association, Inc. ("Jade Winds"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby responds in opposition to the Motion for Summary Judgment ("Motion") [ECF No. 143] filed by Defendant FirstService Residential Florida, Inc. ("FirstService"). For the reasons that follow, this Court should deny summary judgment.

**I.**     <u>**Introduction**</u>

      FirstService moved for summary judgment more than four months before the Court's fact discovery deadline, over five months before the expert discovery deadline, and before a single deposition has been taken in this case (or was even permitted to be taken). Somehow, ignoring the multitude of evidence left to be discovered and the lack of evidentiary support for the positions that it espouses, FirstService contends that "there are no genuine issues of material fact in dispute"

(Motion at 1), while at the same time spending its entire motion arguing the most hotly contested factual issues in this case – liability and damages. FirstService asks this Court to rule prematurely as a matter of undisputed fact that Jade Winds is not entitled to damages before all discovery has been conducted and before damages (or liability) expert reports have been shared. It certainly presents no opinion from its own experts that there is no liability and no damages.

In addition, FirstService argues for the second time in this action that the liability clause contained in the Contract precludes Jade Winds' ability to recover, relying exclusively on its own strained and disputed contractual interpretation. Even setting aside that the Court has already rejected that argument in denying FirstService's motion to dismiss [ECF No. 28], the liability clause in the Contract explicitly provides for relief arising from the conduct for which Jade Winds seeks recovery – FirstService's *sole* "gross negligence," "willful misconduct," and "material breach" of the management contract through **its** failures and mismanagement of the property.

FirstService attempts to argue, based on an illogical and factually unsupported contractual interpretation, that the term "solely" preceding the approved causes of action entirely absolves it from liability because some acts tangentially involved other parties, i.e. the board of directors, attorneys or construction companies. FirstService maintains this position even though it fails to establish that the other parties' "involvement" was a cause of the mismanagement that it perpetrated and for which – per the terms of the Contract – it was "exclusively" responsible. Indeed, no matter how FirstService tries to frame its reading of the Contract, FirstService was the *sole* manager of Jade Winds. This is not a construction liability action. This is not a direct action against Jade Winds' officers or directors. This action seeks damages attributable to the conduct of the *sole* property manager, FirstService, as a result of its breaches of responsibilities that it accepted and was paid handsomely to perform.

This Court should not take the extraordinary step to rule on summary judgment by weighing disputed material factual issues before discovery has concluded (and before deposition discovery has even commenced) and should not ignore the explicit language of the Contract, which permits Jade Winds' tort and contract theories.  Summary judgment should be denied.

## II.    <u>Factual and Procedural Background</u>

Jade Winds is a multi-condominium association with 916 units.  *See* Compl. [ECF No. 1] at ¶ 5.  In 2007, FirstService, which promotes itself as "one of Florida's premier residential property management companies" and a "trusted partner of associations representing communities of every type and size," began providing property management services to Jade Winds.  *Id.* at ¶ 6. In April 2011, FirstService (then under the name "The Continental Group") and Jade Winds memorialized their arrangement into a written "Association Management Contract."  *Id.* at ¶ 8 and Ex. A.  Thereafter, both parties twice amended the contract, once in March 2014 and again in June 2014.  *Id.* at ¶¶ 9-10 and Ex. B, C.  The original contract, the March 2014 Addendum and the June 2014 Addendum are collectively referred to as the "Contract."

Under the Contract, FirstService was the "exclusive manager" of Jade Winds (*id.* at Ex. A, § 1) and was required to "hir[e]" the "Community Association Manager" ("Manager") of Jade Winds.  *Id.* at § 3.  Thereunder, FirstService was obligated to, among other things: (i) "employ and supervise such persons as needed … or assist [Jade Winds] in engaging … such persons, firms or companies necessary to properly maintain and operate the Community," (*id.* at § 3.1); (ii) "[c]ause those portions of the Common Areas … to be maintained and repaired" (*id.* at § 3.2); (iii) "advise [Jade Winds] of the need to comply with all pertinent laws, statutes, ordinances and rules" (*id.* at § 3.3); (iv) "solicit, analyze and negotiate contracts on behalf of [Jade Winds] … for services reasonably necessary with respect to the operation, maintenance, upkeep, repair, replacement, and

preservation of the Common Areas" (*id.* at § 3.4); (v) "[r]etain and engage … attorneys, accountants … and other experts and professionals" (*id.* at § 3.6); and (vi) "[p]rovide the day-to-day bookkeeping services," including the responsibility to "[k]eep all records of and perform all services in connection with the payment of bills," "approve" and "cause to be paid" "all bills received by [Jade Winds] … for services, work and supplies ordered in connection with maintaining and operating the Community," and "[m]aintain … [Jade Winds'] financial record books, accounts and other financial related records" (*id.* at Ex. C, § 3.12).  Put simply, it is undisputed that FirstService had expansive and exclusive responsibility and control over the day-to-day managerial operations of Jade Winds.

