

**ORDERED in the Southern District of Florida on March 22, 2019.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| In re | CASE NO. 15-17570-BKC-RAM |
| JADE WINDS ASSOCIATION, INC., | CHAPTER 11 |
| Debtor. |  |
| JADE WINDS ASSOCIATION, INC., |  |
| Plaintiff, |  |
| vs. | ADV. NO. 17-01393-RAM |
| FIRSTSERVICE RESIDENTIAL FLORIDA, INC., etc., |  |
| Defendant. |  |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

The plaintiff in this adversary proceeding, Jade Winds Association, Inc. ("Jade Winds" or "Plaintiff"), is a condominium

association that proposed and confirmed a chapter 11 plan in the underlying bankruptcy case. The defendant, FirstService Residential of Florida, Inc. ("FirstService" or "Defendant"), is a property management company that provided management services to Jade Winds from some time in 2007 until late 2014.

FirstService filed a proof of claim in the underlying chapter 11 case for $156,796.21. The complaint in this proceeding objects to FirstService's claim and asserts affirmative claims against FirstService for breach of contract, gross negligence, breach of fiduciary duty, and negligent retention and supervision. FirstService seeks summary judgment on all counts in its Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion") [DE #143].

The Court conducted a hearing on the Motion on February 22, 2019. The Court has reviewed the record, including the Motion, FirstService's Statement of Undisputed Material Facts [DE# 142], Plaintiff Jade Winds' Response to FirstService's Statement of Material Facts (the "Facts Response") [DE# 161], Jade Winds' Memorandum in Opposition to FirstService's Motion for Summary Judgment ("Jade Winds' Response") [DE# 162], FirstService's Reply in Support of its Statement of Undisputed Material Facts [DE# 166] and FirstService's Reply Memorandum in Support of Its Motion for Summary Judgment [DE# 167], and the numerous exhibits attached to the above-described filings. The Court has also considered the

arguments of counsel presented at the February 22nd hearing and reviewed applicable law.

For the reasons that follow, the Motion is denied.

### Record Evidence and Status of Discovery

In part, the Motion relies on the alleged absence of record evidence to support several of the allegations in the Complaint. In addition, the Motion argues that all of the counts in the Complaint, other than the breach of contract count, fail as a matter of law.

Turning first to the argument that several allegations of the Complaint are not supported by record evidence, the Court's decision to deny the Motion rests largely on the status of discovery.

The Defendant filed its Motion prior to the conclusion of fact discovery. The parties had exchanged documents, but they had not taken any depositions or exchanged expert reports. Although a summary judgment ruling generally is disfavored under these circumstances, an open discovery deadline is not, in and of itself, cause to defer consideration of a well-pled motion for summary judgment. *See Snook v. Trust Company of Georgia Bank of Savannah*, 859 F.2d 865, 870-71 (11th Cir. 1988); *Urquilla-Diaz v. Kaplan University*, 780 F.3d 1039, 1063 (11th Cir. 2015). However, if a respondent articulates, with specificity, the additional facts

that it seeks to establish through further discovery, a summary judgment ruling would be premature. *Id.*

Here, the Court finds that the Plaintiff is entitled to take further discovery in support of its allegations. Although the Plaintiff did not file affidavits in opposition to the Motion, it provided interrogatory answers referencing documents that have been produced relevant to various allegations. Jade Winds Association, Inc.'s Response to FirstService Interrogatories [DE# 81-4]. Moreover, Plaintiff has identified witnesses that it intends to depose and articulated material areas of inquiry relevant to various allegations in the Complaint [Facts Response, DE# 161, paras. 8-9, 10, 13, 17-18, 23, 40-41, 43-44,52, 56, 59-60, 62, 64, 67, 73-74, 77, 84, 90, 95, 98]. Witnesses identified in the Facts Response include Donna Mantin, Santiago Perez, Ana Costales (regarding accounting services), Gary Pyott (FirstService's President), Lauren Van Barclum (a FirstService employee), a representative of Gonzalez Engineers, Emilio Castro, or another representative of E.C. & Associates, Inc., and a representative of Americus Construction Group, Inc.

### Legal Issues Raised in the Motion

#### A. The Limitation of Liability Clause in the Contract

The Defendant argues that a limitation of liability clause in the contract precludes the Plaintiff from recovering damages if any party other than the Defendant was involved in the acts or

4

omissions that caused the damage. Specifically, the Defendant relies on the following provision, which, in pertinent part, provides as follows:

> [FirstService] shall not be liable to the Association ... for any injury, loss or damage to person or property unless caused _solely_ by [FirstService's] own gross negligence or willful misconduct or arising _solely_ out of a material breach of this Contract.

