**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

JADE WINDS ASSOCIATION, INC.

      Debtor.
_____/

JADE WINDS ASSOCIATION, INC.

      Plaintiff,
v.

FIRSTSERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.

      Defendant.
_____/

**Case No.: 15-17570-RAM**
Chapter 11

**Adv. No. 17-01393-RAM**

**FIRSTSERVICE'S MOTION FOR LEAVE
TO AMEND ITS SECOND AFFIRMATIVE DEFENSE**

Defendant FirstService Residential Florida, Inc. ("FirstService"), pursuant to Rule 15,[1] moves the Court ("Motion") for leave to amend its second affirmative defense to Jade Winds Association, Inc.'s ("Jade Winds") Complaint to add *Fabre* defendants for apportionment of fault pursuant to Fla. Stat. § 768.81 to the extent necessary under the Court's interpretation of the limitation of liability clause in the operative contract.[2]

---

[1] FirstService refers to the Federal Rules of Civil Procedure as the "Rules" generally, and "Rule" when referring to a specific rule. FirstService refers to the Federal Rules of Bankruptcy Procedure as the "Bankruptcy Rules."

[2] "A '*Fabre* defendant' is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged." *Royal Palm Hotel Prop., LLC v. Deutsche Lufthansa Aktiengesellschaft, Inc.*, 133 So. 3d 1108, 1110 n.1 (Fla. 3d DCA 2014) (citation omitted). FirstService argues under the limitation of liability clause in the contract that Jade Winds must prove at trial, if the proceeding goes to trial, that FirstService's conduct solely caused Jade Winds damages. Thus, if other actors' conduct partially caused FirstService damages then Jade Winds could not recover from FirstService from that conduct. However, if the Court determines Jade Winds can recover from FirstService based upon FirstService's conduct that involved negligent conduct of other actors, FirstService requests the Court apportion fault under Fla. Stat. § § 768.81 and *Fabre* and its progeny.

## INTRODUCTION

FirstService pleaded as its second affirmative defense the following:

> Any injury claimed by Jade Winds as alleged in the Complaint was the result of conduct by persons other than FirstService, including, without limitation, Jade Winds and its officers, directors, counsel, employees, vendors, and contractors in privity with Jade Winds including, without limitation, Santiago Perez.  To the extent that FirstService has liability for any claim asserted by Jade Winds such liability is barred by or must be reduced based upon the comparative and/or contributory fault of others, including Santiago Perez, Revital Sharony, Jesse Bergman, or other board of directors or offices of Jade Winds.

Answer and Affirmative Defenses [ECF No. 36] at 8-9.  FirstService, in good faith, now seeks leave to amend its second affirmative defense to specifically name additional *Fabre* defendants and allege facts showing why these particular nonparties should be apportioned fault for some or all of Jade Winds' alleged damages.  FirstService attaches its proposed Amended Second Affirmative Defense to this Motion as Exhibit A.  FirstService will be severely prejudiced if these additional *Fabre* defendants are not named in its second affirmative defense.  FirstService's request does not prejudice Jade Winds in this matter as fact discovery is ongoing [ECF No. 173] and FirstService made similar arguments in its Statement of Undisputed Material Facts [ECF No. 142] and Motion for Summary Judgment [ECF No. 143].

## MEMORANDUM OF LAW

Rule 15(a)(2) provides that after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  The Rule also states that "[t]he court should freely give leave when justice so requires."  *Id*.  Although whether to grant leave to amend lies within the court's sound discretion, "'discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend shall be freely given when justice so requires."  *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (citation and internal quotation marks omitted).  The United States Supreme Court has explained that "this mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (district court erred in not allowing amendment of the complaint when "the amendment would have done no more than state an alternative theory for recovery).  Courts, therefore, "should liberally grant leave to amend" when the underlying facts or circumstances relied upon by a party may be a proper subject of relief.

*In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014). In other words, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Foman*, 371 U.S. at 182)).