FirstService hired Donna Mantin as Jade Winds' on-site Manager and entrusted her to "effectuate" FirstService's duties.  *Id.* at Ex. A, § 3.  Under FirstService's management, a host of calamities befell Jade Winds.  As explained in the Complaint and confirmed by sworn interrogatory answers [ECF No. 81-4], FirstService: failed to adequately maintain and repair the property; failed to timely pay utility bills and other professionals who were hired to maintain the property; failed to hire capable and adequate contractors and vendors to upkeep the property; failed to comply with government codes and ordinances; failed to adequately maintain the books and records of the company; and oversaw the disappearance of Jade Winds' funds.  Because of FirstService's misconduct and failures, Jade Winds brought counts against it for breach of contract, gross negligence, breach of fiduciary duty, and negligent retention and supervision.

Thereafter, FirstService moved to dismiss all claims, which this Court rejected [ECF No. 28].  Now, after voluminous document discovery but before a single deposition has been taken, FirstService demands that the Court rule prematurely to decide disputed factual issues that have yet to undergo the appropriate discovery process.  As evidenced by Jade Winds' simultaneously

4

filed response to FirstService's Statement of Material Facts, there remain an abundance of material facts still in dispute in this action.  In addition, at this stage in the litigation, Jade Winds has not been afforded full discovery to prove its claims, has not had the opportunity to conduct any depositions, and has not had the benefit of the reports of its liability and damages experts, which are not due for months.  On this record, entry of summary judgment would be unauthorized and improper.

## III.    <u>Summary Judgment Standard</u>

The Court may grant summary judgment only if FirstService establishes "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  An issue is genuine if a reasonable trier of fact could return judgment for the non-moving party.  *See Ali v. District Dir., U.S. Citizenship & Immigration Servs.*, 209 F. Supp.3d 1268, 1271 (S.D. Fla. 2016).  A fact is material if it might affect the outcome of the suit under the governing law.  *Id.*  FirstService "has the burden of showing the absence of a genuine issue as to any material fact."  *Id.*  "[I]n deciding whether [FirstService] has met this burden the court must view all of [FirstService's] evidence and all factual inferences arising from it in the light most favorable to" Jade Winds.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  In determining whether FirstService has met its burden, the Court must not weigh the evidence or make any determination regarding the credibility or the truth of the matter.  *Moore v. Geico Gen. Ins. Co.*, 633 F. App'x 924, 930 (11th Cir. 2016).  Even where the facts are undisputed, if reasonable minds could differ on the inferences arising from them, summary judgment should be denied.  *Allen*, 121 F.3d at 646.

## IV.    <u>Argument</u>

### A. **Summary judgment should be denied because the Contract's liability clause <u>explicitly provides for Jade Winds' theories of recovery</u>**

In moving for summary judgment, FirstService attempts to absolve itself from liability by asserting that parties other than FirstService should be liable for its own mismanagement. FirstService was Jade Winds' *sole* property manager and this action seeks damages arising only out of FirstService's sole *mismanagement*. This is not an action against a construction company for faulty wiring. This is not a direct action against Jade Winds' board of directors. The contractual language specifically provides for Jade Winds to recover for any injury, loss or damage "caused solely by [FirstService's] own gross negligence or willful misconduct, or arising solely out of a material breach" of contract by FirstService. *See* Compl. at Ex. A, § 9. As a result, Jade Winds is permitted to recover damages stemming from acts caused by or arising solely out of FirstService's mismanagement even if the underlying facts involved third parties. Since FirstService was the only actor empowered to manage the property, its failures in that regard are solely its legal responsibility and a proper reading of the Contract does not permit it to escape liability if there are other actors involved, unless those are other property management firms.