Association Management Contract (the "Contract") [DE# 1, p. 24] (emphasis added).

The Court rejects the Defendant's interpretation of this provision. "Public policy disfavors exculpatory contracts." *Sanislo v. Give Kids the World, Inc.*, 157 So.3d 256, 260 (Fla. 2015) (collecting cases). Nevertheless, exculpatory clauses generally are enforceable if drafted unambiguously. *Id*. at 260-61. "Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away." *Id.* (citations omitted).

The Contract is a management contract drafted by the Defendant that includes supervisory obligations and obligations to retain vendors to provide services to the Plaintiff association. If this provision exculpated the Defendant simply because the damage or loss involved acts or omissions by others, it would render illusory

significant portions of the Contract. Therefore, the Court adopts the Plaintiff's interpretation of this clause and finds that the Plaintiff may recover damages stemming from acts caused by or arising solely out of the Defendant's breach of contract or tortious conduct even if there were third parties involved.

### B. The Tort Claims

The Plaintiff is prosecuting three tort causes of action against the Defendant, namely (i) gross negligence, (ii) breach of fiduciary duty, and (iii) negligent retention and supervision. The Defendant seeks summary judgment on all three tort causes of action for failure to establish a duty independent of the Defendant's contractual obligations. Generally, the independent tort doctrine bars actions sounding in tort between parties who are in contractual privity where the plaintiff cannot articulate a tort cause of action wholly independent of a breach of contract claim.

Although the general rule sounds simple enough, the reference to gross negligence in the Contract and conflicting interpretations of the Florida Supreme Court's *Tiara Condo* opinion complicate the issue. *Tiara Condominium Association, Inc. v. Marsh & McLennan Companies*, *Inc.* ("*Tiara Condo*") is the seminal iteration of Florida law on the economic loss rule and independent tort doctrine. 110 So. 3d 399 (Fla. 2013). In *Tiara Condo*, the Florida Supreme Court held that the economic loss rule is limited to

products liability cases, *Id.* at 400, but did not disturb the status quo with regards to the independent tort doctrine. As Justice Pariente explains in her concurring opinion, to bring a valid tort claim, a party to a contract must still "demonstrate that all of the required elements for the [tort] cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Id.* at 408 (citations omitted).

Courts, including the Eleventh Circuit Court of Appeals, have struggled to ferret out of *Tiara Condo* a clear standard for application of the independent tort doctrine under Florida law. *See, e.g., Surety Bank v. Dunbar Armored, Inc.,* No. 14-81368-CIV, 2015 WL 845590, *5 (S.D. Fla. Feb. 25, 2015) (quoting *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014), for the proposition that the "exact contours" of Florida's independent tort doctrine "are still unclear" post-*Tiara Condo*). Generally, to prove negligence, the Plaintiff would have to prove that the Defendant owed the Plaintiff a duty to use reasonable care in the management of the condominium's common areas and affairs and that such duty was owed independently of any obligations assumed under the Contract. However, in this case, the Contract contemplates tort causes of action by expressly excluding gross negligence claims from the provision limiting the Defendant's liability. In short, the Defendant expressly agreed that it would be liable for its "own gross negligence."

7

In *Tiara Condo*, the Florida Supreme Court explained that the economic loss rule

> is designed to prevent parties to a contract from <u>circumventing the allocation of losses set forth in the contract</u> by bringing an action for economic loss in tort. When the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*Tiara Condo* at 402 (emphasis added) (internal citations omitted). Although the excerpt above begins as a discussion of the origins of the economic loss rule, the excerpt ends with a general description of the independent tort doctrine and, thus, is relevant here.[1] As aptly described in Jade Winds' Response and discussed more fully below, "in the language of *Tiara Condo*, the tort claims do not 'circumvent[] the allocation of losses set forth in the contract,' 110 So. 3d at 402, but conform to them." [DE #162, p.12].

---

[1] *See also Tiara Condominium Association, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) ("Arguably, Florida's 'independent tort rule' is but a preliminary version, or simple predecessor, of what later became known as the 'contractual privity economic loss rule' – a rule which similarly posits, '[A] tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.'" (quoting *Tiara Condo* at 402) (additional citations omitted)).