Here, FirstService has made no prior requests for amendments, there is no prejudice to Jade Winds, and the amendment will not be futile. FirstService seeks to clarify and re-state its second affirmative defense with additional information obtained through discovery. Throughout this proceeding, FirstService has consistently made it known to Jade Winds that it believed other parties were responsible for any or all of Jade Winds' purported damages, largely Jade Winds' own board of directors. After extensive document discovery and several depositions, the record evidence reveals that Jade Winds employed accountants, attorneys, engineers, and general contractors in connection with the various circumstances Jade Winds claims as its bases for damages. With denial of summary judgment, FirstService now seeks to amend its second affirmative defense to specifically identify the *Fabre* defendants discovered to date. Indeed, consistent with Rule 15's lenient standard, courts routinely allow defendants to amend their affirmative defenses to add *Fabre* defendants, even after the parties have engaged in extensive and voluminous fact discovery. *See, e.g., Kahn v. Cleveland Clinic Florida Health Sys. Nonprofit Corp.*, 2017 WL 7803838 (S.D. Fla. Oct. 10, 2017); *Apopka Clear Lake Invts., LLC v. Sema Constr., Inc.*, 2015 WL 12838806 (M.D. Fla. Dec. 4, 2015); *Fed. Deposit Ins. Corp. v. Bayer*, 2014 WL 12616963 (M.D. Fla. Apr. 1, 2014); *Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc.*, 2009 WL 10667483 (S.D. Fla. Aug. 6, 2009); *Walters v. Altec Indus., Inc.*, 2003 WL 22012046 (M.D. Fla. Mar. 3, 2004).

WHEREFORE, Defendant FirstService Residential Florida, Inc. respectfully requests the Court to enter an Order: (i) granting FirstService leave to file its amended second affirmative defense; (ii) authorizing FirstService to file the Amended Second Affirmative Defense attached as Exhibit A, to replace its Second Affirmative Defense in the original Answer and Affirmative Defenses [ECF No. 36]; and (iii) granting such further relief as the Court deems just and proper.

Case No. 15-17570-RAM
Adv. No. 17-01393-RAM

|  |  |
|---|---|
| Dated:  April 25, 2019 | Respectfully submitted, |

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON
Florida Bar Number 0016874
kpearson@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER**
 **ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:    (305) 789-3200
Facsimile:     (305) 789-3395

*Counsel for FirstService Residential Florida, Inc.*

2018

## CERTIFICATE OF SERVICE

I CERTIFY that on April 25, 2019, the foregoing document is being filed electronically via the Court's CM/ECF website.  I further certify that on April 23, 2019, the document is being served by transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notices of Electronic Filing in this adversary proceeding, as indicated on the attached Service List.

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON

## SERVICE LIST
### Adv. Case No. 17-01393-RAM
### United States Bankruptcy Court, Southern District of Florida

The following parties are registered to receive Notice of Electronic Filing and are served through CM/ECF.

| | |
|---|---|
| Daniel F Blonsky, Esq. | Justin E King |
| *dblonsky@coffeyburlington.com* | *jking@coffeyburlington.com* |
| *groque@coffeyburlington.com* | *Counsel for Jade Winds Association, Inc.* |
| *service@coffeyburlington.com* | |
| *vmontejo@coffeyburlington.com* | |
| *Counsel for Jade Winds Association, Inc.* | |
| | |
| Kristopher E Pearson | Eric S Pendergraft |
| *kpearson@stearnsweaver.com* | *ependergraft@sfl-pa.com* |
| *rross@stearnsweaver.com* | *dwoodall@sfl-pa.com, scusack@sfl-pa.com* |
| *larrazola@stearnsweaver.com* | *ematteo@sfl-pa.com,* |
| *Counsel for FirstService Residential Florida, Inc.* | *bshraibergecfmail@gmail.com* |
| | *Counsel for Jade Winds Association, Inc.* |

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

JADE WINDS ASSOCIATION, INC.

    Debtor.

_____/

JADE WINDS ASSOCIATION, INC.

    Plaintiff,

v.

FIRSTSERVICE RESIDENTIAL
FLORIDA, INC., f/k/a THE
CONTINENTAL GROUP, INC.

    Defendant.