Any other reading would place no enforceable responsibilities on FirstService at all. Indeed, FirstService's interpretation completely eliminates its supervisory obligations – *see* Contract at § 3.1 – because supervision necessarily involves the party being supervised. Such a result is plainly nonsensical. Nevertheless, to the extent it is determined that there is ambiguity in the Contract's terms, this Court is not permitted to weigh disputed material facts, especially at this stage in the litigation. As such, the Court should not permit FirstService to escape liability because it points the finger of blame at others and misinterprets the liability clause that it drafted as a free pass for its wrongdoing.

Under Florida law, "[w]here a contract is clear and unambiguous, it must be enforced pursuant to its plain language.  In such a situation, the language itself is the best evidence of the parties' intent, and its plain meaning controls."  *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015) (internal quotation marks and citations omitted).  "[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner."  *BKD Twenty–One Mgmt. Co. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012).

Section 9 of the Contract, entitled "Liability," provides, in pertinent part, that FirstService shall not be liable to Jade Winds for injury, loss or damage:

> unless caused **solely** by [FirstService]'s own **gross negligence** or **willful misconduct, _or_** arising solely out of a material breach by [FirstService]…. [T]he Association ... agree[s] to ... hold harmless [FirstService] … **unless** such liability shall result **solely** from [FirstService]'s own gross negligence or willful misconduct or solely from a material breach of this Contract…. [FirstService] will not be liable to the Association or others for any damage or injury to person or property, real or personal, arising from theft, vandalism, HVAC malfunction, the bursting or leaking of water pipes, the presence of mold, mildew or any pollutant, ***and any act or omission*** of any Owner or occupant ***or of any other person.  However*, the foregoing will <u>NOT</u> relieve [FirstService] of liability** for damage or injury resulting solely from **[FirstService's] gross negligence or willful misconduct.**  To the extent that such liability results **solely** from [FirstService's] **gross negligence** or **willful misconduct**, [FirstService] shall indemnify and hold harmless the Association.

*See* Compl. at Ex. A, § 9 (emphasis added).

FirstService's entire argument points blame on others who may have been somehow involved, under FirstService's managerial authority, in the calamities that befell Jade Winds or known about FirstService's mismanagement.  However, it ignores the fact that *only* FirstService served as Jade Winds' manager and only FirstService can be responsible for the mismanagement that it perpetrated and which underlies the causes of action being pursued.  That is the central fact defeating FirstService's repetition of its liability clause defense.  Jade Winds seeks to recover only

for damages arising out of FirstService's mismanagement, for which FirstService is solely responsible as the exclusive manager, something that § 9 of the Contract assigns it direct liability if the result of gross negligence, willful misconduct, or a material breach. *See* Jade Winds' response to Interrogatory 4 [ECF No. 81-4]. Thus, when FirstService drafted and executed the Contract, it specifically contemplated being liable for acts or omissions of third parties that resulted solely from FirstService's gross negligence or willful misconduct in performing its duties as the exclusive manager. These are exactly the damages for which Jade Winds intends to recover.

Not only does the Contract plainly not preclude liability when third parties are merely "involved" in actions where FirstService was grossly negligent or engaged in willful misconduct in performing its duties, but it also provides that FirstService "indemnif[ies]" Jade Winds "[t]o the extent that such liability results solely from [FirstService's] gross negligence or willful misconduct." Therefore, even if (as FirstService contends) there exists involvement by Jade Winds' board of directors, the board of directors is "h[e]ld harmless" if the trier of fact determines that liability resulted solely from FirstService's gross negligence or willful misconduct, a question not subject to determination at this juncture. Neither the terms of the Contract nor the evidentiary record supports the conclusion as a matter of law that the presence of a board of directors reliant on competent and honest performance by its property manager prevents FirstService from being liable for its gross negligence, willful misconduct, or material breaches.

FirstService attempts to rewrite the liability clause by asserting that it can only be liable if it was "acting alone." *See* Motion at 1. Of course, that is not the language that FirstService drafted or to which the parties agreed. Being the sole cause of injury arising or resulting from mismanagement is far different from acting alone. At best, FirstService is presenting a contractual

interpretation that is at variance from the written terms and without a scintilla of evidentiary support.  It is not ripe for determination on summary judgment.