*Gross Negligence*

The Contract's allocation of losses is clear in at least one respect: The Contract contemplates liability for gross negligence. Any other interpretation would ignore the plain language of the Contract and render meaningless the words "own gross negligence." The parties have decidedly different views on the parameters of the gross negligence exception. The Defendant argues that it may be held liable solely for gross negligence in executing extracontractual duties. The Plaintiff argues that the exception must also encompass the Defendant's gross negligence in executing its contractual obligations.

The Court finds guidance in *Lamm v. State Street Bank and Trust*, 749 F.3d 938 (11th Cir. 2014). In its opinion, the Eleventh Circuit suggests that post-*Tiara Condo*, a breach of contract can be considered negligence when "combined with some other conduct amounting to an independent tort," and where, as here, the contract "specifically left open the possibility that [a defendant] could be liable for losses caused by its negligence." *Id.* at 948 (citations omitted). In view of what the Eleventh Circuit described as the "somewhat unsettled law" in this area, *Id.*, and the explicit assumption of tort liability in this case, the Court finds that the Defendant may be held liable if its conduct in executing its contractual obligations was grossly negligent.

9

The Court also finds that the Plaintiff's gross negligence claim survives the Defendant's Motion because the Defendant owed the Plaintiff an extracontractual duty of care as a matter of Florida law.  In addition to the Florida statutory duty impressed on the Defendant to "discharge duties performed on behalf of the association . . . <u>with care</u>," Fla. Stat. § 468.4334 (emphasis added), the responsibilities assumed by the Defendant created a foreseeable zone of risk.  Thus, a duty arises in this case by legislative enactment, the Court's interpretation of that enactment, and the Defendant's conduct. *See National Title Insurance Company v. Lakeshore 1 Condominium Association, Inc.*, 691 So. 2d 1104, 1106-07 (Fla. 3d DCA 1997) (identifying the sources of tort duty under Florida common law and finding that a condominium association owes owners and mortgagees a duty of reasonable care in managing disbursement of insurance proceeds).

In sum, to establish tort liability in this proceeding, the Plaintiff cannot rely only on a failure-to-perform argument, which would support a breach of contract claim, but rather must establish that the Defendant failed to exercise reasonable care in performing under the Contract, and that its failures were grossly negligent.

*Breach of Fiduciary Duty*

The Defendant owes the Plaintiff fiduciary duties under Florida law. Florida Statute § 468.4334, cited earlier, is entitled "Professional practice standards and liability."  The statute

10

imposes specific obligations on community association management firms like the Defendant and reads, in pertinent part, as follows:

> [A] community association management firm is deemed to act as agent on behalf of a community association as principal within the scope of authority authorized by a written contract or under this chapter. . . . [A] community association management firm shall discharge duties performed on behalf of the association as authorized by this chapter loyally, skillfully, and diligently; dealing honestly and fairly; in good faith; with care and full disclosure to the community association; accounting for all funds; and not charging unreasonable or excessive fees.
>
> Fla. Stat. § 468.4334(1).

The Contract includes provisions recognizing a principal/agent relationship, which traditionally is fiduciary. *See* Contract, §§ 3.4, 3.6, 3.15; *see also F.D.I.C. v. Floridian Title Group, Inc.,* 972 F. Supp. 2d 1289, 1297 (S.D. Fla. 2013) (The relationship between a principal and an agent is fiduciary and "[t]ypically" imposes on an agent "a duty to disclose to a principal all material facts relevant to the agency" (citations omitted)). However, contractual acknowledgement of a fiduciary relationship does not bar pursuit of an independent breach of fiduciary duty claim. *See Stone Invest Dakota LLC v. De Bastos*, No. 15-61406-CIV-DIMITROULEAS, 2015 WL 6997979, *3 (S.D. Fla. Nov. 12, 2015) (citing *Invo Florida, Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1267 (Fla. 3d DCA 2000) ("The economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying oral or written contract.").

11

Rather, the Contract corroborates what has been alleged by the Plaintiff, which is that the Defendant agreed to advise, counsel and protect the Plaintiff [Response, DE #162, pp.16-17]. If the Plaintiff depended on the Defendant's advice and protection, the Defendant owed the Plaintiff the duties of a fiduciary under Florida common law. *Id.* ("Where confidence is reposed by the weaker party and a trust accepted by the other," there exists a fiduciary relationship under Florida law. (citation omitted)).

At this stage in the litigation, the Plaintiff has not had a sufficient opportunity to develop the record with regards to its dependence on the Defendant, the Defendant's alleged breach(es), or the damages sustained as a result of the Defendant's alleged breaches. Therefore, under the legal standards for proving a breach of fiduciary duty claim, summary judgment is premature.