_____/

**Case No.: 15-17570-RAM**
Chapter 11

**Adv. No. 17-01393-RAM**

### FIRSTSERVICE'S [PROPOSED] AMENDED SECOND
### AFFIRMATIVE DEFENSE–COMPARATIVE/CONTRIBUTORY FAULT

Defendant FirstService Residential Florida, Inc. ("FirstService"), pursuant to Rule 8,[1] files this amended affirmative defense number two to Jade Winds Association, Inc.'s ("Jade Winds") Complaint to add *Fabre* defendants for apportionment of damages pursuant to Fla. Stat. § 768.81 to the extent necessary under the Court's interpretation of the limitation of liability clause in the operative contract.[2]

---

[1] FirstService refers to the Federal Rules of Civil Procedure as the "Rules" generally, and "Rule" when referring to a specific rule. FirstService refers to the Federal Rules of Bankruptcy Procedure as the "Bankruptcy Rules."

[2] "A '*Fabre* defendant' is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged." *Royal Palm Hotel Prop., LLC v. Deutsche Lufthansa Aktiengesellschaft, Inc.*, 133 So. 3d 1108, 1110 n.1 (Fla. 3d DCA 2014) (citation omitted). FirstService argues under the limitation of liability clause in the operative contract that Jade Winds must prove at trial, if the proceeding goes to trial, that FirstService's conduct solely caused Jade Winds damages. Thus, if other actors' conduct partially caused FirstService damages then Jade Winds could not recover from FirstService from that conduct. However, if the Court determines Jade Winds can recover from FirstService based upon FirstService's conduct that involved other actors (alleged tortfeasors), FirstService requests the Court apportion fault under Fla. Stat. § § 768.81 and *Fabre v. Marin*, 623 So. 2d 1182, 1185 (Fla. 1993) and its progeny.

Case No. 15-17570-RAM<br>
Adv. No. 17-01393-RAM

### **Second Affirmative Defense—Comparative / Contributory Fault[3]**

Any injury claimed by Jade Winds, based upon the allegations in the Complaint, in whole or in part, was the result of, or at a minimum included, conduct of persons other than FirstService, including, without limitation, Jade Winds, Jade Winds' officers, directors, committees, counsel, employees, accountants, vendors, engineers and contractors in privity with, and acting on behalf of, Jade Winds, including those individuals and entities more fully described below.  If the Court determines that FirstService can be liable for any claim asserted by Jade Winds that involved the conduct of other actors, such liability is barred by or must be reduced based upon the comparative and/or contributory fault of others, including those more fully described below.  FirstService's legal basis for this affirmative defense is Fla. Stat. § 768.81 and *Fabre v. Marin*, 623 So. 2d 1182, 1185 (Fla. 1993) and its progeny.

**A.  Jade Winds, its Board of Directors, Officers, Committees and Unit Owners**

At all times material to the Complaint, Jade Winds' board of directors and its officers owed Jade Winds a fiduciary duty under Fla. Stat. ch. 718.  *See* Fla. Stat. § 718.111; *Ocean Trail Unit Owners Ass'n v. Mead*, 650 So. 2d 4 (Fla. 1994).  Jade Winds' unit owners possessed avenues to remove the Jade Winds' board of directors through elections if the unit owners determined the board members and officers were not acting consistent with their duties under Fla. Stat. ch. 718.  *See id.*  Jade Winds' unit owners also could have sued its board of directors for breach of fiduciary duty relating to the evident breaches alleged in Jade Winds' Complaint.  *See id.*

Moreover, the duties of the association are "non-delegable contractual duties it assumed in its agreements with its owner-members." *Vazquez v. Lago Grande Homeowners Ass'n*, 900 So. 2d 587, 594 (Fla. 3d DCA 2004); citing *City of Coral Gables v. Prats*, 502 So.2d 969 (Fla. 3d DCA 1987), and cases cited, *rev. den.*, 511 So.2d 297 (Fla.1987); and *Mills v. Krauss*, 114 So.2d 817 (Fla. 2d DCA 1959), *cert. den.*, 119 So.2d 293 (Fla.1960). Thus, Jade Winds is liable to its unit owner members for any breaches of its non-delegable contractual duties.  Jade Winds' cannot delegate the entirety of its duties to its unit owners to FirstService.