In the event that the Court deems the liability clause of the Contract to be ambiguous and is amenable to equating sole cause with "acting alone," the liability clause still must be construed against FirstService as the drafter, thereby further eliminating the prospect of undisputed material facts and rendering summary judgment inappropriate.  *See* Fed. R. Civ. P. 56(a); *see also Detroit Diesel Corp. v. Atlantic Mut. Ins. Co.*, 18 So. 3d 618, 620 n. 1 (Fla. 4th DCA 2009) ("a contract will be construed against the party who drafted the language").

Furthermore, controlling, settled law establishes that entry of summary judgment in these circumstances is entirely premature because discovery into the subject issues has not been completed.[1]  *See, e.g., Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("summary judgment may only be decided upon an adequate record") (collecting cases); *Alabama Farm Bureau Mut. Casualty Co., Inc. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) ("[s]ummary judgment should not, therefore, ordinarily be granted before discovery has been completed"),[2] *cert. denied*, 449 U.S. 820 (1980); *South Florida Tea Party, Inc. v. Tea Party*, 2010 WL 11610220 at *1-2 (S.D. Fla. May 12, 2010) (denying summary judgment motion without prejudice so that the plaintiffs can obtain "necessary deposition testimony" to enable the rebutting of a "claimed showing of the absence of a genuine issue of material fact").  Discovery in this action is yet to be completed and no party has taken a single deposition.

---

[1] There was an agreement between the parties recognized by the Court that no depositions would be conducted until after January 18, 2019 – four weeks after the summary judgment motion was filed.  *See* ECF No. 147 at ¶ 3.

[2] All Fifth Circuit decisions prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Nevertheless, FirstService asks the Court to make factual determinations about what responsibility FirstService should share in the problems at Jade Winds.  For example, FirstService argues without evidentiary support that summary judgment should be granted regarding "bookkeeping issues"[3] because it only provided bookkeeping services for over "four months," and "it is unreasonable to believe what occurred in four months caused damage to Jade Winds."  *See* Motion at 7.  Setting aside that Jade Winds also intends to prove damages arising from outside of FirstService's contractual bookkeeping services, FirstService has failed to conduct any discovery regarding the matter and instead asks this Court to rule summarily on what is yet to be discovered. Its only reason purportedly justifying summary judgment on these grounds is because it baldly concludes that it is "unreasonable" that Jade Winds seeks recovery for FirstService's mismanagement within that over four-month period; that alone establishes the insufficiency of the request for summary judgment.

Moreover, regarding each of FirstService's argued "topics" supposedly supporting summary judgment under the liability clause, there remains issues of material fact in dispute and not having been subject to discovery, which renders them inappropriate for summary judgment. *See* Responses to Statement of Facts at ¶¶ 39, 40, 41, 43, 44, 45 (regarding bookkeeping issues); 90 (regarding the parking system); 51, 52, 55, 56, 57, 58, 59, 60, 62, 64, 67, 70, 71, 72, 73, 74, 77, 83, 84 (regarding the 40-year recertification); and 95, 98,  99 (regarding board elections, document amendments and unit owner fining).

Accordingly, because Jade Winds seeks only to recover damages caused by and resulting from FirstService's *sole* mismanagement, because the Contract specifically contemplates and

---

[3] The Motion is also fatally flawed because of FirstService's failure to identify adequately or with any precision the "alternative" partial summary judgment that it seeks with regard to "the claims and issues for which no genuine issue of material fact exists."  *See* Motion at 19.

provides for its liability even where third-parties are involved, and because it is inappropriate for this court to weigh disputed material facts or to rule before completion of discovery, summary judgment should be denied.

### B. The independent tort doctrine is inapplicable because the Contract expressly authorizes tort recovery

FirstService next contends, relying on Florida's independent tort doctrine, that summary judgment on Jade Winds' tort claims is required because "[n]one of the tort claims identify any duty independent of the Contract." *See* Motion at 13.[4]  Because the Contract explicitly provides for relief from tortious conduct and authorizes tort claims, the independent tort doctrine is inapplicable and summary judgment should be denied.