*Negligent Retention and Supervision*

Count IV of the Complaint alleges that the Defendant was negligent in supervising and retaining employees. Based on the Court's earlier discussion of the independent tort doctrine and the exculpatory provisions in the Contract, the Court concludes that this count also survives summary judgment. *See also Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 716-17 (Fla. 5th DCA 2004) (citing cases for the proposition that Florida long has recognized a common-law duty to exercise reasonable care in the retention or supervision of an employee). The fact that the Defendant's

12

Contract obligations included retention and supervision does not preclude the assertion of a tort claim arising out of the performance of those duties.

At the February 22nd hearing, the Court raised the issue of whether the Plaintiff would be required to prove gross negligence in connection with the Defendant's retention and supervision duties. The Court is not ruling on this issue now because it was not briefed. However, as stated at the hearing, it does appear to the Court that the exculpatory language in paragraph 9 of the Contract would apply to the allegations in this count and require proof of gross negligence.

**Defendant's Alternative Request for Partial Summary Judgment**

Fed. R. Civ. P. 56(g), applicable here pursuant to Fed. R. Bankr. P. 7056, provides that "[i]f the court does not grant all of the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." The Defendant requests partial summary judgment establishing that it bears no liability for any alleged damages sustained in connection with the following activities: (i) bookkeeping, (ii) the 40-year recertification, (iii) construction, generally, (iv) parking systems, (v) election of board members, (vi) amendments to corporate documents, and (vii) litigation or other adversarial action against residents. In support of its

request, the Defendant argues, *inter alia*, that other persons were involved in the provision of services, the Defendant neither provided nor agreed to provide the services, specific limitations of liability in the Contract release the Defendant, and the Plaintiff was the ultimate decision-maker or otherwise caused or contributed to the injuries alleged.

Earlier in this Order, the Court concluded that Defendant's liability is not eliminated if other parties were involved in the activities at issue in the Complaint. This conclusion defeats, in large part, the Defendant's argument for summary judgment on the seven above-listed categories of alleged mismanagement. Simply stated, the fact that vendors, contractors, accountants, and attorneys all had a hand in the activities does not defeat these categories of alleged wrongdoing as a matter of law. As to the other arguments for partial summary judgment on the above-listed categories of allegations, the Court finds that at this stage in the discovery process, summary judgment is premature.

The Defendant also seeks partial summary judgment on several categories of damages claimed by the Plaintiff, which the Defendant classified as follows: (i) chapter 11 bankruptcy costs, (ii) cash-only parking system and scrap metal disposal, (iii) foreclosed unit lease revenue, (iv) 40-year certification, (v) amounts relating to increase bank loan cost, (vi) fees paid to

14

FirstService, (vii) amounts relating to Miriam Joel litigation, (viii) administrative fines, and (ix) punitive damages.

Most significantly, the Defendant seeks partial summary judgment on Plaintiff's request for punitive damages. Defendant argues first that Florida law does not permit recovery of punitive damages for breach of contract claims. That point is clear. However, as discussed earlier, the Court is denying summary judgment on the tort claims. Without awaiting additional discovery, it is too early for the Court to conclude that the Plaintiff will be unable to prove that the Defendant was grossly negligent or engaged in intentional misconduct sufficient to support an award of punitive damages under Florida law.

The Court is also denying partial summary judgment on the other categories of damages and will allow the Plaintiff to develop the factual record further through discovery and to present its expert report on damages. That said, the Court does observe that certain categories of damages may be difficult to prove, including, in particular, Plaintiff's claim that the Defendant should be liable for the alleged $3,100,000 in special assessments imposed on the unit owners in connection with the Plaintiff's chapter 11 case. Moreover, even if the Plaintiff prevails on one or more of the counts of the Complaint, it will be difficult for the Plaintiff to prove that all of the compensation paid to the Defendant during its tenure as the Plaintiff's manager, approximately $1.3 million,

would be a separate category of damages. Nevertheless, at this stage of the proceeding, the Court finds it premature to strike any of the damage claims.

Although the Court is denying the Motion, the process has been useful. The Defendant has compiled and presented a comprehensive statement of facts and supporting documents to support its defenses, the Plaintiff has responded to each of the factual statements and identified witnesses it needs to depose, and the relevant legal issues have been briefed and analyzed by the Court. All of this should help this case move forward to settlement or trial. But, for the above-stated reasons, it is –

**ORDERED** that the Motion is denied.

###

COPIES TO:

Kristopher E. Pearson, Esq.
Daniel Blonsky, Esq.