Despite the desire of Jade Winds' current board of directors and unit owners to deflect and disavow the actions of its prior board of directors, Jade Winds is bound by the decisions of its prior

---

[3] FirstService cites to the Statement of Undisputed Material Facts [ECF No. 142] as "<u>SOF ¶ </u>."

2

board and officers. Jade Winds' board of directors hired all of the vendors who were involved in all of the events that Jade Winds now claims caused it harm, such as Americus Construction, Star Painting, Preferred Account, Fuoco Group, Attorney Toyne, and Attorney Molder. Jade Winds' board of directors passed Jade Winds' budgets, which reflected the lack of funds, resulting in Jade Winds' inability to pay its vendors, such as its contractors and utility providers. Jade Winds' board of directors signed checks to pay its accounts payable, provided Jade Winds had sufficient funds it its bank accounts. Jade Winds' board of directors hired its own maintenance providers and security company. Jade Winds' board of directors had access to all of the financial information at Jade Winds and could have and did directly communicate with Jade Winds' outside accountants concerning Jade Winds' financial matters. Jade Winds' board of directors controlled FirstService's actions as provided for in the Contract.

Based upon Jade Winds' duties under the law and total control under the Contract, the Court should apportion fault entirely, or at least in part, on Jade Winds' board of directors, officers, and committees for the topics of alleged mismanagement set forth in the Complaint because Jade Winds' board controlled or was, at a minimum, directly involved in the subject matter of the Complaint.

### B. Topics of Mismanagement Alleged in the Complaint

In the Complaint, Jade Winds supports its claims with sixteen topics of alleged mismanagement. Compl. ¶15. FirstService reasonably grounds the topics of alleged mismanagement into five categories, which are discussed below. Jade Winds fails to specifically allege what it contends FirstService did or did not do to constitute breaches relating to the categories of alleged mismanagement set forth below. Actors other than FirstService were involved in each of the five categories of alleged mismanagement. If the Court determines FirstService's limitation of liability clause permits Jade Winds to allege FirstService is liable for events involving other actors, Florida law requires the Court to apportion fault to those other actors under Fla. Stat. § 768.81 and *Fabre v. Marin*, 623 So. 2d 1182, 1185 (Fla. 1993) and its progeny. The factual predicate for this affirmative defense is discussed below in the context of the five categories of alleged mismanagement.

#### 1. Bookkeeping Issues (Compl. ¶15, Bullet points 1, 2, 3, 6, 9, 14)

From inception of FirstService's management relationship with Jade Winds through June 1, 2014, FirstService did not contract to perform bookkeeping services for Jade Winds. *See* Compl.

3

Ex. A-C; SOF ¶¶1-7, 39. From 2007 to March 2014 Preferred Accounting Services, Inc. (Ana M. Costales-Abised, CPA, and her firm Preferred Accounting, Inc.) performed Jade Winds' accounting (other than audits) and bookkeeping services (including vendor payments), not FirstService. *See* SOF ¶¶40-41. After Preferred Accounting, Jade Winds employed Fuoco Group, LLC (Donna Seidenberg, CPA) to perform accounting services. *See* SOF ¶¶42. Then in June 2014, Jade Winds contracted with FirstService to provide certain bookkeeping services. *See* Compl., Ex. C; SOF ¶43.

In addition to Ms. Costales-Abised and Ms. Seidenberg, Jason Molder, Esq. and Jade Winds' board of directors and officers were involved in and contributed to any damages suffered by Jade Winds relating to accounting and bookkeeping issues. Attorney Molder terminated Ms. Costales-Abised's services, based upon Jade Winds' board of directors and officer's direction. Further, Santiago Perez was directly involved in decision-making concerning accounting and bookkeeping. Of course, Jade Winds could not make vendor payments if it did not have sufficient funds, which was the reason Jade Winds was unable to timely make vendor payments. Thus, Jade Winds' lack of funds due to the extraordinary amount of unit owners who were delinquent on their monthly maintenance fees, special assessments, and other financial obligations to Jade Winds, caused or contributed to Jade Winds' inability to timely pay its vendors. For instance, Jade Winds' bankruptcy schedules reflect accounts receivable in the amount of $2,692,542.37. *See* Main Case ECF No. 33, p. 6. Jade Winds' unit owners were also involved in foreclosure actions, which evidence the dire financial condition of numerous unit owners at Jade Winds. *See id.* at 237-239. Thus, Jade Winds' unit owners contributed in any losses Jade Winds sustained as a result of Jade Winds' failure to timely pay its vendors.