The independent tort doctrine, like the economic loss rule, "is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 401 (Fla. 2013).  This rule is designed "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* at 402.  By its terms, that rule does not apply where a contract explicitly provides for independent recovery for tortious conduct, as that would not circumvent the contractual allocation of losses.  *Id.  See also HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) ("[w]here a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract"); *Bradley Factor, Inc. v. United States*, 86 F. Supp.2d 1140, 1144 (M.D. Fla. 2000) ("[t]he fact that the compensatory damages sought in [the contract and the tort] counts are the same has no bearing on the independence of the

---

[4] In actuality, neither Count III for breach of fiduciary duty nor Count IV for negligent retention and supervision is dependent on contractual duties.  *See* Compl. and § IV(C) below.  FirstService's conclusory assertion does not meet its weighty summary judgment burden.

[tort] claims"); *see also Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (a tort claim being independent of a contract claim is a "minimal requirement") (reversing summary judgment).

As discussed above, the liability clause – § 9 of the Contract – expressly establishes that FirstService is liable to Jade Winds where its damages are "caused solely by [FirstService's] own gross negligence or willful misconduct**, or** aris[e] solely out of a material breach by [FirstService]." *See* Compl. at Ex. A, § 9 (emphasis added). The plain language of the Contract drafted by FirstService shows that it was **not** both parties' intent to disclaim torts for "gross negligence or willful misconduct." To the contrary, pursuant to the liability clause, Jade Winds is specifically permitted to recover under tort theories based on gross negligence and willful misconduct, not just for breach of contract. The comma separating "gross negligence or willful misconduct" from "arising out of a material breach" is particularly instructive, as a comma is "used to indicate a separation of ideas or elements within the structure of a sentence." AMERICAN HERITAGE COLLEGE DICTIONARY 279 (3d ed. 1997). The separate ideas in this action being that Jade Winds may recover: (1) in tort theories based on "gross negligence or willful misconduct" *and* (2) for a "material breach by [FirstService] of [the] Contract." Therefore, because the Contract specifically contemplates and provides for tort recovery independent of the Contract, the independent tort doctrine does not apply. *HTP*, 685 So. 2d at 1239; *Bradley Factor*, 86 F. Supp.2d at 1144. Indeed, in the language of *Tiara Condo.*, the tort claims do not "circumvent[] the allocation of losses set forth in the contract," 110 So. 3d at 402, but conform to them.

This interpretation is buttressed further by the additional language in that same section providing that FirstService shall "not be reliev[ed] of liability for damage or injury resulting solely from gross negligence or willful misconduct." *See* Compl. at Ex. A, § 9. As well, interpreting the

Contract in the manner FirstService requests would mean that Jade Winds intended to absolve FirstService of all tortious conduct, even the gross negligence and willful misconduct expressly excluded by the liability clause.  Such an unsupported conclusion, contrary to the contractual terms themselves, cannot be reached on this record.

In support of its argument, FirstService string cites at pages 10 through 13 of the Motion a litany of independent tort doctrine or economic loss rule cases that are entirely inapposite for this Court's consideration.  None of the cases cited by FirstService contains express contractual language that specifically provides for liability for tortious conduct in addition to contractual breaches, as does the Contract here.  *See, e.g., Berkery v. Pratt*, 390 F. App'x 904, 909 (11th Cir. 2010) (containing no provision providing for relief from tortious conduct); *Capten Trading Ltd. v. Banco Santander Int'l*, 2018 WL 1558272 at *5 (S.D. Fla. Mar. 29, 2018) (same); *Reagan Wireless Corp. v. Apto Sols., Inc.*, 2018 WL 4901127 at *3 (S.D. Fla. Oct. 9, 2018) (same); *Lewis v. Guthartz*, 428 So. 2d 222, 223 (Fla. 1982) (same); *Behrman v. Allstate Ins. Co.*, 388 F. Supp.2d 1346, 1349 (S.D. Fla. 2005) (same regarding negligent hiring).  FirstService contemplated and agreed to tort liability outside of the contract, provided it was caused by or resulted from its own gross negligence or willful misconduct.  Its cited cases, therefore, garner it no support.

The independent tort doctrine is designed to prevent parties from recovering outside of what the parties originally bargained for contractually, *Tiara Condo.*, 110 So. 3d at 402, not to prohibit recovery for all tortious conduct, including tort liability specifically provided for in a binding agreement.  FirstService drafted the Contract to include liability for its "gross negligence or willful misconduct."  It cannot now attempt to hide behind the independent tort doctrine to skirt that liability.  As such, summary judgment should be denied.