Jade Winds' board of directors also approved all of its budgets, so Jade Winds' board of directors was aware of the financial short falls and the need for additional revenue. Jade Winds' board of directors failed to explore the possibility of a bank loan to address its cash needs. Further, Jade Winds' board of directors failed to implement more aggressive collections against unit owners. Jade Winds' board of directors failed to implement a special assessment to make up for the revenue shortfalls due to the substantial number of delinquent unit owners.

Accordingly, if the Court determines FirstService service can be liable for Jade Winds' allegations concerning bookkeeping, the Court should apportion fault among Jade Wind, its officers, directors, attorneys, and accountants.

4

### 2. 40-Year Recertification and Construction Issues (Compl. ¶15, Bullet points 5, 6, 7 and 8)

Jade Winds' 40-year recertification project spanned many years, commencing sometime in 2008, involved at least two different sets of licensed general contractors and licensed engineers (who bore responsibility for the project), and was successful for at least the Bamboo and Allamanda buildings. *See* SOF ¶¶51-79.

Jade Winds employed Star Painting & Waterproofing, Inc. ("Star") and then Americus Construction, Inc. ("Americus") as its general contractors and J. Eduardo Gonzalez, P.E., Inc., n/k/a Diversified Structural Design, Inc. ("Gonzalez Engineers") and then Emilio Castro, P.E. ("Castro Engineer") as its structural and project engineers. *See* SOF ¶¶54-79.

Jade Winds' corporate officers signed the documents with the various professionals involved in the 40-year recertification, not FirstService or Donna Mantin. *See* SOF ¶¶54, 59, 69, 74. Jade Winds' officers, board members and outside counsel were involved in the 40-year certification. SOF ¶¶53-55, 59, 61- 63, 66, 69, 72-74. FirstService did not act as Jade Winds' construction manager. Compl. Ex. A, §3.4.

Star contracted to perform concrete restoration work at certain buildings at Jade Winds including Bamboo 1 & 3, Allamanda 1, 2, & 3, Camellia 1 & 2 and Daisy. *See* SOF ¶54. Americus contracted to perform structural and electrical work in several buildings, including Camellia 1 and 2, Daisy and Easterlily. *See* SOF ¶69.

Each of the contractors sued Jade Winds for breach of contract. *Star Painting & Waterproofing, Inc. v. Jade Winds Ass'n*, Case No. 12-02967 CA 10 (Fla. 11th Cir. Ct.) ("Star Litigation") and *Americus Constr. Grp., Inc. v. Jade Winds Ass'n, Inc.*, Case No. 15-05678-CA-01 (Fla. 11th Cir. Ct.) ("Americus Litigation"). *See* SOF ¶¶66, 79. In the Main Case, Jade Winds claimed Americus caused it damage. *See* Main Case ECF Nos. 378, 599; SOF ¶30. As discussed in the Debtor's objection to Americus' claim in the Main Case [Main Case ECF No. 378], the Hillman Report estimates that Americus caused Jade Winds damages exceeding at least $3.3 million, which is greater than the $2.9 million amount that Jade Winds' claims as damages relating to the 40-year recertification in its Damage Disclosure [ECF No. 73].