### C. FirstService has statutorily imposed and common law express and implied fiduciary and other duties that it undertook as property manager

FirstService also cites passively, within its independent tort argument, to cases granting summary judgment where it claims that "the parties' relationship is contractual like FirstService and Jade Winds." *See* Motion at 11. In doing so, FirstService essentially maintains, as a disputed matter of fact and without reference to evidence, that it was never in a fiduciary relationship with Jade Winds and owed no extra-contractual duties to it. Such a position disregards Florida statutory law, which provides that:

> A ... *community association management firm* is deemed to act as *agent* on behalf of a community association as *principal* within the scope of authority authorized by a written contract or under this chapter. A community association manager and a community association management firm *shall discharge duties performed on behalf of the association* as authorized by this chapter *loyally, skillfully, and diligently; dealing honestly and fairly; in good faith; with care and full disclosure to the community association; accounting for all funds; and not charging unreasonable or excessive fees.*

Fla. Stat. § 468.4334 (emphasis added). Thus, as a community association manager, FirstService has statutorily imposed fiduciary duties, the breach of which creates liability, regardless of any contractual relationship.

Beyond those statutory duties, the nature of the parties' agent/principal relationship and FirstService's undertakings and common law supervisory obligations give rise to an express fiduciary duty, and a breach of duty claim is not preempted by their contractual relationship.[5] *See, e.g., Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) ("[fiduciary duties] expressly created by contract" are those "such as principal/agent") (affirming breach of fiduciary duty judgment even where there was a contractual relationship between the parties); *Stone Invest*

---

[5] It bears noting that the Contract does not purport to disclaim the existence of a fiduciary relationship between FirstService and Jade Winds. Only employment, partnership and joint venture relationships are disclaimed. *See* Compl. at Ex. A, § 10.7.

*Dakota LLC v. De Bastos*, 2015 WL 6997979 at *3 (S.D. Fla. Nov. 12, 2015) (breach of fiduciary duty claim is viable "even if there is an underlying oral or written contract") (citation omitted); *see also Tiara Condo.*, 110 So. 3d at 407 (rejecting summary judgment on breach of fiduciary duty claim and holding that "the economic loss rule applies only in the products liability context").[6] Proceeding further, the Florida Supreme Court "characterize[s] a fiduciary relationship in the following manner":

> The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties **(that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief**. The origin of the confidence is immaterial.

*Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (emphasis supplied) (citation omitted).

A fiduciary relationship may be implied by law, as is the case here, and such relationships are "premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Id., quoting MVB*, 644 So. 2d at 518. In summary, "a fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Id.* (citation and internal alterations omitted). This is a fiduciary relationship that exists outside of and beyond the contract and, even under FirstService's authorities (*see* Motion at 10-12),[7] precludes application of the independent

---

[6] On remand in *Tiara Condo.*, the Southern District of Florida denied summary judgment against breach of fiduciary duty and negligence claims, rejecting the applicability of an independent tort doctrine argument and holding that the tort claims were "based on extra-contractual duties of care" that are recognized in the common law. *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp.2d 1271, 1279-80 (S.D. Fla. 2014). The same reasoning applies here.

[7] The Motion miscites *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 26 (Fla. 2d DCA 2006), for the proposition that a property manager performing under a contract owes no fiduciary duties. In fact, *Greenacre* merely reversed a judgment where breach of fiduciary duty had never been pled. *Id.* Recognizing the limited scope of *Greenacre* is *San Pedro v. Claridges Condo., Inc.*, 125 So. 3d 269, 270-71 (Fla. 4th DCA 2013), which distinguished *Greenacre* and permitted a negligence

tort doctrine to the breach of fiduciary duty claim. *See, e.g., Goldberg for Jay Peak, Inc. v. Raymond James Fin., Inc.*, 2017 WL 7791564 at *8 (S.D. Fla. March 27, 2017) (relying on *Tiara Condo.* in holding that the intentional tort doctrine does not bar breach of fiduciary duty claims outside of products liability); *Bornstein v. Marcus*, 169 So. 3d 1239, 1244 (Fla. 4th DCA 2015) (error to reject breach of fiduciary duty claim under the economic loss rule in cases not involving products liability).[8]