Any alleged failures during the 40-year recertification process were caused by the involvement of and oversight and control by licensed professionals specifically hired to perform services for Jade Winds in connection with the 40-year certification. *See* SOF ¶¶54, 56, 58, 69,

5

71, 73, 74 and 76. The licensed professionals include, but are not limited to, Star, Americus, Gonzalez Engineers, and Castro Engineer. Jade Winds' attorneys were also involved in the 40-year recertification process, the Star Litigation and the Americus Litigation. *See* SOF ¶¶66, 69, 73, 74, and 79. Ken Goff, Esq., insurance-appointed counsel from the law firm of Vernis & Bowling; Ross Toyne, Esq.; and Jason Molder, Esq. were involved in issues relating to the 40-year recertification. Finally, Jade Winds' board of directors and officers were involved in and liable, at least in part, for any damages Jade Winds claims resulted from the 40-year recertification.

Therefore, if the Court determines FirstService can be liable for Jade Winds' allegations concerning the 40-year recertification or construction projects, the Court should apportion fault among Jade Winds, its officers, directors, attorneys, engineers, and contractors.

### 3. Parking Fees (Compl. ¶15, Bullet point 10)

The cash only, no receipt parking system was created, implemented, and modified from time to time by Jade Winds' board of directors. FirstService recommended that Jade Winds revoke the parking policy and stop collecting cash, but Jade Winds' board of directors, and more specifically its President Santiago Perez, refused to take FirstService's advice and insisted on maintaining the cash only, no receipt parking system.

The parking cash was collected at Jade Winds' main gate by its security company (at a certain point in time, MCorp Security) and Revital Sharony, Santiago Perez's wife, who Jade Winds' board of directors elected as chair of Jade Winds' security committee. Jade Winds asserted and resolved its dispute with MCorps Security. *See* Main Case ECF Nos. 611, 716. Thus, Jade Winds' board of directors, security committee chair, and security company (for a period of time, MCorps Security) are liable, at least in part, for any damages Jade Winds claims it suffered relating to its longstanding, cash only no receipt parking system.

If the Court determines FirstService service can be liable for Jade Winds' allegations concerning parking fees, the Court should apportion fault among Jade Winds, its officers, directors, committee members, and security companies.

### 4. Board Elections, Document Amendments, and Unit Owner Fining (Compl. 15, Bullet points 11, 12, 13)

FirstService does not provide Jade Winds with legal advice. Compl. Ex. A, § 3.3. Jade Winds' outside counsel and its officers and board members were involved in Jade Winds' corporate governance, including elections, fining and document amendments. *See* SOF ¶¶93-99.

The outside counsel included, but is not limited to Attorney Toyne and Attorney Molder. The October 17, 2013 Articles of Amendment to the Articles of Incorporation of Jade Winds Association, Inc. ("October 2013 Amendment") were signed by Santiago Perez, as President and Donna Tollefsen, as Secretary. *See* SOF ¶96. Attorney Toyne signed the October 2013 Amendment as a witness. *See id.* Similarly, Attorney Molder was present and participated in the March 2014 election, as evidenced by the video recordings of the election. *See* SOF ¶99. Jade Winds' board of directors and outside counsel, including, but not limited to, Attorney Toyne and Attorney Molder are liable, at least in part, for any damages Jade Winds claims arise from the issues complained of in bullet points 11, 12 and 13 of paragraph 15 of the Complaint. Furthermore, fines imposed upon unit owners were levied by a Fining Committee made up of unit owners, not FirstService employees. *See* SOF ¶44.

If the Court determines FirstService service can be liable for Jade Winds' allegations concerning board elections, document amendments, or unit owner fining, the Court should apportion fault among Jade Winds, its officers, directors, committee members, and security companies.