As the "exclusive manager" of Jade Winds, FirstService was given immense control over Jade Winds' day-to-day operations that permitted it to: (i) "employ and supervise such persons as needed … to properly maintain and operate the Community" (*see* Compl. Ex. A at § 3.1); (ii) "[c]ause those portions of the Common Areas … to be maintained and repaired" (*id.* at § 3.2); (iii) "advise [Jade Winds] of the need to comply with all pertinent laws, statutes, ordinances and rules" (*id.* at § 3.3); (iv) "solicit, analyze and negotiate contracts on behalf of [Jade Winds]" (*id.* at § 3.4); (v) "[r]etain and engage … attorneys, accountants … and other experts and professionals" (*id.* at § 3.6); and (vi) "[p]rovide the day-to-day bookkeeping services," including the responsibility to

---

claim against a property manager to proceed notwithstanding the existence of a contractual relationship.

[8] The independent tort doctrine does not bar the negligent retention and supervision claim either because that claim is not dependent on a contractual breach but, instead, on a failure by Jade Winds' managerial agent to supervise the employee that it placed and maintained at Jade Winds. This "common law" right to recover damages for "[t]he negligent retention or supervision of an incompetent, dangerous agent or servant ... has long been recognized as a basis for tort liability in Florida." *Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 717 (Fla. 5th DCA 2004), *citing Mallory v. O'Neil*, 69 So. 2d 313 (Fla. 1954), Restatement (Second) of Torts § 317, and Restatement (Second) Agency §§ 219, 213. Even still, the four negligent retention and supervision cases cited by FirstService (*see* Motion at 12-13) rely on the economic loss rule and precede *Tiara Condo.*, rendering them of questionable continuing validity. *See, e.g., F.D.I.C. v. Group One Mortgage, Inc.*, 2013 WL 2035150 at *5 (S.D. Fla. May 14, 2013) ("the Court rejects Defendants' contention that the claim for negligent supervision is barred," citing *Tiara Condo.*). Regardless, because Jade Winds' negligent retention and supervision claim is supported by common law, extra-contractual duties, the independent tort doctrine is inapplicable.

"[k]eep all records of and perform all services in connection with the payment of bills," "approve" and "cause to be paid" "all bills received by [Jade Winds]," and "[m]aintain … [Jade Winds'] financial record books, accounts and other financial related records" (*id.* at Ex. C, § 3.12). That is evidence of a fiduciary relationship because, as recognized by the Florida Legislature and evinced by the common law principles underlying the nature of the parties' agent/principal relationship, FirstService was under a direct obligation to act for and to give advice to Jade Winds for Jade Winds' own benefit. Summary judgment is not available on these facts.

### D. Jade Winds' damages involve disputed issues of material fact that have yet to undergo appropriate discovery, thus precluding summary judgment

In arguing that the Court should grant summary judgment on damages, FirstService contends that the "undisputed material facts" authorize summary judgment on all categories of damages (*see* Motion at 2), while at the same time making an argument based solely on disputed, material factual issues largely not yet subject to discovery. Fact discovery in this action concludes on April 22, 2019, expert witness reports are not due until May 7, 2019, and expert discovery must be completed by May 28, 2019 [ECF No. 144]. No depositions have been taken in this action and FirstService has more than 20 outstanding subpoenas issued to Jade Winds' residents alone. Nevertheless, FirstService asks the Court to grant summary judgment at this stage in the litigation, asserting primarily that if this Court weighs the evidence, it will find that there is insufficient evidence to prove Jade Winds' damages. Because this Court is not permitted to weigh disputed issues of material fact when ruling on a motion for summary judgment, and because the Motion is entirely premature, summary judgment should be denied. *Moore*, 633 F. App'x at 930.

Controlling law instructs that "summary judgment may only be decided upon an adequate record," *Snook*, 859 F.2d at 870, and that it should not be granted "before discovery has been completed." *Alabama Farm Bureau*, 606 F.2d at 609. "If the documents or other discovery sought

would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials." *Snook*, 859 F.2d at 870. That is because the nonmoving party must be afforded "the opportunity to discover all information pertinent to his opposition" to the motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).