### 5. Miriam Joel Litigation (Compl. ¶15, Bullet point 15)

Ms. Joel's issues at Jade Winds long predate FirstService and Ms. Mantin. *See* SOF ¶¶101-102, 106. On September 18, 2013, Jade Winds sued Ms. Joel to foreclose a condominium lien arising from unpaid maintenance fees, initiating the case styled *Jade Winds Ass'n, Inc. v. Miriam Joel,* Case No. 13-030039-CA-01 (Fla. 11th Cir. Ct.) ("Joel Lien Litigation"). *See* SOF ¶¶105. In the Joel Lien Litigation, Ms. Joel detailed her issues and provided documentation showing that her complaints largely involve maintenance issues with her condominium dating back to 1986. *See* SOF ¶¶106. On August 19, 2014, Joel filed a petition to enforce an arbitration award against Jade Winds, initiating the case styled *Joel v. Jade Winds Ass'n, Inc.*, Case No. 14-021603-CA-01 (02) (Fla. 11th Cir. Ct.) ("Joel Arbitration Enforcement Litigation"). *See* SOF ¶¶107. The Joel Lien Litigation and the Joel Arbitration Enforcement Litigation are collectively referred to as the "Joel Litigation." Jade Winds was represented by counsel in connection with the Joel Litigation, first by the Toyne Firm, then the Molder Firm, then the Mirza Firm, and then the Hollander Firm. *See* SOF ¶¶100, 105, 108, 109.

In the Main Case, Jade Winds objected to Ms. Joel's claim, asserting several reasons why Ms. Joel was not entitled to the relief requested in her proof of claim. *See* Main Case ECF No.

7

460. Thus, Jade Winds cannot now attempt to hold FirstService entirely liable for issues relating to Ms. Joel, when Jade Winds' own statements articulate absolute defenses to Ms. Joel's claims.

Jade Winds' board of directors and officers, along with its outside counsel are responsible, at least in part, for any damages relating to Miriam Joel.  Accordingly, the Court should apportion fault for any damages relating to Ms. Joel among the parties involved in Ms. Joel's issues, including, but not limited to, Jade Winds' board of directors and officers, Jade Winds' maintenance personnel and other vendors, and Jade Winds' outside counsel, including, but not limited to Attorney Toyne and Attorney Molder.

### C.  General Issues Relating to FirstService and Donna Mantin

Jade Winds had several opportunities to prevent the alleged "calamities" by not renewing FirstService's contract and engaging another management company.  On April 29, 2011, Jade Winds executed the operative contract with FirstService after having FirstService manage Jade Winds for the preceding four years, and Donna Mantin serving as CAM for approximately the preceding two years.  Given that the management issues Jade Winds now raises were occurring during the period of time when Jade Winds was renewing the management relationship with Jade Winds, Jade Winds' board of directors and officers are liable, at least in part, for renewing the management contract with FirstService if at the same time FirstService and Donna Mantin were allegedly mismanaging Jade Winds.

Similarly, on March 24, 2014, Jade Winds entered into an addendum to Contract ("March Addendum"). Compl. Ex. B. Specifically, this addendum states, in pertinent part:

> As long as this Contract remains in effect, FirstService shall not remove or transfer the CAM without prior written approval of the Association, unless due to said employee's gross negligence in the performance of his/her duties, his/her intentionally tortious conduct, or his/her alleged violation of FirstService's standard employment policies, but shall do so if requested in writing by the Association for legitimate, nondiscriminatory reasons or if requested by the employee.

Compl., Ex. B.

Further, in the March Addendum, Jade Winds changed the number of board of directors meetings that FirstService was required to attend "from bimonthly to up to 4 times per year." *Id.* Finally, Jade Winds bargained for the right to remove FirstService onsite employees from Jade Winds "for legitimate, nondiscriminatory reasons." *Id.*  Jade Winds in fact directed FirstService

Case No. 15-17570-RAM
Adv. No. 17-01393-RAM

to remove several FirstService employees from Jade Winds' property, including Rick Dingle and Anselmo Liano, and banned those employees from Jade Winds' property.

The March Addendum was executed by Santiago Perez, Jade Winds' President. Rather than terminate the Contract based upon FirstService's or Ms. Mantin's alleged "mismanagement," Jade Winds bargained for better protections for Ms. Mantin and less oversight by FirstService's corporate employees. Jade Winds' current board of directors cannot now disavow the actions of its former board. Jade Winds' board of directors is fully or partial at fault for any damage allegedly caused by FirstService or Donna Mantin from March 2014 onward.