FirstService asks that this Court rule on summary judgment on nine specific line items of damages related to: (1) Chapter 11 costs (*see* Motion at 14); (2) the parking system (*id.* at 14-15); (3) lost foreclosed lease unit revenue (*id.* at 15); (4) the 40-year recertification failure (*id.*); (5) increased bank loan costs (*id.*); (6) fees paid to FirstService (*id.* at 16);[9] (7) the Miriam Joel dispute (*id.*); (8) administrative fines (*id.* at 16-17); and (9) punitive damages (*id.* at 17-18). It argues only that if this Court weighs the evidence before discovery has been completed, it would find that FirstService is not liable, relying on no damages analysis itself. The argument is simply premature. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (summary judgment should be denied if there has been inadequate time for discovery); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (same); *Abrams v. Ciba Specialty Chems. Corp.*, 663 F. Supp.2d 1243, 1246 (S.D. Ala. 2009) ("There has been no discovery as to the damages incurred by non-test plaintiffs. Accordingly, any motion for summary judgment as to the sufficiency of non-test plaintiffs' evidence of damages is premature."); *S.W.B. New England, Inc. v. R.A.B. Food Gr., LLC*, 2007 WL 1753067 at *2 (S.D.N.Y. June 13, 2007) (The "plaintiff argues principally that

---

[9] FirstService also argues that, under Florida law, "disgorgement of profits earned by or payment made to a defendant is not a remedy for a breach of contract." *Id., citing Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1245 (11th Cir. 2009). Because this is not an action for disgorgement of any profits (as in, i.e., actions for a breach of a covenant not to compete such as *Proudfoot*, or in a patent dispute), Jade Winds finds no reason to respond to this argument.

summary judgment [on damages] is premature at this stage of the litigation, since it has not yet had a chance to conduct discovery.  The Court agrees.").

Moreover, Jade Winds disputes an abundance of facts related to each of these line items, but given the status of discovery, has not yet been able through the course of discovery to obtain information necessary to prove all allegations.  *See* Response to Statement of Facts at ¶¶ 24, 27 (regarding the Chapter 11 costs); 90 (regarding the parking system); 51, 52, 55, 56, 57, 58, 59, 60, 62, 64, 67, 70, 71, 72, 73, 74, 77, 83, 84 (regarding the 40-year recertification); 44, 98, 99 (regarding the levied fines and the fining committee).  Based on the foregoing, the Court is not permitted under Rule 56 to weigh material facts in dispute to adjudicate this action as a matter of law.

FirstService will have every opportunity subsequent to the expert report deadline to review all of Jade Winds' claimed damages, line-by-line, to challenge them, to have an expert rebut them, and appropriately challenge damages by way of summary judgment at that point in the litigation. In addition, FirstService will also have every opportunity to depose fact and expert witnesses in this action regarding damages and to obtain the benefit of all documents relevant to damages through the proper course of discovery.  At this time, however, summary judgment on damages must be denied.

**V.    <u>Conclusion</u>**

None of the grounds for summary judgment raised in the Motion – 1) a contract interpretation argument without evidentiary support and contrary to the properly construed provisions; 2) an independent tort doctrine analysis at odds with the agreement struck by the parties, the nature of their relationship, and the duties imposed by that relationship; and 3) an attack on damages exclusively reliant on the fact that damages discovery has not been conducted yet –

Adv. P. 17-01393-RAM

withstands scrutiny. For whatever litigation strategy reason, FirstService chose to bring a premature summary judgment motion not appropriate for consideration at this time. For the reasons discussed above, FirstService's Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261

By: /s/ Daniel F. Blonsky
    Kendall B. Coffey, Esq.
    Florida Bar No. 259861
    kcoffey@coffeyburlington.com
    Daniel F. Blonsky, Esq.
    Florida Bar No. 972169
    dblonsky@coffeyburlington.com
    Justin E. King, Esq.
    Florida Bar No. 121408
    jking@coffeyburlington.com
    groque@coffeyburlington.com
    yvb@coffeyburlington.com
    service@coffeyburlington.com

    and

SHRAIBERG, LANDAU & PAGE, P.A.
2835 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Tel: 561-443-0800
Fax: 561-998-0047

By:/s/ Eric Pendergraft
    Eric Pendergraft
    Florida Bar No. 91927
    ependergraft@slp.law

*Attorneys for Jade Winds Association*

Adv. P. 17-01393-RAM

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties registered to receive electronic notices of filing in this case on this the 30th day of January 2019.

By: _/s/ Daniel F. Blonsky_
Daniel F. Blonsky

## SERVICE LIST

Kristopher E. Pearson
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL 33130
Phone: (305) 789-3200
Fax: (305) 789-2688
kpearson@stearnsweaver.com