Similarly, in June 2014, rather than terminate its relationship with FirstService, Jade Winds executed an addendum to the Contract, through which FirstService agreed to provide bookkeeping services. However, due to issues with Jade Winds' long time bookkeeper, Ms. Costales-Abised, as identified by Ms. Seidenberg, FirstService was unable to commence bookkeeping services because of the gap in records from April to June 2014. Notwithstanding the allegations of breaches in June 2014, Jade Winds' board voted on and approved expanding FirstService's management duties instead of terminating FirstService. Again, Jade Winds' board of directors is fully or partially at fault for any damage allegedly caused by FirstService or Donna Mantin from March 2104 onward.

In October 2014, Jade Winds' board of directors voted to terminate FirstService without complying with the termination provisions under the Contract, and retain Donna Mantin as its CAM, in direct violation of the Contract. Accordingly, Jade Winds' board is fully liable, or at a minimum partially liable, for retention of Donna Mantin as Jade Winds' CAM.

Jade Winds alleges that FirstService destroyed Jade Winds' records. Compl. ¶¶15, 21, 27. However, Jade Winds does not specify when the records were allegedly destroyed. Jade Winds' failure to identify the period of time in which the records were allegedly destroyed is critical because Ms. Mantin was hired by Jade Winds and continued to work for Jade Winds for at least ten days after FirstService was no longer Jade Winds' property management company. Thus, there is at least a ten day period of time in which Ms. Mantin had access to Jade Winds' records while she was not employed by FirstService. In fact, unit owner Harry Bermudez's blog (jadewinds.blogspot.com) reports that any issues relating to Donna Mantin and Jade Winds' documents (there is no record evidence anything improper occurred—because it did not) would have occurred on October 24, 2014, eleven days after FirstService was terminated and no longer

9

working on Jade Winds' property. Further, according to Mr. Bermudez's blog, Ms. Mantin continued to visit Jade Winds' property through at least January 9, 2015.

In addition to Ms. Mantin, AKAM, the successor property manager to FirstService, had access to and did access Jade Winds' records. To date, neither Jade Winds' nor AKAM has produced an inventory of documents that were located in Jade Winds' books and records after FirstService no longer accessed Jade Winds' property.

Based upon these facts, the Court should apportion fault to Jade Winds' board of directors and officers, Donna Mantin from October 13, 2014 onward, and AKAM for damages that occurred during the period of time in which these individuals and entities were involved in the conduct Jade Winds' Complaint alleges caused Jade Winds damages.

Dated: April 25, 2019

Respectfully submitted,

*/s/ Kristopher E. Pearson (proposed)*
KRISTOPHER E. PEARSON
Florida Bar Number 0016874
kpearson@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

*Counsel for FirstService Residential Florida, Inc.*

Case No. 15-17570-RAM<br>Adv. No. 17-01393-RAM

## CERTIFICATE OF SERVICE

I CERTIFY that on April 25, 2019, the foregoing document is being filed electronically via the Court's CM/ECF website.  I further certify that on April 23, 2019, the document is being served by transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notices of Electronic Filing in this adversary proceeding, as indicated on the attached Service List.

*/s/ Kristopher E. Pearson*
KRISTOPHER E. PEARSON

## SERVICE LIST
**Adv. Case No. 17-01393-RAM**
**United States Bankruptcy Court, Southern District of Florida**

The following parties are registered to receive Notice of Electronic Filing and are served through CM/ECF.

| | |
|---|---|
| Daniel F Blonsky, Esq. *dblonsky@coffeyburlington.com* *groque@coffeyburlington.com* *service@coffeyburlington.com* *vmontejo@coffeyburlington.com* *Counsel for Jade Winds Association, Inc.* | Justin E King *jking@coffeyburlington.com* *Counsel for Jade Winds Association, Inc.* |
| Kristopher E Pearson *kpearson@stearnsweaver.com* *rross@stearnsweaver.com* *larrazola@stearnsweaver.com* *Counsel for FirstService Residential Florida, Inc.* | Eric S Pendergraft *ependergraft@sfl-pa.com* *dwoodall@sfl-pa.com* *scusack@sfl-pa.com* *ematteo@sfl-pa.com* *bshraibergecfmail@gmail.com* *Counsel for Jade Winds Association, Inc.* |

11
#7351016 v1